**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
FORT LAUDERDALE DIVISION

CASE NO.: 13-61448-CIV-MARRA

PULSEPOINT, INC. f/k/a DATRAN
MEDIA CORP.,

      Plaintiff,

v.

7657030 CANADA INC., d/b/a ACQUINITY
INTERACTIVE, LLC, f/k/a MODERNAD
MEDIA LLC f/k/a PUREADS; ACQUINITY
INTERACTIVE, LLC; MODERNAD MEDIA
LLC; WARREN RUSTIN, an individual, and
JOHN DOES 1-100 and 8333947 CANADA,
INC.

      Defendants.

_____/

**7657030 CANADA INC., ACQUINITY INTERACTIVE, LLC,**
**MODERNAD MEDIA LLC, AND WARREN RUSTIN'S MOTION TO**
**DISMISS THE AMENDED COMPLAINT, OR, IN THE ALTERNATIVE,**
**MOTION TO STAY AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff's claims are time-barred by the one year statute of limitations set forth in the

contract underlying this dispute.  Accordingly, Defendants, 7657030 Canada Inc., Acquinity

Interactive, LLC, ModernAd Media LLC, and Warren Rustin ("Moving Defendants") move to

dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).

Alternatively, Moving Defendants move to stay the action pending resolution of the various

parallel matters pending in Florida state courts whose outcomes could significantly affect the

instant action.

## BACKGROUND

Plaintiff claims that the Moving Defendants are responsible for satisfying an arbitration award that plaintiff obtained against ModernAd Media LLC on the theory that the Moving Defendants engaged in fraudulent transfers under Florida law, and that they engaged in a *de facto* merger, in order for ModernAd to avoid paying the award.   However, Plaintiff's claims are barred by the one year statute of limitations set forth in the contract governing the dispute in the underlying arbitration, which required Plaintiff to bring its causes of action in the arbitration within one year of the accrual of the cause of action.   Specifically, here, that date was January 2012.

### A.    The Master Services Agreement.

This action stems from ModernAd's relationship with Plaintiff under an agreement called the Master Services Agreement ("MSA").   Under the agreement, Plaintiff agreed to provide various services, described in separate, mutually executed "Service attachments" (DE 28-5) and ModernAd agreed to pay for them.   One such agreement was the Skylist Hosted Services Agreement ("Skylist") wherein "[Plaintiff] was to provide ModernAd with 'access to technology to be used in connection with email marketing services.'" (DE 28 ¶ 82).  A dispute arose as to an amount of money that was owed under the MSA and Skylist Agreement and Plaintiff initiated Arbitration.  (DE 28   ¶¶ 84-86).

The MSA, under which the arbitration was instituted (DE 28 at ¶ 74; *see also* DE 28-5), requires that "[a]ny dispute or controversy arising out of or related to this Agreement or any breach hereof shall be settled by binding arbitration in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association before the American Arbitration Association in the City of New York, State of New York." (DE 28-5 at Pg. 75 [MSA

at §12.1]). It also provides that "[a]ny award shall be final and binding and judgment thereon may be entered in any court of competent jurisdiction." *Id*. The MSA are governed by New York law (DE 28-5 [MSA §14.1]) and established a one (1) year statute of limitation for all causes of action "arising from or in connection with this Agreement or An Attachment . . . from the date upon which such cause of action accrued, or the date upon which the complaining party should have reasonably discovered the existence of such cause of action, whichever is later." (DE 28-5 [MSA § 7.4]).   The Skylist agreement contains the same one-year statute of limitations provision, the same governing law provision and the same arbitration clause as the MSA. (DE 28-6). Therefore, any cause of action arising from or in connection with the MSA or the Skylist agreement is subject to arbitration and the one (1) year statute of limitations.

