# IN THE DISTRICT COURT OF APPEAL
# FOR THE FOURTH DISTRICT, STATE OF FLORIDA

Case No. 4D12-2273

On Appeal from a Final Order of
The Seventeenth Judicial Circuit Court
(Lower Tribunal Case No. 502012CA001957 MB)

MODERNAD MEDIA, LLC,

Plaintiff/Appellant,

v.

DATRAN MEDIA CORPORATION,

Defendant/Appellee.

## INITIAL BRIEF OF APPELLANT MODERNAD MEDIA, LLC

**Joan Carlos Wizel**
**Onier Llopiz**
**Roland Potts**
LYDECKER | DIAZ
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
(305) 416-3180

*Counsel for Appellant*
*ModernAd Media, LLC*

JANUARY 9, 2013

**TABLE OF CONTENTS**

<u>Page</u>

TABLE OF CITATIONS.............................................................................i

TABLE OF AUTHORITIES....................................................................iii

INTRODUCTION....................................................................................1

STATEMENT OF THE CASE AND FACTS.............................................2

    A.    The Origins and Demise of the Parties' Business Relationship..........2

    B.    The Datran-Driven New York Arbitration and
            ModernAd's Later Confirmation of the Non-Existence
            of an Executed LMA………...................................................4

    C.    ModernAd's Swift Response Seeking a Halt of the New York
            Arbitration and Its Newly-Asserted FDUTPA Claim...........................5

    D.    Datran's Motion to Dismiss and/or Stay the Complaint
            and the Non-Evidentiary Hearing on the Motion...................................7

          1.    The Motion to Dismiss and/or Stay the Complaint...................7

          2.    The Non-Evidentiary Hearing on the Motion to
               Dismiss and/or Stay the Complaint...........................................8

                   i.  Arguments on the Contractual Assent and
                        Waiver.......................................................................8

                 ii.  Arguments on the FDUTPA claim..............................9

    E.    The Trial Court's Ruling on the Motion to Dismiss and/or
            Stay the Complaint After the Non-Evidentiary Hearing...................10

STATEMENT OF THE ISSUES ON APPEAL.......................................11

STANDARD OF REVIEW.................................................................................11

SUMMARY OF THE ARGUMENT...................................................................12

ARGUMENT......................................................................................................13

I.  THE TRIAL COMMITTED REVESIBLE ERROR IN
    FAILING TO HOLD AN EVIDENTIARY HEARING...............................13

    A.  When the decision to compel arbitration is based in part
        on factual findings, or consideration of factual disputes,
        the trial court must hold an evidentiary hearing.................................14

    B.  The ruling on Datran's Motion turned on disputed factual
        issues requiring an evidentiary hearing.............................................16

        1.  Questions of fact pertaining to the existence of a valid
            agreement to arbitrate................................................................16

        2.  Questions of fact pertaining to ModernAd's alleged
            waiver to seek redress in state court..........................................18

II. THE TRIAL COURT ALSO COMMITTED REVESIBLE ERROR
    IN DISMISSING THE FDUTPA CLAIM WITH PREJUDICE WHERE
    THE CLAIM DID NOT ARISE OUT OF THE LMA AND, IN ANY
    EVENT, THE ARBITRATION PROVISIONS ARE
    UNENFORCEABLE AS TO THAT CLAIM.............................................20

    A.  The FDUTPA Claim Does Not Arise Out of the
        LMA....................................................................................................20

    B.  The Arbitration Provisions are Unenforceable to the FDUTPA
        Claim as a Matter of Public Policy, and the Claim Should
        Therefore be Severed from the Claims in Arbitration.........................24

CONCLUSION.................................................................................................28

CERTIFICATE OF COMPLAINACE.............................................................30

ii

# TABLE OF CITATIONS

**CASES**                                                          **PAGE(S)**

*Accord Chastain v. The Robinson-Humphrey Company, Inc.,*
957 F.2d 851 (11th Cir. 1992).................................................................................. 16

*Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham,*
953 So. 2d 574 (Fla. 1st DCA 2007)......................................................................... 24

*Am. Online, Inc. v. Pasieka,*
870 So. 2d 170 (Fla. 1st DCA 2004).......................................................... 25, 26, 27

*Aztec Medical Services v. Burger,*
792 So. 2d 617 (Fla. 4th DCA 2001) ........................................................................ 22

*Beacon Prop. Mgmt., Inc. v. Pnr, Inc.,*
890 So. 2d 274 (Fla. 4th DCA 2004) ........................................................................ 26

*Brasington v. EMC Corporation,*
855 So. 2d 1212 (Fla. 1st DCA 2003)....................................................................... 24

*Coastal Caisson Drill Co. v. Am. Cas. Co.,*
523 So. 2d 791 (Fla. 2d DCA 1988), *approved,* 542 So. 2d 957 (Fla. 1989) ......... 25

*Cole v. Burns Int'l Sec. Servs.,*
105 F.3d 1465 (D.C. Cir. 1997) ................................................................................ 23

*Contractor's Mgmt. Sys. of NH, Inc. v. Acree Air Conditioning, Inc.,*
799 So. 2d 320 (Fla. 2d DCA 2001) ................................................................. 21, 22

*Cruz v. NYNEX Info. Res.,*
263 A.D. 2d 285, 703 N.Y.S. 2d 103 (1st Dep't 2000) ........................................... 26

*Curcio v. Sovereign Healthcare of Boynton Beach L.L.C.,*
8 So. 3d 449 (Fla. 4th DCA 2009) ............................................................................ 14

*Davis v. Powertel, Inc.,*
776 So. 2d 971 (Fla. 1st DCA 2000)......................................................................... 25

*Flyer Printing Co., Inc. v. Hill*,
805 So. 2d 829 (Fla. 2d DCA 2001) ......................................................................... 23

*Fonte v. AT&T Wireless Services, Inc.*,
903 So. 2d 1019 (Fla. 4th DCA 2005) ...................................................................... 11

