AMERICAN ARBITRATION ASSOCIATION

------------------------------------------------X

DATRAN MEDIA CORP.,

      Claimant,

      CASE NO.:   117 Y 85 811

      -against-

MODERNAD MEDIA f/k/a PUREADS,

      Respondent

------------------------------------------------X

      65 East 55th Street

      New York, New York

      March 7, 2012

      9:30 a.m.

      BEFORE:   THOMAS HALKET, Arbitrator.

2

```
 1           AMERICAN ARBITRATION ASSOCIATION

 2              A P P E A R A N C E S:

 3              LEWIS & LIN, LLC

 4              Attorneys for the Claimant

 5              Internet Law Counsel

 6              Main Street Suite 608

 7              Brooklyn, New York 11201

 8      BY: BRETT E. LEWIS, ESQ.

 9          THOMAS WU, ESQ.

10

11              LYDECKER DIAZ, ESQS.

12              Attorneys for the Respondent

13              1221 Brickell Avenue 19th Floor

14              Miami, Florida 33131 York

15      BY: ONIER LLOPIZ, ESQ.

16          EMANUEL GALIMIDI, ESQ.

17          ROLAND M. POTTS, ESQ.

18          ALSO PRESENT:  STEVEN VINE, ESQ.

19              *           *           *

20

21

22

23

24

25
```



```
 1              AMERICAN ARBITRATION ASSOCIATION
 2          performing the way it should have been
 3          performing, and then --
 4              ARBITRATOR:  Stop.  Okay, let's
 5          continue.  Mr. Lewis.
 6   BY MR. LEWIS::
 7        Q.   Good afternoon, Mr. Modist.
 8        A.   Hi.
 9        Q.   My name is Brett Lewis, and I
10   represent Datran Media, and will be asking
11   you some questions this afternoon.  What is
12   your current job title?
13        A.   Chief Financial Officer.
14        Q.   Of what company?
15        A.   Acquiniqi Interactive.
16              THE COURT REPORTER:  What is it?
17              THE WITNESS:  A-C-Q-U-I-N-I-Q-I
18        Interactive, LLC.
19        Q.   What is Acquiniqi Interactive, LLC?
20        A.   A marketing company.
21        Q.   And is there any relationship
22   between Acquiniqi Interactive and ModernAd?
23        A.   Their relationship, it was assets
24   core assets on (inaudible) purchase from
25   ModernAd by Acquiniqi Interactive and certain
```

1          **AMERICAN ARBITRATION ASSOCIATION**

2    **employees, that is employees were hired from**

3    **ModernAd.**

4          Q.   What assets specifically were

5    purchased by Acquiniqi from ModernAd?

6              MR. LLOPIZ:  Objection, lack of

7         foundation.

8              MR. GALIMIDI:  Well, we're asking

9         that there can be some confidential --

10             MR. LLOPIZ:  And we're objecting

11        simply to everything that Mr. Modist

12        would have to say regarding any

13        confidential, asset purchase agreement

14        that we view, allowed to circulate

15        confidences.  And I don't see how it's

16        relevant here.

17             MR. LEWIS:  In terms of the company

18        that we assume has been acquired by a

19        different entity, I think it's fair to

20        ask questions into the corporate

21        structure.

22             MR. LLOPIZ:  You've asked what

23        assets generally, without even giving

24        him the benefit of the document in

25        front of him and that's a very general

```
 1            AMERICAN ARBITRATION ASSOCIATION

 2       --

 3            ARBITRATOR:  Why don't you start by

 4       finding out what her name --

 5            MR. LEWIS:  That was where I was

 6       going to go afterward.

 7            ARBITRATOR:  Why don't you start

 8       with that?

 9            MR. LEWIS:  Mr. Modist is now

10       consulting with his attorney.

11            MR. LLOPIZ:  Well, Mr. Modist has

12       to consult with his attorney so he

13       doesn't breach any potential

14       confidentiality provision and

15       therefore, render himself liable under

16       some agreement that we don't have the

17       benefit of having in front of us right

18       now.

19            ARBITRATOR:  Are you acting as Mr.

20       Modist's attorney here?

21            MR. LLOPIZ:  Certainly.  I would

22       have to.  He's an officer of this

23       company.  I represent this company as

24       well.

25            ARBITRATOR:  You represent what
```

Reporter's Ink, Corp.  90 John Street - Ste. 411    New York, NY 10038    www.reporters-ink.com
Phone: 646.395.2522    Fax: 212.374.1236



