UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-61448-CIV-MARRA/MATTHEWMAN

PULSEPOINT, INC., f/k/a DATRAN
MEDIA CORP.,

       Plaintiff,

v.

7657030 CANADA INC., d/b/a ACQUINITY
INTERACTIVE, LLC, f/k/a MODERNAD
MEDIAL LLC f/k/a PUREADS, et al.,

       Defendants.

_____/



FILED by _____ D.C.

NOV 0 1 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, MOTION TO STAY [DE 34]

THIS CAUSE is before the Court upon Defendants, 7657030 Canada, Inc., Acquinity Interactive, LLC ("Acquinity"), ModernAd Media LLC ("ModernAd"), and Warren Rustin's (collectively, "Moving Defendants") Motion to Dismiss the Amended Complaint, or, in the Alternative, Motion to Stay ("Motion") [DE 34].  This matter was referred to the undersigned by United States District Judge Kenneth A. Marra.  *See* DE 41.  Plaintiff, Pulsepoint, Inc., f/k/a Datran Media Corp. ("Plaintiff"), filed a timely response [DE 39], Moving Defendants filed a timely reply [DE 42], and the matter is now ripe for review.  The Court held a hearing on the matter on October 30, 2013.  For the reasons that follow, this Court **RECOMMENDS** that the District Court **DENY** the Motion [DE 34] in its entirety.

### BACKGROUND

Plaintiff is a creditor currently seeking to recover $2,292,063.73 from various debtors, including ModernAd.  [Compl. ¶ 1, DE 28].  According to the First Amended Complaint

1

("Complaint"), ModernAd failed to pay for services from Plaintiff, an internet marketing company, from August 2010 through December 2011, thereby breaching the Skylist Hosted Services Agreement ("Skylist Agreement") between the parties.  *Id.* at ¶¶ 2, 17.  As a result of this dispute, the parties entered into arbitration.  *Id.* at ¶¶ 1-2.  The arbitrator entered an award in favor of Plaintiff in January 2013, and a judge of the New York State Supreme Court entered a judgment confirming the award, plus interest accruing from the date of the award at a rate of 9% per annum.  *Id.* at ¶ 1.

According to the Complaint, in January 2011, ModernAd sold its assets for the fire sale price of $2,682,783 to third-party corporate entities and/or individuals that either owned, operated, or managed ModernAd in whole or in part or had such a significant relationship with ModernAd that the third parties received the assets without paying a reasonable value for the assets.  *Id.* at ¶¶ 3, 4.  Acquinity was one of these entities.  *Id.* at ¶ 3.  Post-sale, ModernAd could not pay the money it owed Plaintiff.  *Id.*  Plaintiff claims that the sales "were made with the purpose of hindering, delaying, and/or defrauding creditors."  *Id.* at ¶ 5.

Plaintiff is seeking not only to collect on the judgment, but also to set aside and declare fraudulent "the purported conveyances of certain assets from DEBTOR to Acquinity, the other Defendants, and any other parties, as yet unknown, and declaring those transfers to be subject to the CREDITOR's claim."  *Id.* at ¶ 6.  The causes of action alleged in the Complaint are multiple instances of fraudulent conveyance under Florida law—FL UFTA §§ 726.105(1)(a), b, § 726.106(1), § 726.108, and § 726.106(1)—as well as *de facto* merger under Florida common law.

In their Motion, Moving Defendants argue that Plaintiff's claims are time-barred by the one-year statute of limitations set forth in the Skylist Agreement.  [DE 34].  According to Defendants, Plaintiff was required to bring its claim by January 2012 because, as evidenced by the

Complaint, Plaintiff knew of the transfer of assets in January 2011. *Id.* The crux of Moving Defendants' argument is that "the claims arise out of the MSA [Master Services Agreement] and Skylist Agreements, and, as such, Plaintiff is equitably estopped from disclaiming its responsibilities under the contracts, and particularly, the one-year statute of limitations in the agreements." *Id.* In the alternative, Moving Defendants are seeking to have the action stayed because Plaintiff is currently involved in two Florida state court actions related to this case. *Id.* Moving Defendants rely on the *Colorado River* abstention doctrine, and, alternatively, the *Burford* abstention doctrine to establish that this case should be stayed. *Id.*

Plaintiff argues in its response that Moving Defendants are really claiming that "non-parties to a contract who conspire to hide a judgment debtor's assets should be immune from liability if there was a contractual limitations clause in the underlying agreement pursuant to which the judgment debtor was found liable." [DE 39]. Plaintiff asserts that Moving Defendants want the contractual limitations period applied to entities that did not even exist when the Agreement was formed or when the judgment was issued. *Id.* In sum, Plaintiff argues that "Defendants' reliance on a contractual limitations clause contained in a software license and master services agreement to shield them from liability for fraud is as misguided as it is illogical." *Id.* Plaintiff explains that the case should not be stayed as it is completely separate from the two state court actions and that there are no claims pending in the domestication action. *Id.*