**B.  Plaintiff knew in December 2010 of the facts it relies upon as basis for its claims in this case.**

Plaintiff was aware of the transfer and sale of assets from ModernAd to Acquinity since December 2010. Any conclusion that ModernAd hid the transfer of assets from ModernAd to Acquinity, is refuted by the factual allegations made in the Complaint. Specifically, Plaintiff identifies its knowledge of the transfer and suspicions related to transfer dating back to December 2010 and January 2011:

> 25.  In late December, 2010, Mr. Rustin announced to [ModernAd's] clients that he had "recently sold certain assets of [ModernAd] to a group of [ModernAd's] executives that includes our former CEO Gary Jonas, Greg Van Horn and Josh Greenberg. They have formed an internet marketing company named Acquinity Interactive and will be extremely well positioned to continue to grow and develop your existing marketing activity. **As part of the Acquinity transition, ModernAd Media will no longer be involved in internet marketing activities**."
>
>                     ***
>
> 31. On or about January 13, 2011, in a letter addressed "Dear Partner," Mr. Jonas proclaimed that he had, "formed a new company, Acquinity Interactive, along with two former ModernAd

Media executives, Greg Van Horn and Josh Greenberg." Jonas stated that Acquinity had acquired "certain strategic assets of ModernAd." For both advertisers and publishers, Jonas assured clients that, "your existing campaigns will remain unaffected," and to expect to hear from their current account managers. . . . Jonas referred to Acquinity as, "our new entity."

***

33. By letter of that same date from Scott Modist, Chief Financial Officer of both ModernAd and Acquinity, to "Our Valued Customers," Mr. Modist stated that, "we have transitioned certain aspects of our operations from ModernAd Media, LLC to Acquinity Interactive. . . .

34. Mr. Modist used the word "our" to describe the operations that were "transitioned." The use of the personal pronouns "we" and "our" in the January 13 letters was intended to convey to customers that Acquinity was a continuation of [ModernAd], a position that [ModernAd] has taken in two unrelated litigations.

35. The Modist Letter further instructed [ModernAd's] customers to "direct all future payments to Acquinity Interactive, 2200 SW 10th Street, Deerfield Beach, FL 33442," the same address at which [ModernAd] conducted business.

***

37. The letter further stated that the, [sic] "ACH and Domestic Wire Routing Numbers for ModernAd and Acquinity are the same."

38. [Plaintiff] received copies of both January 13[, 2011] letters from Acquinity.

(DE 28 at ¶¶ 25, 31-35, 37, 38).

Plaintiff goes onto allege that ModernAd stopped paying for services it was receiving under the Skylist agreement in July of 2010. (DE 28 at ¶ 84). On January 24, 2011, Plaintiff sent ModernAd correspondence formally requesting ModernAd pay Plaintiff's claim, "then roughly $475,000.00." (DE 28 at ¶ 61). Within that January 24, 2011 letter, Plaintiff also asserted ModernAd was liable for making another twelve payments at $92,500.00 (payment under Skylist Agreement if contract auto-renewed). (DE 28 at ¶ 61; DE 28-6). Plaintiff further asserts that, "[f]ollowing receipt of the January 24, 2011 letter, Mr. Modist responded by email, dated

4

January 26, 2011, that, '[w]e hope to work out this matter in a mutually agreeable manner,'" and alleges that "Mr. Modist wrote from an Acquinity email address and made no distinction between Acquinity and [ModernAd] in his pledge to work the matter out. At the time of Mr. Modist's email, he was CFO of Acquinity – not ModernAd."

### C.    Plaintiff pursued claims in arbitration only against ModernAd.

Plaintiff filed claims through the American Arbitration Association against ModernAd, and initially Acquinity, on March 17, 2011. (DE 28 at ¶ 86). The Claim sought damages for ModernAd's alleged failure to may monthly payments of $92,500.00 over a period of seventeen months. *Id*. Ultimately, the Arbitrator awarded $1,572,500 in damages as well as other fees, including $429,701.23 of attorney's fees. *Id*. at ¶ 91. The Arbitrator also found that the award to be "in full settlement of all claims and counterclaims submitted to this Arbitration," and established that "[a]ll claims **not expressly granted herein are hereby denied**." The Plaintiff then sought to domesticate the award in Florida, by filing a case in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. 13-017796. *Id*. at ¶ 98. That action is currently pending.