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20, 111 S.Ct. 1647 (1991) ................................................................... 23, 24

*H.W. Gay Enterprises, Inc. v. John Hall Elec. Contracting, Inc.*,
792 So. 2d 580 (Fla. 4th DCA 2001). ...................................................................... 17

*Holt v. O'Brien Imports of Ft. Myers, Inc.*,
862 So. 2d 87 (Fla. 2d DCA 2003) ............................................................. 24, 25, 27

*Houchins v. King Motor Co. of Fort Lauderdale, Inc.*,
906 So. 2d 325 (Fla. 4th DCA 2005) ....................................................................... 14

*Infinity Design Builders, Inc. v. M.F. Hutchinson*,
964 So. 2d 752 (Fla. 5th DCA 2007) ....................................................................... 17

*King's Academy, Inc. v. Doe*,
29 So. 3d 439 (Fla. 4th DCA 2010) ......................................................................... 13

*Law Offices of Sybil Shainwald v. Barro*,
817 So. 2d 873 (Fla. 5th DCA 2002) ....................................................................... 15

*LeNeve v. Via South Florida, L.L.C.*,
908 So. 2d 530 (Fla. 4th DCA 2005) ....................................................................... 17

*Merrill Lynch Pierce Fenner & Smith, Inc. v. Melamed*,
425 So. 2d 127 (Fla. 4th DCA 1982) ....................................................................... 14

*Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc.*,
743 So. 2d 627 (Fla. 1st DCA 1999) ................................................................ 20, 21, 22, 25

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ................................................................................................. 24

iv

*Owren, Inc. v. Connolly,*
877 So. 2d 918 (Fla. 4th DCA 2004) ................................................................ 18

*Powertel, Inc. v. Bexley,*
743 So. 2d 570 (Fla. 1st DCA 1999)................................................................... 24

*Rollins, Inc. v. Heller,*
454 So. 2d 580 (Fla. 3d DCA 1984) .................................................................. 25

*Rowe Enterprises LLC v. International Systems & Electronics Corp.,*
932 So. 2d 537 (Fla. 1st DCA 2006)................................................................... 14

*S.D.S. Autos, Inc. v. Chrzanowski,*
976 So. 2d 600 (Fla. 1st DCA 2007)................................................................... 24

*Seifert v. U.S. Home Corp.,*
750 So. 2d 633 (Fla. 1999).................................................................................. 22

*Seminole Tribe of Florida v. McCor,*
903 So. 2d 353 (Fla. 2d DCA 2005) .................................................................. 15

*Shearson, Lehman, Hutton, Inc. v. Lifshutz,*
595 So. 2d 996 (Fla. 4th DCA 1992) ................................................................. 18

*Stewart Agency, Inc. v. Robinson,*
855 So. 2d 726 (Fla. 4th DCA 2003) ................................................................. 12

*Tandem Health Care Of St. Petersburg, Inc. v. Whitney,*
897 So. 2d 531 (Fla. 2d DCA 2005) .................................................................. 15

*True Title, Inc. v. Blanchard,*
No. 6:06-cv-1871, 2007 WL 430659 (M.D.Fla. Feb. 5, 2007)............................... 26

*Venetian Salami Co. v. Parthenais,*
554 So. 2d 499 (Fla. 1989).................................................................................. 15

*Victor v. Dean Witter Reynolds, Inc.,*
606 So. 2d 681 (Fla. 5th DCA 1992) ................................................................. 18

## STATUTES

§682.03(1), Fla. Stat. .................................................................................................. 13

## **INTRODUCTION**

This case is before this Court on an appeal from an order of the Seventeenth Judicial Circuit Court dismissing the Plaintiff/Appellant, ModernAd Media, LLC's ("ModernAd") original Complaint with prejudice, ruling, without an evidentiary hearing and despite the absence of a signed agreement, that (a) an enforceable agreement to arbitrate existed between ModernAd and Defendant/Appellee, Datran Media Corp. ("Datran") (requiring arbitration in New York), and (b) ModernAd's claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") must be asserted in such New York arbitration, even though a FDUTPA claim could not be asserted in the arbitration governed by New York law.

Because the trial court necessarily made determinations of fact, including contested facts, without holding an evidentiary hearing, and because, even if arbitration was required, the FDUTPA claim is severable from the arbitration, ModernAd respectfully submits the trial court's order should be reversed and this case should be remanded for further proceedings.

In this brief, citations to the record will be noted as "(R. at _:_)," denoting the volume number and page number. Citations to the Appendix will be noted as "(App. __)," denoting the tab number assigned to the document in the Appendix. The documents in the Appendix are bate-stamped to coincide with their numbering in the Record.

## STATEMENT OF THE CASE AND FACTS

The trial court dismissed the original Complaint after holding a non-evidentiary hearing on Datran's motion to dismiss. Thus, the facts outlined here are taken from the Complaint, filings of the parties (and exhibits thereto), and the transcript of the non-evidentiary hearing.

### A.    The Origins and Demise of the Parties' Business Relationship

In or about August of 2007, ModernAd and Datran entered into negotiations for the licensure of a proprietary computerized database composed of names, postal addresses, telephone numbers and associated e-mail addresses of individuals (the "Database"). (R. at 1:2; App. A.) As a result of the parties' negotiations, ModernAd agreed to grant Datran a license for the information contained in the Database. *Id.* In exchange for the information, ModernAd agreed to a fifty-fifty revenue share with Datran. (R. at 1:2-3; App. A.) The parties also agreed that Datran would charge a $0.25 CPM fee (a sending, chargebacks, and bad debt fee) for every 1000 e-mails sent (the "CPM"), to be subtracted from the net revenue. (R. at 1:3; App. A.) ModernAd and Datran thereafter engaged in a business relationship/venture on these terms.