173

```
 1              AMERICAN ARBITRATION ASSOCIATION

 2        company?

 3              MR. LLOPIZ:  Datran.

 4              ARBITRATOR:  You're free to ask

 5        what -- at least at this time, you're

 6        free to ask what operations and assets

 7        ModernAd has --

 8              MR. LEWIS:  Right, which is my next

 9        question.

10   BY MR. LEWIS::

11        Q.   What assets and operations does

12   ModernAd currently have?

13        A.   I'm not an officer of ModernAd.  At

14   this point, I don't have access to all that.

15        Q.   You're not -- your whole

16   understanding of what was left behind after

17   this asset purchase agreement?

18              MR. LLOPIZ:  Objection.

19              ARBITRATOR:  Rephrase the question,

20        please.

21   BY MR. LEWIS::

22        Q.   Do you have an understanding, if

23   there were any assets left to ModernAd

24   following the asset purchase by Acquiniqi?

25        A.   Is by the fact that the asset
```

1          **AMERICAN ARBITRATION ASSOCIATION**

2    **purchase agreement with certain assets and**

3    **certain liabilities, not everything, and that**

4    **initially, it would be certain assets and**

5    **liabilities that were (inaudible), yes.**

6          Q.   Were you involved in that asset

7    purchase?

8          **A.   I, I was involved with the, in the**

9    **acquisition side, yes.**

10         Q.   So without breaching any

11   confidentiality, were you personally aware of

12   what assets were acquired and what was left

13   behind?

14         **A.   Yes.  Assuming you asked what was**

15   **acquired.  I don't know what was left behind.**

16   **Once I left, I left.**

17         Q.   What employees are remaining at

18   ModernAd currently?

19         **A.   I don't know 'cause I'm not at**

20   **ModernAd.**

21         Q.   Are you aware if there were any

22   employees left after the asset purchase

23   agreement?

24         **A.   Yes, there were.**

25         Q.   Can you give me a rough idea as to



```
 1              AMERICAN ARBITRATION ASSOCIATION
 2    how many?
 3         A.    It's much smaller now and more --
 4    from my understanding of the operations of
 5    ModernAd with middle markets.  Once this
 6    asset purchase happened, there is limited
 7    operations left there, with minimum employees
 8    left.
 9         Q.    Less than 10?
10         A.    I wouldn't know.
11         Q.    Is the email marketing business --
12    did Acquiniqi acquire the email marketing
13    business of ModernAd?
14         A.    No.
15         Q.    So ModernAd still participates and
16    engages in the business that is the subject
17    of this dispute?
18              MR. LLOPIZ:  Objection, lack of
19         foundation.
20              ARBITRATOR:  I don't understand the
21         objection.  I'll --
22              THE WITNESS:  I wouldn't know in
23         any event.
24              ARBITRATOR:  I know.
25              THE WITNESS:  I don't know what
```

Reporter's Ink, Corp.   90 John Street - Ste. 411    New York, NY 10038    www.reporters-ink.com
Phone: 646.395.2522    Fax: 212.374.1236

```
 1              AMERICAN ARBITRATION ASSOCIATION

 2         operations, specifically that are still

 3         left behind, what ModernAd is

 4         conducting business.  I'm not involved

 5         with that any longer.

 6   BY MR. LEWIS::

 7         Q.   How many employees are at Acquiniqi

 8   currently?

 9         A.   Over 200.  I forgot the count, some

10   --

11         Q.   After the asset purchase agreement

12   was ModernAd left in solvent condition?

13              MR. LLOPIZ:  Objection, it calls

14         for a conclusion.

15              ARBITRATOR:  Overruled.

16   BY MR. LEWIS::

17         Q.   Did ModernAd pay its bills?

18              MR. LLOPIZ:  Objection, same

19         objection.

20              ARBITRATOR:  That's a legal

21         objection.

22              MR. LLOPIZ:  Well, he was the chief

23         financial officer of ModernAd, wasn't

24         he?

25              MR. LLOPIZ:  But he is not --
```

```
 1              AMERICAN ARBITRATION ASSOCIATION
 2                 ARBITRATOR:  He wasn't?
 3                 MR. LLOPIZ:  He doesn't know what
 4          what (inaudible).
 5                 ARBITRATOR:  Go ahead, overruled.
 6                 THE WITNESS:  So, you know, on the,
 7          ModernAd from my knowledge had standing
 8          obligations at the time that was
 9          possibly and that you do with basic
10          obligations.  They published money to
11          other vendors and certainly another
12          thing they could --
13   BY MR. LEWIS::
14       Q.   Who's paying the bills for this
15    litigation?
16                 MR. LLOPIZ:  Objection.  That's
17          privileged.
18                 ARBITRATOR:  Hold on, I'll sustain
19          that.
20   BY MR. LEWIS::
21       Q.   Is there an arrangement between
22    ModernAd and Acquiniqi with respect to this
23    litigation?  You testified earlier that you
24    believed that the StormPost, you were hired
25    by ModernAd in April of 2010?
```