In their reply, Moving Defendants argue that Plaintiff references the Skylist Agreement, which sets forth the one-year statute of limitations, twenty-one times in its Complaint and relies on it to make out its causes of action. [DE 42]. They contend that Plaintiff is alleging in the Complaint that Defendants are liable to Plaintiff because of the relationship that stemmed from the Skylist Agreement and that the causes of action are related to the Skylist Agreement. *Id.*

3

Therefore, they emphasize that the Court must abide by the statute of limitations provision in the very agreement upon which Plaintiff is relying. *Id.* Additionally, Moving Defendants argue that, since the Skylist Agreement's limitations of liability clause contains language such as "related to" and "in connection with," the one-year limitation period in the Skylist Agreement should pertain to fraudulent transfers as well. *Id.* Moving Defendants also state that the two state cases involve the same parties, the same arbitration proceeding, and the same judgment, so they will have a significant effect on the issues in this litigation. *Id.*

## DISCUSSION

When a court considers a motion to dismiss pursuant to Rule 12(b)(6), it must accept the factual allegations in the complaint as true and decide whether the allegations "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). A "dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *La Grasta v. First Union Securities, Inc.,* 358 F.3d 840, 845 (11th Cir. 2004) (citation omitted).

The Skylist Agreement and the Master Services Agreement between Plaintiff and ModernAd each have a clause stating that "[a]ny cause of action arising from or in connection with this Agreement or an Attachment must be asserted within one (1) year of the date upon which such cause of action accrued, or the date upon which the complaining party should have reasonably discovered the existence of such cause of action, whichever is later." *See* DE 28, Ex. E & F. The parties do not dispute the existence of this language in both agreements. Plaintiff simply argues that the contractual provision is inapplicable in the current lawsuit.

Moving Defendants primarily argue that Plaintiff became aware of the fraudulent transfers in January 2011 when ModernAd first began transferring its assets to Acquinity. Thus, Moving

Defendants believe that Plaintiff should have brought suit by January 2012 at the latest.   The arbitration did not begin until March 2011, and the arbitration award was not issued until January 2013.   Therefore, Moving Defendants argue that ModernAd is alleged to have moved its assets to avoid liability under the contract and not to avoid paying a judgment, especially since there was no arbitration award yet.   Moving Defendants also point out that Plaintiff named Acquinity as a party to the arbitration but later dropped them as a party, which is proof that Plaintiff was aware of Acquinity's relationship with ModernAd.   They state that Plaintiff must be able to attach liability to Acquinity in order to prevent Acquinity from further transferring its assets to other entities.

Plaintiff asserts that it has already litigated all issues regarding the breach of the Skylist Agreement, so its provisions are no longer controlling.   Plaintiff emphasizes that, while it did know that some asset transfers were occurring back in 2011, it was deceived as to the extent and purpose of those transfers and did not have a mechanism for obtaining more information or discovery from ModernAd at the time.   Plaintiff asserts that the Skylist Agreement cannot possibly be enforced against Defendants, who, other than ModernAd, were not parties to the Skylist Agreement and did not even exist when the Skylist Agreement was finalized in 2007.

Upon reviewing both agreements in this case, as well as the pleadings and entire file, the Court finds that the one-year contractually-imposed limitation for bringing a lawsuit does not apply to the current action.   The contract dispute has already been litigated; not only did the arbitrator issue an award in Plaintiff's favor, but a New York state court judge entered a final judgment in favor of Plaintiff.   Plaintiff obtained a judgment for $2,292,063.73 against ModernAd.   Plaintiff is now seeking to avoid fraudulent transfers which it alleges that ModernAd and related entities have engaged in and is asserting *de facto* merger.   The current lawsuit pertains instead to past and ongoing transfers of assets involving the Moving Defendants.   The Complaint

5

in this case is based upon the final judgment entered by the New York state court.  Moving

Defendants' argument that the transfers were intended to avoid liability of a contract rather than a

final judgment is unavailing.   Furthermore, Moving Defendants have failed to cite any case law

for the proposition that a contractual one-year limitation of liability period should apply in a case

alleging fraudulent transfers and *de facto* mergers against both a party to the underlying contract

and against several non-parties to the contract who did not even exist at the time that the contract

was executed.   Moving Defendants' case law instead primarily pertains to parties moving to

compel arbitration against entities or individuals who were not parties to the underlying contracts

containing the arbitration clauses.   These cases are easily distinguishable.   The instant Complaint

is not governed by the one-year statute of limitations contained in the agreements.   Based on the

above analysis, the Court must recommend that the motion to dismiss be denied.[1]

Next, Moving Defendants argue that this matter should be stayed as there are two pending

related state actions.   Moving Defendants claim that both of these actions directly relate to and

affect the current case.   The first case, an action in aid of execution, is pending in Broward

County, Florida.   Plaintiff has taken the deposition of Warren Rustin but has not carried out any

other discovery.   According to Plaintiff's representations at the hearing, it does not plan on any

other judgment collection remedies in that action as long as this federal case is currently pending.