### D.    This case was filed more than two and a half years later.

Plaintiff filed this action on July 3, 2013—more than two and a half years after it had knowledge of the facts it alleges as support for the claims of fraudulent conveyance and *de facto* merger. In the Amended Complaint filed on August 23, 2013, Plaintiff added defendant 8333947 Canada Inc. as a party, asserting the following causes of action:

First Claim        Fraudulent Conveyance under §726.105(1)(a), (b), Fla. Stat., from ModernAd to Acquinity;

Second Claim        Fraudulent Conveyance under §726.106(1), Fla. Stat., from ModernAd to Acquinity;

| | |
|---|---|
| Third Claim | Fraudulent Conveyance under §726.105(1)(a), (b), Fla. Stat., from ModernAd to Warren Rustin; |
| Fourth Claim | Fraudulent Conveyance under §726.106(1), Fla. Stat., from ModernAd to Warren Rustin; |
| Fifth Claim | Common law *de facto* Merger from ModernAd to Acquinity; and |
| Sixth Claim | Common law *de facto* Merger under common law from Acquinity to 8333947 Canada Inc. |

All counts are time barred by the statute of limitations in the MSA and Skylist Agreements and the Arbitrator's order of relief.

## ARGUMENT

**I.    The Court Should Dismiss Plaintiff's Claims.**

### A.    Standard of Review

When a complaint demonstrates the applicable limitations period to bring a claim has run, the statute of limitations may be raised by a motion to dismiss. *Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275 (11th Cir. 2005) (dismissal under Federal Rule of Civil Procedure 12(b)(6) on statute of limitations grounds is appropriate if, apparent from the face of the complaint, that the claim is time-barred); *AVCO Corp. v. Precision Air Parts, Inc.,* 676 F.2d 494 (11th Cir. 1982) (finding a statute of limitations defense may be raised in a motion to dismiss when a complaint on its face demonstrates the limitations period has run); *see also Josef's of Palm Beach, Inc. v. Southern Inv. Co.,* 349 F. Supp. 1057 (S.D. Fla. 1972) (citing *Wright & Miller,* 5 Federal Practice & Procedure § 1357; 2A Moore's Federal Practice)); *Omar ex rel. Cannon v. Lindsey,* 243 F. Supp. 2d 1339 (M.D. Fla. 2003). The Complaint here meets this requirement for establishing that the Complaint should be dismissed.

**B.     The MSA and Skylist Agreement Bars Plaintiff's Claims.**

All causes of action against the Moving Defendants, signatories and non-signatories, arise out of or relate to the MSA and Skylist Agreements.  Accordingly, the claims should have been brought within one year of "the date upon which such cause of action accrued, or the date upon which the complaining party should have reasonably discovered the existence of such cause of action, whichever is later." (DE 28-5 [MSA § 7.4]).  According to the allegations in the complaint, plaintiff knew of the transfer and other facts giving rise to its complaint in January 13, 2011, and therefore, should have brought any claims relating to it before January 13, 2012 in arbitration. Because Plaintiff failed to do so, its claims are now barred.

When, as in this case, causes of action are intertwined with and dependent upon a contract, they are deemed to arise out of or relate to the contract. *See MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 948 (11th Cir. 1999), *abrogation on other grounds recognized by Escobal v. Celebration Cruise Operator, Inc.,* 482 Fed. Appx. 475, 476 (11th Cir. 2012) *cert. denied,* 133 S. Ct. 1998 (U.S. 2013); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342 (11th Cir. 1984).

As the Eleventh Circuit has stated:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a *signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement*, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings

> between the two signatories would be rendered meaningless and
> the federal policy in favor of arbitration effectively thwarted.

*Grigson v. Creative Artists Agency L.L.C.,* 210 F.3d 524, 527 (5th Cir. 2000) (quoting *MS*

*Dealer*, 177 F. 3d at 947) (emphasis added).

For example, in *Roman v. Atlantic Coast Construction and Development, Inc*., the

defendants, some of which were non-signatories to the contract between a buyer and a builder,

sought to compel arbitration against the buyer who was a signatory party to the contract.  44 So.