ModernAd and Datran never executed a contract to this effect. (R. at 1:4; App. A). They did, however, at some point exchanged a draft of a List Management Agreement ("LMA"), which not only included the terms agreed

upon, but also included new terms, including, among others, certain arbitration and governing law provisions. *Id.* Specifically, the unsigned, draft LMA included the following provisions:

> 14. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to its conflict of laws rules or principles. The jurisdiction and venue for all disputes hereunder shall be the state and federal courts in the City and State of New York.
>
> 15. Dispute Resolution. Any dispute or controversy arising out of or related to this Agreement or any breach hereof shall be settled by binding arbitration in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association before the American Arbitration Association in the City of New York, State of New York. Any award shall be final and binding and judgment thereon may be entered in any court of competent jurisdiction. Nothing in this paragraph will be construed to preclude any party from seeking injunctive relief in order to protect its rights pending arbitration.

(R. at 1:71-72; App. A.)

Sometime into their relationship, on July 1, 2008, Datran sent a generic email to ModernAd and other list management partners, with the subject "Partner Update," which purported to unilaterally change the CPM fee. (R. at 1:4-5; App. A.) As alleged in the Complaint, the e-mail was purposefully vague and ambiguous so ModernAd would not be adequately informed that Datran was unilaterally and materially increasing the CPM fee; it was designed to conceal the additional costs

- 3 -

per mailing so that Datran could arbitrarily withhold additional amounts from ModernAd's portion of net revenue. (R. at 1:5; App. A.)

### B. The Datran-Driven New York Arbitration and ModernAd's Later Confirmation of the Non-Existence of an Executed LMA

On March 24, 2011, Datran commenced arbitration in New York, alleging a claim against ModernAd for breach of a Master Services Agreement and a Skylist Hosted Services Agreement executed between the parties in connection with other aspects of their relationship. (R. at 1:9; App. A.) On May 2, 2011, in order to preserve its rights in the arbitration, ModernAd filed a counterclaim alleging a claim for breach of the LMA. *Id.* In its answers and affirmative defenses, Datran asserted in each paragraph as follows: "Datran denies that the parties entered into the purported List Management Agreement." (R. at 1:10; App. A.)

On September 14, 2011, Datran sought to dismiss the LMA counterclaim, through a petition to file a motion to dismiss the arbitration, claiming that "neither party has been able to locate a fully executed copy of the [LMA] at issue, and therefore the enforceable obligations between the parties have been created through their course of dealing, not through that instrument." (R. at 1:81; App. A.) Datran, evidently taking the position that an executed agreement may exist and be found, went on to note, however, that "in the alternate [sic], should a fully

- 4 -

executed copy of the [LMA] emerge and be deemed binding to the parties, that agreement clearly bars the counterclaims by its own terms." *Id.*

The parties engaged in discovery in the arbitration in an effort to locate an executed LMA, but documents were not exchanged until October 2011. (R. at 1:87, 88; App. B.) Datran did not produce an executed LMA at the time, but failed to assert it had produced all documents in its possession responsive to the requests, and ModernAd was therefore forced to move to compel, and the arbitration tribunal entered an order giving Datran "until January 9, 2012 to submit its affirmative representation that it has produced all documents called for by [the] requests. . . ." (R. at 1:191-192, 193; App. B.) On January 9, 2012, Datran first affirmatively made the statement that it had provided all documents in its possession responsive to the requests, by which ModernAd could finally determine that no executed LMA existed. (R. at 1:193-198; App. B.)

### C.   ModernAd's Swift Response Seeking a Halt of the New York Arbitration and Its Newly-Asserted FDUTPA Claim

On January 31, 2012—less than three weeks later—ModernAd filed in the Fifteenth Judicial Circuit Court, Palm Beach County, Florida, an Emergency Motion to Enjoin [the] Arbitration, or in the alternative, Emergency Motion to Stay Arbitration Proceedings pending the outcome of the declaratory judgment action concurrently filed that day. (R. at 1:85-198; App. B.) It argued the discovery in the

arbitration revealed there was no valid agreement containing an arbitration clause, and therefore, the arbitration should be enjoined and there was no waiver of ModernAd's right to seek redress in state court. (R. at 1:85-87; App. B.) On the same day, ModernAd filed a three-count Complaint in that court. (R. at 1:1-82; App. A.) In Counts II and II, in light of the non-existence of an executed LMA, ModernAd sought (a) a declaratory judgment that the American Arbitration Association proceeding in New York had no jurisdiction over any claim stemming from the licensing of the Database to Datran and that ModernAd had a right to seek redress in state court; (b) a temporary and permanent injunction to enjoin the New York Arbitration. (R. at 1:9-12 App. A.)

Additionally, in Count I, ModernAd asserted a cause of action for violation of FDUTPA, §§501.201 *et seq.*, Fla. Stat. (R. at 1:6-8; App. A.) The claim was based on Datran's actions in unilaterally and impermissibly increasing the CPM for the use of the Database and withholding more funds from the net revenue than was agreed to by the parties, through the subversive and clandestine email. (R. at 1:2; App. A.) ModernAd alleged Datran engaged in misrepresentations, acts, practices or omissions which were material and which were likely to mislead consumers acting reasonably under the circumstances, and further alleged Datran had committed acts or practices in trade or commerce which offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to

consumers. (R. at 1:8; App. A.) Thus, as alleged in the Complaint, Datran had engaged in unfair and/or deceptive acts or practices in the conduct of trade or commerce in violation of section 501.204(1), Florida Statutes.