Additionally, ModernAd filed a counterclaim in Palm Beach County, Florida, which was

dismissed by the trial court and is currently pending on appeal in the Fourth District Court of

Appeal.   While briefing has concluded, neither party ever requested oral argument, and no

decision has been issued.   In that case, which is based upon a separate agreement not at issue in

---

[1] The Court notes that, while it has included some information from the hearing for purposes of providing additional background, it has only considered the four corners of the Complaint in recommending that the motion to dismiss be denied.

this case, the trial court dismissed ModernAd's counterclaim without an evidentiary hearing, finding that the FDUPTA claim should have been brought in arbitration and that ModernAd had waived its rights to litigate the claim in Florida courts.   Per Moving Defendants, "[i]f the appellate court reverses the trial court's ruling as erroneous, the arbitration award would have also been erroneous."   [DE 34].   Also, "a reversal of the trial court ruling would call into question the appropriateness of the Arbitration Award which serves as the basis for Plaintiff's damages."   *Id.* In other words, Moving Defendants argue that, if the Fourth District Court of Appeal reverses the trial court in the counterclaim case, they would be entitled to an evidentiary hearing and could eventually prevail.   If they prevailed, the approximately one million dollars in damages that they asked for could constitute a set-off to the judgment pending against ModernAd that serves as the basis for this federal lawsuit.

Moving Defendants rely on the *Colorado River* abstention doctrine, or, in the alternative, the *Burford* abstention doctrine, to support their argument that this case should be stayed.   "The doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Ambrosia Coal & Constr. Co.,* 368 F.3d 1320, 1331 (11th Cir. 2004) (quoting *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 813 (1976)). Furthermore, "*Colorado River* abstention is permissible in fewer circumstances than are the other abstention doctrines . . . ." *Id.*   The threshold requirement for applying the *Colorado River* abstention doctrine is that the "federal and state cases be sufficiently parallel.   We ask whether the cases 'involve substantially the same parties and substantially the same issues.'" *Acosta v. James A. Gustino, P.A.*, 478 Fed. Appx. 620, 621 (11th Cir. 2012) (quoting *Ambrosia Coal & Constr. Co.*, 368 F. 3d at 1330).   Once a court has decided that the cases are parallel, it should consider the following factors:

(1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F. 3d 994, 997 (11th Cir. 2004) (citing

*TranSouth Financial Corp. v. Bell*, 149 F. 3d 1292, 1294-95 (11th Cir. 1998)).

In the case at hand, Moving Defendants have not established that the state cases and the federal case are parallel. The three cases do not involve all of the same parties, but rather some overlapping parties (ModernAd and Plaintiff). The issues differ as well. The case in front of the appellate court involves a counterclaim by ModernAd and a completely separate agreement than was the basis of the arbitration. Even if Moving Defendants were to prevail at the appellate and then the trial court levels, any judgment against Plaintiff would be independent from the judgment currently pending against Moving Defendants.

With regard to the aid in execution, or domestication, action pending in state court, Plaintiff is simply trying to validate a foreign judgment in Florida. The case is completely unrelated to the federal action, which involves fraudulent transfers carried out by the Defendants to avoid liability. Therefore, both the issues and parties are distinct, and the cases are not parallel. Even if the actions were parallel, the factors weigh against staying the case. This is because the federal and state actions are so unrelated. For example, the state court cannot adequately protect Plaintiff's rights with regard to nullifying the fraudulent transfers when they are not at all at issue in the state court proceedings. Additionally, there is no piecemeal litigation going on given that the issues in the actions are so different. Moreover, there is no real inconvenience to the parties if the case proceeds in federal court.

Similarly, the case should not be stayed pursuant to the *Burford* abstention doctrine. The

Supreme Court has explained the doctrine created in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 361 (1989) (citations and internal quotations omitted).   Moving Defendants argue that this doctrine applies because there is a setoff action pending on appeal.   Moving Defendants have not sufficiently demonstrated either of the above factors.   Moreover, the case pending in front of the appellate court is not a true set-off action in that the cases are so unrelated.   If Moving Defendants were to recover in that state case, they could simply seek to recover the judgment amount from Plaintiff independently.   The *Burford* abstention doctrine is inapplicable to the facts of this case.

## CONCLUSION

In light of the foregoing, this Court **RECOMMENDS** that the District Court deny Moving Defendants' Motion to Dismiss the Amended Complaint, or, in the Alternative, Motion to Stay [DE 34].

## NOTICE OF RIGHT TO OBJECT

A party shall file written objections, if any, to this Report and Recommendation with United States District Judge Kenneth A. Marra within fourteen (14) days of being served with a copy of this Report and Recommendation.   *See* 28 U.S.C. § 636(b)(1)(C).

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, Florida, this /<sup>ST</sup> day of November, 2013.

WILLIAM MATTHEWMAN
United States Magistrate Judge