3d 222, 223-224 (Fla. 4th DCA 2010). The arbitration provision provided that "All disputes and

controversies between the parties *arising out of or in connection with* this . . . Contract . . . shall

be submitted to arbitration. . . ." *Id*. at 224 (emphasis added). The court found that, because the

plaintiff was seeking relief under the contract against the non-signatories, the claims were

deemed to arise out of or were in connection with the contract, and the non-signatories could

compel arbitration under the terms of the agreement. *Id*. Moreover, the plaintiff could be

compelled to arbitrate because he alleged that the non-signatories and signatory defendants acted

in concert. *Id.*

In *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000), the court

determined the plaintiff (signatory to the contract at issue) was equitably estopped from avoiding

his responsibilities under a contract when he relied on a contract entered with a signatory non-

defendant to assert claims against non-signatories and alleged the non-signatories and signatories

to the contract were acting in concerted misconduct. *See id*. at 528. In so holding, the court,

reviewing this issue as one of first impression, relied heavily on the Eleventh Circuit's

jurisprudence. *Id*. at 527. The court, deeming the causes of action against the non-signatory

defendants to arise out of and be connected with the contract between the plaintiff and non-

defendant signatory, held that,

> although arbitration is a matter of contract and cannot, in general, be required for a matter involving an arbitration agreement non-signatory, a signatory to that agreement *cannot* . . . "have it both ways": it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement . . . but, on the other hand, deny [a contract provision's] applicability because the defendant is a non-signatory. . . . Again, to allow such inconsistent positions would be inequitable, to say the least.

*Id.* at 528 (citing *MS Dealer Serv. Corp.*, 177 F.3d at 947; *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981)) (emphasis in original). The court equitably estopped the plaintiff from denying enforcement of the arbitration provision of the contract and compelled him to abide by the terms of the agreement. *Id.*

Moreover, Florida courts have held that a cause of action is arbitrable and therefore "arises out of a contract" when the agreement creates duties not otherwise imposed by law, such that the "nexus between the dispute and the agreement" is sufficient to warrant application of the arbitration clause. *See Tenet Healthcare Corp. v. Maharaj*, 787 So. 2d 241, 243 (Fla. 4th DCA 2001). In *Maharaj*, the plaintiff alleged defendants "fraudulently transferred the [plaintiff's] assets." *Id.* The Fourth District Court of Appeal found that the plaintiff's fraudulent transfer claims against non-signatories "ar[ose] out of the contract" and entitled the non-signatories to the protection of the agreement because the claims arose from the same operative facts as those claims against the signatory party. *Id.*

Here, Plaintiff relies on the MSA and Skylist Agreement throughout the Complaint to support its claim that the Moving Defendants owe the Arbitration Judgment. Plaintiff argues that Acquinity is liable for ModernAd's judgment, because it was a continuation of ModernAd. (DE 28 ¶¶ 166-188). Specifically, Plaintiff alleges Acquinity took on the responsibilities of ModernAd, including this agreement. (DE 28 ¶¶ 33-35). Taking its allegations as true, Plaintiff alleges knowledge that ModernAd was a "continuing" business as Acquinity as of January of

9

2011. Furthermore, Plaintiff alleges that the Moving Defendants acted in concert to avoid the judgment by creating a new corporation.  Notwithstanding this knowledge, Plaintiff did not seek arbitration against Acquinity or Rustin. Plaintiff cannot have it both ways; thus, pursuant to *MS Dealer Serv. Corp., McBro Planning Co., Grigson* and *Roma*, the terms of the MSA and Skylist Agreement are applicable and enforceable against Plaintiff.

Moreover, like the plaintiff in *Maharaj*, Plaintiff alleges fraudulent transfer claims of assets it believes it was entitled to as a creditor of ModernAd. It alleges the Moving Defendants transferred assets away from ModernAd to skirt the requirement to pay under the MSA and the Skylist Agreement. Accordingly, like *Maharaj*, Plaintiff's relationship with the Moving Defendants and the Moving Defendants' duties to Plaintiff—and specifically the alleged obligation to pay $92,500.00 a month for seventeen months—arise from the MSA and the Skylist Agreement. Therefore, the claims arise out of the MSA and Skylist Agreements, and, as such, Plaintiff is equitably estopped from disclaiming its responsibilities under the contracts, and particularly, the one-year statute of limitations in the agreements.[1]   Having failed to present the claims in arbitration within the one-year statute of limitations, the claims are barred and must be dismissed.