**D.      Datran's Motion to Dismiss and/or Stay the Complaint and the Non-Evidentiary Hearing on the Motion**

### 1.      The Motion to Dismiss and/or Stay the Complaint

On February 23, 2012, Datran served a Motion to Dismiss and/or Stay [the] Complaint. (R. at 2:202-233; App. C.) It argued ModernAd was compelled to arbitrate its claims "by agreement and by course of dealing." (R. at 2:205; App. C.) Datran specifically acknowledged the LMA was never executed, but claimed this was not dispositive in light of the parties' course of dealing. (R. at 2:205-206; App. C.) In support of its argument, Datran cited and discussed *H.W. Gay Enterprises, Inc. v. John Hall Elec. Contracting, Inc.*, 792 So. 2d 580 (Fla. 4th DCA 2001). In addition, Datran claimed that through its conduct ModernAd had consented to the jurisdiction of the New York arbitration tribunal. (R. at 2:207-211; App. C.)[1]

On April 30, 2012 ModernAd filed a Response in Opposition. (R. at 2:236-338; App. D.) It argued that Datran was attempting to improperly use a Motion to Dimsiss to "try the case on its merits," that ModernAd did not contract out of nor

---

[1]      The motion also advanced other alternative arguments not directly pertinent to the issues presented here. (*See* R. at 2:206-207, 212-215; App. C.)

waive its right to litigate in state court, and finally, that regardless of any finding of an enforceable contract or waiver, ModernAd still had the ability to seek relief under FDUTPA in state court. (*See* R. at 2:236-237; App. D.) Datran then filed a Reply in support of its motion on May 3, 2012, seeking to rebut the arguments advanced by ModernAd. (R. at 2:339-346; App. E.)

### 2. The Non-Evidentiary Hearing on the Motion to Dismiss and/or Stay the Complaint

On May 7, 2012, the trial court held a non-evidentiary hearing on Datran's Motion to Dismiss and/or Stay the Complaint.

#### i. *Arguments on the Contractual Assent and Waiver*

During the hearing, Datran acknowledged the issue presented was the enforceability of an unsigned agreement (R. at 2:383, 395-396; App. G) but argued the arbitration clause in the unsigned LMA was enforceable (R. at 2:382; App. G). The crux of Datran's argument, however, relied on unresolved *factual* matters. For instance, Datran argued that "every other term of the [unsigned LMA] ha[d] been abided by" and that "there [was] no evidence not to be bound by the [LMA]. . . ." (R. at 2:383; App. G.) That argument was contrary to Datran's own prior position that there was no executed LMA granting ModernAd the ability to arbitrate. (R. at 2:390; App. G.) Furthermore, as ModernAd's counsel highlighted at the hearing,

- 8 -

Datran's argument was merely based on assertions of counsel presented as evidence, which was impermissible to achieve dismissal of the case. *Id.*

Datran also argued ModernAd had waived its right to seek redress in state court through its actions in the arbitration despite knowing there was no executed LMA. (R. at 2:396; App. G.) Datran's factual interpretation of ModernAd's actions, however, is directly at odds with ModernAd's position that it did not know of the non-existence of an executed LMA until January of 2012. (*See* R. at 1:44; App. A.; *see also* R. at 1:88; App. B; R. at 1:193-198; App. B.)

### ii. Arguments on the FDUTPA claim

At the hearing, Datran argued the FDUTPA claim arose out of the "enforceable" LMA, and therefore, could only be made in the New York arbitration pursuant to the arbitration clauses (including New York choice of law and forum provisions) of the unsigned LMA, or was otherwise waived. (R. at 2:389, 397; App. G.) In response, ModernAd argued that, even if the LMA was enforceable, the FDUTPA claim did not arise out of the LMA. It further argued that because the FDUTPA claim could not be brought under New York law, even if the claim was deemed to be within the purview of the arbitration, choice of law or forum clauses of the unsigned LMA, the court had the duty to sever the claim so it could be brought in Florida courts in order to protect the statutory substantive rights of Florida corporations. (R. at 3:402; App. G.)

**E.     The Trial Court's Ruling on the Motion to Dismiss and/or Stay the Complaint After the Non-Evidentiary Hearing**

The trial court deemed the motion to dismiss "to be a motion to compel arbitration." (R. at 2:412; App. G.) As such, under the title "Conclusions of Law" the court made the following factual findings and legal conclusions following from those factual findings:[2]

- "[T]he parties entered into a contract that contains a valid arbitration provision. . . . [and] the parties were bound by such provision. . . . "irrespective of whether [ModernAd] actually provided a written signature on the [LMA]." (R. at 2:366-367; App. F.)

- "[The court] is without subject matter jurisdiction based on the arbitration clause *and* the subsequent conduct of [ModernAd] actively litigating the Arbitration Case through its conduct of seeking affirmative relief by filing the counterclaim and the amended counterclaim." *Id.* at 367.

- "[The court] is without subject matter [sic] to adjudicate the cause of action sounding in violation of [FDUTPA] by finding that such cause of action would be a cause of action that would have been required to be raised in the counterclaim or the amended counterclaim in the Arbitration Case and that the failure to raise such issue in the Arbitration Case would constitute a waiver and, thus, preclude [ModernAd] from being entitled to seek such affirmative relief in the pending state court litigation." *Id.*

---

[2] The order was prepared by Datran's counsel.

Based on these factual findings and legal conclusions flowing from the factual findings, the trial court dismissed the Complaint with prejudice.

## STATEMENT OF ISSUES ON APPEAL

(1)     Whether the trial court erred in compelling arbitration without holding an evidentiary hearing based on an unsigned agreement, where the decision was based in part on determination of factual disputes.

(2)     Whether, irrespective of the existence of a valid agreement to arbitrate, the FDUTPA claim arose out of the LMA and, even if it did, whether the arbitration provisions are unenforceable as to the FDUTPA claim for public policy reasons, where the arbitration under New York law would not permit relief equivalent to that which is available in Florida courts and otherwise would fail to provide the ModernAd with an effective way to vindicate its statutory cause of action in the arbitral forum.

## STANDARD OF REVIEW

On the first issue regarding the existence of a valid agreement to arbitrate, the standard of review is *de novo. Stewart Agency, Inc. v. Robinson*, 855 So. 2d 726, 728 (Fla. 4th DCA 2003) ("A trial court's decision regarding the validity of

an arbitration clause is a matter of contract interpretation subject to *de novo* review.").[3]

On the second issue regarding the enforceability of the arbitration provisions as to the FDUTPA claim, the standard of review is *de novo. Id.*

## SUMMARY OF THE ARGUMENT

ModernAd's original Complaint was improperly dismissed. First, an evidentiary hearing was required prior to determining that based on the unsigned LMA and ModernAd's alleged conduct, a valid agreement to arbitrate existed compelling arbitration in New York. The lack of an executed contract and arbitration clause along with the various issues of fact in dispute necessitated an evidentiary hearing prior to determination on arbitrability.