## II.   Alternatively, Plaintiff's Claim Should Be Dismissed or Stayed Under the Abstention Doctrine

Even if Plaintiff had timely presented its claims against the Moving Defendants, the Court should abstain from hearing the issues before it, dismissing or staying the proceedings, until such time as the underlying cases that will directly impact the pending litigation are resolved. In assessing the applicable abstention doctrine, the Court can weigh evidence outside

---

[1] New York law allows the contractual shortening of a period of time within which to bring an action between parties. *See Diana Jewelers of Liverpool, Inc. v. A.D.T. Co., Inc.*, 167 A.D. 2d 965, 562 N.Y.S. 2d 305, 306 (N.Y. App.  Div. 1990).

the four corners of the Complaint.  *See Thompson v. Florida Bar*, 526 F. Supp. 2d 1264, 1271 (S.D. Fla. 2007).

Plaintiff is currently involved in two Florida state court actions related to the causes of action sought herein and such cases will have a significant impact upon this litigation. Accordingly, and as set forth below, should the Court determine these claims are not barred by the one-year limitations provisions as set forth in the Complaint, it should dismiss or stay the action pending resolution of the state court matters.

**A.  There are currently two parallel state actions pending that involve ModernAd and Plaintiff over substantially the same issues.**

Currently, there are two pending actions filed by Plaintiff in Florida state courts that would merit the staying of the proceedings in this case. The first is an action in aid of execution (the "Enforcement Action") filed in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, Case. No. 13-017796. In it, Plaintiff is seeking to obtain documents to aid in its levying of the judgment obtained in the arbitration against ModernAd and domesticated in Florida. *See* Notice of Taking Deposition *Duces Tecum* in Aid of Execution attached as Exhibit "A."  It relates to the same judgment Plaintiff is seeking to enforce against the Moving Defendants in this case. (*See* DE 28 at ¶¶ 91-98).  In fact, Plaintiff's claims here are directly related to the judgment issued in the arbitration, which Plaintiff at the same time seeks to enforce in the Enforcement Action.

The second action relates to a counterclaim initially made in the arbitration by ModernAd against Plaintiff, which would serve as setoff of the judgment Plaintiff seeks to enforce here. ModernAd asserted various counterclaims in the arbitration. (*See* DE 28 at ¶¶ 87). Prior to the arbitration hearing, ModernAd brought an action in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach, County, Florida Case No. 50-2012-CA-001957 MB (the "Setoff

Action"). *See* Complaint filed by ModernAd attached as Exhibit "B." In it, ModernAd sought a declaration that the counterclaims were not arbitrable, given that after discovery in the arbitration it had become evident that no written arbitration agreement had been executed for the contract under which ModernAd sought relief in the counterclaims. Moreover, ModernAd sought a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), as that claim could not be brought in arbitration under New York law. Recovery under this cause of action would have provided a setoff for any claim asserted by Plaintiff in the Arbitration. Upon Plaintiff's motion, the trial court dismissed the complaint, finding the FDUTPA claim should have been brought in the arbitration and that ModernAd had waived its rights to litigate the claim in Florida courts. ModernAd filed an appeal to the Fourth District Court of Appeal, arguing that (1) the trial court improperly made factual findings as to the enforceability of an unsigned arbitration agreement without an evidentiary hearing, and (2) the trial court erred in denying ModernAd its right to bring the FDUTPA action in Florida given that the claim could not be brought under any comparative New York law. *See* Brief of ModernAd filed in the Fourth District Court of Appeal, attached as Exhibit "C." The appeal, though fully brief, is still pending. While the appeal was pending, the arbitration proceeded on Plaintiff's claim and ModernAd's counterclaims, which counterclaims were ultimately denied in the arbitration. (DE 28 at ¶ 92).

If the appellate court reverses the trial court's ruling as erroneous, the arbitration award would also have been erroneous. Thus, that case, pending in Florida state court, is inextricably intertwined with enforcement and collection of this award, and accordingly, impacts this cause of action significantly, since a reversal of the trial court ruling would call into question the appropriateness of the Arbitration Award which serves as the basis for Plaintiff's damages.

**B.    The case should be dismissed under the *Colorado River* abstention doctrine**

The Court should dismiss the proceedings under the *Colorado River* Abstention Doctrine. This Court has the inherent power abstain from hearing an action based on the pendency of a related proceeding in a foreign jurisdiction. *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936); *cf. Posner v. Essex Insurance Company, Ltd.,* 178 F.3d 1209,1223-1224 (11th Cir. 1999); *Turner Entertainment Co. v. Degeto Film GmbH,* 25 F.3d 1512, 1518 (11th Cir. 1994). "Abstention under the *Colorado River* doctrine is appropriate when 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,' favor deferring to the concurrent state court proceeding." *Sides v. Simmons*, 07-80347-CIV, 2007 WL 3344405 (S.D. Fla. 2007) (granting Motion to Stay under *Colorado River*) (quoting Colorado River *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 817-818  (1976)).