Second, irrespective of the existence of a valid agreement to arbitrate, the claim under FDUTPA should have been allowed to continue in Florida. As a threshold matter, the claim does not arise under the LMA, as it reaches far beyond the rights and obligations of the parties under the terms of the unsigned agreement. Moreover, the arbitration provisions of the LMA are unenforceable as to the

---

[3] If the trial had conducted an evidentiary hearing, the standard of review applicable to factual findings would have been whether they were supported by competent, substantial evidence, while the standard of review applicable to the construction of the arbitration provision and to its application of the law to the facts found would have been *de novo.*" *Fonte v. AT&T Wireless Services, Inc.*, 903 So. 2d 1019, 1023 (Fla. 4th DCA 2005). As noted, however, the trial court did not conduct an evidentiary hearing, and thus, the standard of review applicable to factual findings following an evidentiary hearing is inapplicable to this case.

FDUTPA claim because New York law does not provide an adequate mechanism for vindicating ModernAd's statutory rights under FDUTPA. New York law does not permit a corporation to maintain a claim based on a consumer protection statute equivalent to FDUTPA. Thus, requiring ModernAd to pursue a claim under New York law, as the LMA requires, would undermine the effectiveness and purpose of the statute. Accordingly, the arbitration provisions at issue are unenforceable as to the FDUTPA claim, and the claim is severable from any other claims.

The order dismissing the Complaint with prejudice should be reversed and the case should be remanded. The Court should require, at a minimum, an evidentiary hearing to determine whether the contract was enforceable against ModernAd and/or whether waiver occurred. Regardless of the existence of a valid agreement to arbitrate, the Court should order the FDUTPA claim to proceed in the Seventeenth Judicial Circuit in and for Palm Beach County.

## ARGUMENT

## I.   THE TRIAL COMMITTED REVESIBLE ERROR IN FAILING TO HOLD AN EVIDENTIARY HEARING

Whether viewed as a motion to compel arbitration or a motion to dismiss for lack of subject matter jurisdiction, the resolution of arbitrability turned on questions of fact in dispute, and therefore, required an evidentiary hearing. The trial court's failure to hold an evidentiary hearing constitutes reversible error.

**A.   When the decision to compel arbitration is based in part on factual findings, or consideration of factual disputes, the trial court must hold an evidentiary hearing**

The trial court deemed Datran's Motion to Dismiss and/or Stay the Complaint "to be a motion to compel arbitration." (R. at 3:412; App. G.) Yet, it failed to adhere to long-standing principles requiring it to hold an evidentiary hearing to resolve factual issues prior to ruling on the motion.

When a case presents a challenge to the enforceability of an arbitration provision, or a dispute as to the circumstances that existed at the time the arbitration provision was made and took effect, the trial court is required to hold an evidentiary hearing pursuant to section 682.03(1), Florida Statutes. *King's Academy, Inc. v. Doe*, 29 So. 3d 439, 440 (Fla. 4th DCA 2010) (citing *Curcio v. Sovereign Healthcare of Boynton Beach L.L.C.*, 8 So. 3d 449, 450-51 (Fla. 4th DCA 2009)). This Court has long adhered to this principle. Thus, in *Merrill Lynch Pierce Fenner & Smith, Inc. v. Melamed*, 425 So. 2d 127, 129 (Fla. 4th DCA 1982), for example, this Court explained:

> If the parties have clearly entered into an agreement to arbitrate, then the trial court must compel arbitration. If, however, the making of the arbitration agreement is disputed, then the trial court should undertake an evidentiary hearing to resolve issues regarding the making of the agreement or the failure, neglect or refusal to perform the same.

(Internal citations and quotation omitted.) Furthermore, in *Houchins v. King Motor Co. of Fort Lauderdale, Inc.*, 906 So. 2d 325, 328–29 (Fla. 4th DCA 2005), this Court made clear the language of section 682.03(1) is mandatory, and held that where a party opposing arbitration asserts the arbitration agreement is unenforceable, the trial court errs in deciding the motion before holding the evidentiary hearing required the statute in order to make a determination as to whether a valid arbitration agreement exists. The principle is uniformly held by other Florida courts. *See, e.g., Rowe Enterprises LLC v. International Systems & Electronics Corp.*, 932 So. 2d 537, 538 (Fla. 1st DCA 2006) (ruling that the trial court committed reversible error when it ruled on the motion to compel arbitration without holding an evidentiary hearing when "factual disputes exist[ed] as to whether appellants ever agreed to arbitrate future disputes arising out of the parties' contractual relationship."); *Tandem Health Care Of St. Petersburg, Inc. v. Whitney*, 897 So. 2d 531, 532-33 (Fla. 2d DCA 2005) ("where the facts relating to the elements the trial court is required to consider in determining a motion to compel arbitration are disputed, the trial court is required to hold an evidentiary hearing in order to resolve the matter") (collecting cases).

Moreover, the same principle (requiring an evidentiary hearing to resolve factual issues) applies to a trial court's determination of a motion to dismiss for lack of subject matter jurisdiction. In Florida, "[a] motion to dismiss for lack of

subject matter jurisdiction is analogous to a motion to dismiss for lack of personal jurisdiction." *Seminole Tribe of Florida v. McCor*, 903 So. 2d 353, 357 (Fla. 2d DCA 2005) (citing *Venetian Salami Co. v. Parthenais,* 554 So. 2d 499, 502 (Fla. 1989) (setting forth process for determining factual issues raised by motion to dismiss for lack of personal jurisdiction)). When questions of fact are presented through evidence and "conflicts exist regarding the jurisdictional allegations of the complaint," a trial court should conduct an evidentiary hearing; ruling on the motion without such hearing will render the subsequent decision reversible error. *Law Offices of Sybil Shainwald v. Barro*, 817 So. 2d 873, 877 (Fla. 5th DCA 2002) (collecting cases).