As a pre-requisite to abstaining under *Colorado River*, a court must assess whether the actions pending in state court are "parallel." *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). The parties need not be identical; rather, they must involve "substantially the same parties and substantially the same issues, " *Id*. (citing *Interstate Material Corp. v. City of Chicago,* 847 F.2d 1285, 1288 (7th Cir. 1988), for the proposition that, "the addition of the federal defendants in the federal suit by itself does not destroy the parallel nature of the case. If it did, parties could avoid the doctrine of *Colorado River* by the simple expedient of naming additional parties."); *see also Calvert Fire Ins. Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1229 (7th Cir. 1979). Once the causes of action are deemed parallel, a six prong balancing test is followed to determine if abstention is appropriate:

> (1) whether a state or federal court has retained jurisdiction over the property; (2) whether the federal forum is inconvenient; (3) whether there is potential for piecemeal litigation; (4) whether the state or federal court obtained jurisdiction first; (5) whether state or federal law is at issue; and (6) whether state court can adequately protect the parties' rights.

*Sides*, 2007 WL 3344405, at *3.

The pending state actions are parallel and weigh in favor of abstention. First, the actions are parallel to each other; all stem from and are related to the arbitration award, and surround efforts to collect on that award. In fact, the Subpoena Duces Tecum served by Plaintiff upon ModernAd requests for the Managing Member of ModernAd (attached as Exhibit "A"), is substantially similar to the document requests submitted to the Moving Defendants in this case. *See* Requests attached as Exhibit "D"; *see also* (DE 33). The actions involve substantially the same parties and substantially the same issues—namely, recovery of an arbitration award against ModernAd and what Plaintiff alleges is the continuation of ModernAd through Acquinity and the owner of ModernAd, Warren Rustin.

Abstention is further appropriate upon consideration of the six factor-balancing test. With regard to the first factor, the state court has retained jurisdiction over the property when Plaintiff domesticated the judgment in Florida under the Enforcement Action, filing the judgment in Florida on June 21, 2013. *See* Broward County Court Record of Enforcement Litigation attached as Exhibit "E." The second and third factors also weigh in favor of abstention. If the Court allows the claims to go forward, the Moving Defendants will be litigating the same or substantively the same issues in two separate Courts. This makes continued litigation in federal court inconvenient and would lead to piecemeal litigation and even forum shopping. Fourth, the state courts obtained jurisdiction first; the Setoff Action stems back to February 2012, and the Enforcement Action was filed, by Plaintiff's choosing, on June 21, 2013—both well before this

case was filed. Fifth, state law rather than federal law is at issue; in fact, the basis for Plaintiff invoking this Court's jurisdiction in this case is diversity of citizenship, not federal question. Finally, the sixth factor also weighs in favor of abstention. The Setoff Action and the Enforcement Action will adequately protect the parties' rights.

Accordingly, the Court should dismiss this case under the *Colorado River* abstention doctrine.

### C.   Alternatively, the case should be stayed under the *Burford* Abstention Doctrine

If the Court determines the claim is one sounding in damages and not equity, it should still stay the pending action under the *Burford* Abstention. The *Burford* Doctrine applies where: (1) the case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) the adjudication of the case in a federal forum "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush v. Allstate Ins. Co*, 517 U.S. 706, 727 (1996). The *Burford* ruling provides that federal courts should exercise their discretionary power to refuse to hear cases that would "impair the independence of state governments in carrying out their domestic policy." *Burford v. Sun Oil,* 319 U.S. 315, 318 (1943), *quoting Pennsylvania v. Williams,* 294 U.S. 176 (1935).

In *Quackenbush v. Allstate Ins. Co.*, the Supreme Court determined that dismissal of a federal action where a setoff action is being decided in a state court action was improper, but noted that "**a stay order** might have been **appropriate**." *Id*. at 731. The Supreme Court noted, "*Burford* might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law." *Id*. at 730-731.