**B.    The ruling on Datran's Motion turned on disputed factual issues requiring an evidentiary hearing**

In order to rule on the Motion, the trial court had to consider and determine disputed factual issues, including issues relating to the existence of a valid agreement to arbitrate and issues relating to ModernAd's alleged waiver to seek redress in state court.

**1.    Questions of fact pertaining to the existence of a valid agreement to arbitrate**

It is undisputed that the parties never executed the LMA, which contains the arbitration provision at issue. Thus, the very existence of a valid agreement to arbitrate was in question. *Accord Chastain v. The Robinson-Humphrey Company,*

*Inc.,* 957 F.2d 851, 854 (11th Cir. 1992) (stating that "when it is undisputed that the party seeking to avoid the arbitration has not signed any contract requiring arbitration . . . that party is challenging . . . *the existence of an agreement to arbitrate.* Under these circumstances, there is no presumptively valid general contract which would trigger the [trial] court's duty to compel arbitration. . . ." (Emphasis in original)). (*See* R. at 3:402; App. G ("What [Datran] is asking is for [the lower] court to interpret a contract which [Datran] does not allege exists between the parties.")).

While acknowledging the absence of an executed agreement, Datran argued this was not dispositive in light of the parties' course of dealing. (R. at 2:205-206; App. C.) By its very nature, however, Datran's argument depended on questions of fact surrounding the parties' course of dealing—a matter requiring an evidentiary hearing. In fact, in support of its argument, Datran cited and discussed *H.W. Gay Enterprises, Inc. v. John Hall Elec. Contracting, Inc.*, 792 So. 2d 580 (Fla. 4th DCA 2001). But *H.W. Gay Enterprises, Inc.* itself involved the determination of the enforceability of an unsigned agreement *based on an evidentiary hearing. Id.* at 580–81 (examining the evidence, including documents and testimony, presented at the evidentiary hearing).

Even so, no evidence was presented on parties' course of dealing or their assent to the terms of the unsigned LMA. Thus, Datran's Motion involved

questions of fact as to the validity and enforceability of the LMA, precluding its determination without an evidentiary hearing.

### 2. Questions of fact pertaining to ModernAd's alleged waiver to seek redress in state court

Datran argued Appellant's submission to the arbitration tribunal barred it from seeking relief in state court. At its core, however, this argument turned on questions of fact. "Whether a party has waived its right to arbitrate—or presumably to litigate—depends on the trial court finding: (1) the existence of a right which may be waived; (2) actual or constructive knowledge of the right; and (3) an intent to relinquish the right." *Infinity Design Builders, Inc. v. M.F. Hutchinson*, 964 So. 2d 752, 756 (Fla. 5th DCA 2007). Consideration of these factors involves factual determinations. *See, e.g., Infinity Design Builders, Inc*, 964 So. 2d at 755-756; *LeNeve v. Via South Florida, L.L.C.*, 908 So. 2d 530 (Fla. 4th DCA 2005) (court found that because arbitration "is a matter of contract . . . a party cannot be compelled to arbitrate any dispute that he or she did not agree to submit to arbitration."); *Victor v. Dean Witter Reynolds, Inc.*, 606 So. 2d 681 (Fla. 5th DCA 1992) (court found the party had entered into arbitration when the party participated in seven months of process, insisted at outset arbitration be held, and participated in the selection proves of the panel, and had executed an arbitration provision for "any controversy"); *Owren, Inc. v. Connolly*, 877 So. 2d 918 (Fla. 4th DCA 2004) (court heard evidence related to execution or non-execution of

agreement which included arbitration provision and dismissed the contention that performance of other provisions manifested assent to arbitration); *Shearson, Lehman, Hutton, Inc. v. Lifshutz,* 595 So. 2d 996, 997 (Fla. 4th DCA 1992) (court found "[t]he record [did] not show any evidence that the appellees signed or assented to the brokerage agreement submitted by the appellants," even with parties having executed similar prior agreements, illegible scratches on signature lines, and the agreement was a standard agreement appellee had executed before). The trial court's failure to hold an evidentiary hearing precluded the making of such factual determinations, as well as determination of the issue of waiver.

Moreover, the question of when ModernAd knew no signed agreement to arbitrate existed, and therefore, when its participation in the New York arbitration could be considered an intent to relinquish a right to access to Florida courts, requires a factual determination. Thus, the trial court erred in failing to hold an evidentiary hearing to make that determination, as ModernAd should have been afforded the opportunity to present evidence to refute the arguments of Datran's counsel at the non-evidentiary hearing.

In sum, determination of Datran's arguments relating to the course of dealing of the parties and to ModernAd's alleged waiver of its right to seek redress in Florida state courts involved questions of fact, requiring an evidentiary hearing.

The trial court failed to hold such evidentiary hearing, and therefore, this Court should reverse the ruling below.

## II.   THE TRIAL COURT ALSO COMMITTED REVESIBLE ERROR IN DISMISSING THE FDUTPA CLAIM WITH PREJUDICE WHERE THE CLAIM DID NOT ARISE OUT OF THE LMA AND, IN ANY EVENT, THE ARBITRATION PROVISIONS ARE UNENFORCEABLE AS TO THAT CLAIM

Even assuming, without conceding and for argument sake only, that a valid arbitration agreement was entered into between the parties, the lower court erred in determining the FDUTPA claim was arbitrable and that ModernAd was barred from pursuing the claim in Florida courts. First, ModernAd's FDUTPA claim does not arise out of the LMA and is therefore outside of the scope of its arbitration provisions. Second, even if did arise out of the LMA, the arbitration provisions would effectively eviscerate MoernAd's statutory right to make a FDUTPA claim, and thus, those provisions are unenforceable as a matter of Florida's public policy. Accordingly, the trial court's ruling on this issue should be reversed to allow ModernAd to vindicate its statutory cause of action.