15

Here, the Setoff Action is on appeal, which involves significant and "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." Specifically, ModernAd argues the trial court improperly determined that ModernAd was required to bring the FDUTPA claim in the arbitration under New York law, because there is no analogous statutory scheme in New York law under which ModernAd could have asserted its FDUTPA claim, and therefore, preventing ModernAd from pursuing its FDUTPA claim in Florida courts would deprive ModernAd of its statutory rights as residents of Florida.[2]

Accordingly, at issue in the Setoff Action is the scope of a right of the citizen of the state of Florida to bring an action in Florida courts when application of a contractual provision would deny the citizen a statutory right. If the Court were to continue its litigation, it would  disrupt

---

[2] *See* Exhibit "C," Pg. 26-27:

> Florida courts have specifically refused to apply arbitration provisions requiring arbitration in jurisdictions that would deny the relief afforded by FDUTPA. . . . In *Holt v. O'Brien Imports of Ft. Myers, Inc.,* 862 So. 2d 87, 89 (Fla. 2d DCA 2003), for example, the court found, *inter alia*, that because the arbitration agreement in the contract between a buyer and a seller did not allow for injunctive relief, and FDUTPA does, the arbitration clause was unenforceable. The court also found that the limit of attorney's fees in the arbitration agreement was unenforceable as to the FDUTPA claim. *Id.* In so holding, it noted "FDUTPA 'is designed to protect not only the rights of litigants, but also the rights of the consuming public at large.'" *Id.* (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 975 (Fla. 1st DCA 2000)). *See also Mgmt. Computer Controls, Inc.*, 743 So. 2d at 632 (noting FDUTPA does not exists solely for the benefit of the parties to the contract). As the court explained, "an individual cannot waive the protection of a statute that is designed to protect both the public and the individual," and "*any attempt to limit FDUTPA liability is contrary to public policy.*" *Id.* (emphasis added) (quoting *Coastal Caisson Drill Co. v. Am. Cas. Co.,* 523 So. 2d 791, 793 (Fla. 2d DCA 1988), *approved,* 542 So. 2d 957 (Fla. 1989), and citing *Rollins, Inc. v. Heller,* 454 So. 2d 580 (Fla. 3d DCA 1984)).

"state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush*, 517 U.S. at 727 (1996). Specifically, it would render the Fourth DCA's opinion meaningless, as an Arbitration award which may have been issued in error (the arbitrator only proceeded on the counterclaims due to state trial court's order) and proceedings to enforce same and collect on same would be improper. Reversal of the trial court's ruling would allow ModernAd to challenge the arbitration award in state court and seek a setoff pursuant to the FDUTPA claim. Such setoff would reduce the liability or completely render the current causes of action moot. Accordingly, should the Court be disinclined to dismiss the case at this juncture, it should stay the proceeding pending the outcome of the state court actions.

Dated: September 20, 2013.                 Respectfully submitted,

                                           s/ Onier Llopiz_____
                                           Onier Llopiz (FBN 579475)
                                           ol@lydeckerdiaz.com
                                           Joan Carlos Wizel (FBN 37903)
                                           jcw@lydeckerdiaz.com
                                           Roland Potts (FBN 087072)
                                           rp@@lydeckerdiaz.com
                                           LYDECKER | DIAZ
                                           1221 Brickell Avenue, 19th Floor
                                           Miami, Florida 33131
                                           Telephone: (305) 416-3180
                                           Facsimile:  (305) 416-3190

                                           *Attorneys for Defendants 7657030 Canada*
                                           *Inc., Acquinity Interactive, LLC, ModernAd*
                                           *Media LLC, and Warren Rustin*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 20, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I also certify that a true and correct copy of the foregoing was served this day via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.

s/ Joan Carlos Wizel
Joan Carlos Wizel (FBN 37903)

## SERVICE LIST

**Timothy M. Hartley**
Hartley Law Offices, PLC
800 SE third Avenue, Fourth Floor
Fort Lauderdale, FL 33316
Telephone: (954) 357-9973
E-mail:Hartley@hartleylaw.net

**Brett E. Lewis**
Lewis & Lin, LLC
45 Main Street, Suite 608
Brooklyn, NY 11201
Telephone: (718) 243-9323
E-mail:brett@iLawco.com