### A.   The FDUTPA Claim Does Not Arise Out of the LMA

The FDUTPA claim goes beyond the scope of the arbitration provision of the LMA. In determining whether a claim falls within the scope of an arbitration provision, courts look at the language of the arbitration provision itself. When the language calls for the arbitration of disputes that arise out the contract, the

arbitration provision cannot be applied to a FDUTPA claim that goes beyond claims regarding the rights and obligations of the parties under the terms of the agreement.

In *Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc.,* 743 So. 2d 627 (Fla. 1st DCA 1999), for example, the court examined the application of an arbitration venue selection clause in a software licensing agreement to a FDUTPA claim. The provision, in language very similar language to this case, required arbitration of "[a]ny action . . . arising out of this Agreement [to] be initiated and prosecuted in the Court of Shelby County, Tennessee, and nowhere else." *Id.* at 629. Although the court found that the clause applied to claims of breach of contract, negligent misrepresentation and breach of implied warranty, it held the clause could not be applied to the claim that the defendant violated FDUTPA. *Id.* at 632. It explained:

> The unfair trade claim is an independent statutory claim that is severable from all the remaining claims. It does not arise out of the contract, nor does it exist solely for the benefit of the parties to the contract. Our conclusion that the unfair trade practices claim is beyond the scope of the venue clause is supported by the analogous decision of the Third District Court of Appeal in *First Pacific Corp. v. Sociedade de Empreendimentos e Construcoes, Ltda.,* 566 So. 3 (Fla. 3d DCA 1990).

*Id.*

Similarly, in *Contractor's Mgmt. Sys. of NH, Inc. v. Acree Air Conditioning, Inc.,* 799 So. 2d 320, 321 (Fla. 2d DCA 2001), a licensee of business software brought action against the licensor alleging misrepresentation in violation of FDUTPA. The defendant licensor then filed motion to dismiss or stay the action pending binding arbitration under the contract between the parties, which called for binding arbitration of "[a]ny dispute concerning this Agreement" to be maintained "within the jurisdiction of, and in accordance with the laws of, the State of New Hampshire." *Id.* The appellate agreed with the trial court, holding that the arbitration provisions did not apply to the claim of unfair and deceptive trade practices in violation of FDUTPA. *Id.* As the court explained, the FDUTPA claim "does not arise from the agreement, nor does it exist solely for the benefit of the parties to the agreement." *Id.* It further noted that "the arbitration clause . . . applies only to disputes concerning that agreement[, and] [t]herefore, it does not embrace [the] claim under [FDUTPA] and could not support an order forcing [the plaintiff] into binding arbitration of that claim." *Id.* (citing *Seifert v. U.S. Home Corp.,* 750 So. 2d 633, 636 (Fla. 1999)).

It should be noted that in the trial court, Datran relied on *Aztec Medical Services v. Burger,* 792 So. 2d 617 (Fla. 4th DCA 2001). Its reliance is misplaced because the scope of the arbitration provision in that case was vastly broader, rendering the decision inapplicable to this case. As the Court explained in *Burger,*

"by the plain language of the provision, it applies to 'any dispute about the parties' business relationship.'" *Id.* at 623. Thus, the Court explained, "the provision does not limit itself to only those claims regarding the rights and obligations of the parties 'under the terms of the agreement, [and] [i]nstead, it clearly encompasses any dispute relating to their business relationship." *Id.* (internal citation omitted).

In this case, the language of the arbitration provision required arbitration of "[a]ny dispute or controversy arising out of or related to this [LMA] or any breach [t]hereof. . . ." (R. at 1:71; App. A.) This language is almost identical to that of *Mgmt. Computer Controls, Inc.*, and very similar to that of *Contractor's Mgmt. Sys. of NH, Inc.* Unlike the language of the provision at issue in *Burger*, the provision at issue here was limited to those claims regarding the rights and obligations of the parties under the terms of the LMA. Moreover, the factual allegations of the Complaint go well beyond the scope of the arbitration provision, as the claim focuses on actions not contemplated by the LMA, including the unilateral increase in costs, fraud in reporting, and the deceptive partner update e-mail. (R. at 1:6; App. A.)

The trial court therefore erred in finding the FDUTPA claim arose out of the LMA and dismissing the claim with prejudice.

**B.    The Arbitration Provisions are Unenforceable to the FDUTPA Claim as a Matter of Public Policy, and the Claim Should Therefore be Severed from the Claims in Arbitration**

Even assuming, without conceding and for argument sake only, that the FDUTPA claim arose out of the LMA, the arbitration provisions of the LMA are unenforceable to the FDUTPA claim as a matter of Florida's public policy. The arbitration provisions of the LMA require application of New York law to disputes between the parties. (R. at 1:71; App. A). But New York law *does not* provide an adequate mechanism for vindicating the ModernAd's FDUTPA rights, and therefore, the claim cannot be the subject of arbitration.

Statutory claims may be arbitrated or removed to other courts only when "an adequate mechanism for vindicating the claimant's statutory rights" exists in the target jurisdiction. *Flyer Printing Co., Inc. v. Hill*, 805 So. 2d 829, 831 (Fla. 2d DCA 2001) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647 (1991)). "[If] an arbitration agreement contains provisions that defeat the remedial purpose of the statute, the agreement is not enforceable." *Id.* (citing *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1468 (D.C. Cir. 1997)); *see also Brasington v. EMC Corporation*, 855 So. 2d 1212, 1215 (Fla. 1st DCA 2003) ("An agreement to arbitrate statutory claims is enforceable if it provides an adequate mechanism for pursuing statutory rights and does not defeat the remedial purpose of the statute under which the claim is brought") (citing *Gilmer v.*

*Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991)). *Accord Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). A provision of an agreement is unenforceable for public policy reasons when it "defeat[s] the remedial purpose of the statute upon which an action is based," *Powertel, Inc. v. Bexley,* 743 So. 2d 570, 576 (Fla. 1st DCA 1999), or "deprive[s] the plaintiff of the ability to obtain meaningful relief for alleged statutory violations," *Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham,* 953 So. 2d 574, 578 (Fla. 1st DCA 2007), see also *S.D.S. Autos, Inc. v. Chrzanowski,* 976 So. 2d 600, 606 (Fla. 1st DCA 2007).

Florida courts have specifically refused to apply arbitration provisions requiring arbitration in jurisdictions that would deny the relief afforded by FDUTPA. In *Holt v. O'Brien Imports of Ft. Myers, Inc.,* 862 So. 2d 87, 89 (Fla. 2d DCA 2003), for example, the court found, *inter alia,* that because the arbitration agreement in the contract between a buyer and a seller did not allow for injunctive relief, and FDUTPA does, the arbitration clause was unenforceable. The court also found that the limit of attorney's fees in the arbitration agreement was unenforceable as to the FDUTPA claim. *Id.* In so holding, it noted "FDUTPA 'is designed to protect not only the rights of litigants, but also the rights of the

consuming public at large.'" *Id.* (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 975 (Fla. 1st DCA 2000)). *See also Mgmt. Computer Controls, Inc.*, 743 So. 2d at 632 (noting FDUTPA does not exists solely for the benefit of the parties to the contract). As the court explained, "an individual cannot waive the protection of a statute that is designed to protect both the public and the individual," and "*any attempt to limit FDUTPA liability is contrary to public policy.*" *Id.* (emphasis added) (quoting *Coastal Caisson Drill Co. v. Am. Cas. Co.,* 523 So. 2d 791, 793 (Fla. 2d DCA 1988), *approved,* 542 So. 2d 957 (Fla. 1989), and citing *Rollins, Inc. v. Heller,* 454 So. 2d 580 (Fla. 3d DCA 1984)).

The same result was required in *Am. Online, Inc. v. Pasieka*, 870 So. 2d 170, 172 (Fla. 1st DCA 2004). In *Pasieka*, the defendant sought to dismiss the plaintiffs' lawsuit, which included claims under FDUTPA, based on the forum selection clause in the parties' agreement requiring the lawsuit to be brought in Virginia. *Id.* at 170. The trial court denied the motion. The First District affirmed, refusing to enforce the clause to the statutory claims, on the basis that Virginia did not permit lawsuits under consumer protection statutes to proceed as class actions, a remedy that could be obtained in Florida courts. *Id.* at 171–172. As the court explained, a FDUTPA claim is not subject to a forum selection clause where it would undermine the effectiveness and purpose of the statute. *Id.* at 171. In light of Virginia's limitation on class action remedy, the court held "the purpose and

effectiveness of the FDUTPA would be seriously undermined if the claims here were required to be brought in Virginia." *Id.* at 172. Thus, it found the trial court properly refused to enforce the agreement to the FDUTPA claim.

In this case, application of the LMA's arbitration provisions, which require application of New York law, would not only limit FDUTPA liability, but would annihilate it altogether because New York law does not a corporation to maintain a claim based on a consumer protection statute equivalent to FDUTPA. *Compare Cruz v. NYNEX Info. Res.,* 263 A.D.2d 285, 703 N.Y.S.2d 103 (1st Dep't 2000) (holding that agreements with businesses generally do not come within the ambit of consumer protection statutes), *with Beacon Prop. Mgmt., Inc. v. Pnr, Inc.,* 890 So. 2d 274, 278 (Fla. 4th DCA 2004) (FDUTPA applies "to any act or practice occurring 'in the conduct of *any trade or commerce'* even as between purely commercial interests.") (emphasis in original), and *True Title, Inc. v. Blanchard,* No. 6:06-cv-1871, 2007 WL 430659, at *4 (M.D.Fla. Feb. 5, 2007) (citing *Beacon Prop. Mgmt., Inc.,* 890 So. 2d 274 at 278) (noting that the 2001 amendments to the damages provision in FDUTPA deleted the reference to "consumer transactions"). As such, as in in *Holt* and *Paseika*, application of the arbitration provisions of the LMA to ModernAd's FDUTPA claim would seriously undermine the effectiveness and purpose of the statute.

Accordingly, the trial court erred in concluding the FDUTPA claim must be asserted in the arbitration pending in New York. The lower court's ruling denies ModernAd's right to recover under FDUTPA and frustrates the purpose of the statute in protecting consumers at large.

In sum, New York law does not provide an adequate mechanism for vindicating ModernAd's statutory rights under FDUTPA. Thus, the arbitration provisions at issue are unenforceable as to the FDUTPA claim. The trial court's ruling dismissing the FDUTPA claim with prejudice should be reversed.

## **CONCLUSION**

For these reasons, ModernAd requests this Court (a) reverse the Order entered on May 21, 2012, dismissing the Complaint with prejudice; (b) require an evidentiary hearing on remand to determine issues surrounding the existence of a valid agreement to arbitrate and waiver; and (c) find the FDUTPA claim may be maintained in the Seventeenth Judicial Circuit in and for Palm Beach County.

Respectfully submitted this 9th day of January, 2013.

LYDECKER | DIAZ
*Counsel for Appellant*
*ModernAd Media, LLC*
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Phone: (305) 416-3180
Facsimile: (305) 416-3190

By: _____
Joan Carlos Wizel (FBN 37903)
E-mail: jcw@lydeckerdiaz.com
Onier Llopiz (FBN 579475)
E-mail: ol@lydeckerdiaz.com
Roland Potts (FBN 087072)
E-mail: rp@lydeckerdiaz.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of January, 2013, a true and correct copy of the foregoing was sent via e-mail to: **Geoffrey D. Ittleman**, E-mail: geoffrey@ittlemanlaw.com, The Law Offices of Geoffrey D. Ittleman, 440 North Andrews Avenue, Fort Lauderdale, Florida 33301.

By: _____
Joan Carlos Wizel
Florida Bar No. 37903

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing brief complies with all the requirements set forth in Florida Rule of Appellate Procedure 9.210(a)(2).

By: _____

Joan Carlos Wizel
Florida Bar No. 37903