# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-61448-CIV-MARRA

PULSEPOINT, INC. f/k/a DATRAN
MEDIA CORP.,

        Plaintiff,

v.

7657030 CANADA INC., d/b/a ACQUINITY
INTERACTIVE, LLC, f/k/a MODERNAD
MEDIA LLC f/k/a PUREADS; ACQUINITY
INTERACTIVE, LLC; MODERNAD MEDIA
LLC; WARREN RUSTIN, an individual, and
JOHN DOES 1-100 and 8333947 CANADA,
INC.

        Defendants.

_____/

### 7657030 CANADA INC., ACQUINITY INTERACTIVE, LLC, MODERNAD MEDIA LLC, AND WARREN RUSTIN'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMEDATION ON DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, MOTION TO STAY

Defendants, 7657030 Canada Inc., Acquinity Interactive, LLC ("Acquinity"), ModernAd

Media LLC ("ModernAd"), and Warren Rustin (collectively "Defendants"), by and through

undersigned counsel and pursuant to 28 U.S.C §636(b)(1)(C), Federal Rule of Civil Procedure

72(b)(2), and Southern District Local Magistrate Judge Rule 4(b), hereby object to Magistrate

Judge Matthewman's Report and Recommendation dated November 1, 2013 (the "Magistrate's

Report") [DE 49], denying Defendants' Motion to Dismiss the Amended Complaint, or, in the

Alternative, Motion to Stay ("Motion") [DE 34].

### INTRODUCTION AND BACKGROUND

Plaintiff, Datran Media Corp. ("Plaintiff"), filed this action on July 3, 2013, seeking relief

against the Defendants, and others, alleging several causes of action for fraudulent conveyance

under Florida statutes and common law *de facto* merger. Plaintiff filed its First Amended Complaint on August 23, 2013, which the Defendants moved to dismiss on September 20, 2013. In support of the Motion, the Defendants argued that Plaintiff's claims are time barred by the one year statute of limitations provisions set forth in the Master Service Agreement and Skylist Agreement (the "Contracts") entered into between Plaintiff and ModernAd, which serve as the basis of Plaintiff's claims against all the Defendants.

Pursuant to the statute of limitations provisions of the Contracts, Plaintiff was required to bring any causes of action *arising from or in connection with* the Contracts within one year of the accrual of the cause of action. Plaintiff's claims are for (a) an alleged fraudulent conveyance of assets from ModernAd to Acquinity and Warren Rustin *in January 2011* in order to avoid liability arising under the Contracts, and (b) alleged fraudulent transfers from Acquinity to others *in 2013* in order to avoid payment of a judgment obtained by Plaintiff against ModernAd in an arbitration proceeding (filed on March 24, 2011 and culminating in judgment entered on May 20, 2013) in which Plaintiff claimed ModernAd's breach of the Contracts.

Defendants argued in the Motion and at the hearing on the Motion[1] that, because there is no judgment against Acquinity, Plaintiff must rely on the Contracts to assert the alleged liability of these Defendants, and as such, the action for fraudulent transfer and *de facto* merger arises out of and in connection with the Contracts; because the Complaint exhibited Plaintiff's knowledge of the January 2011 transfer of assets from ModernAd to Acquinity prior to the commencement of the arbitration proceedings in March 2011, Defendants argued that the action is barred by the Contracts' one year statute of limitations. In other words, because Plaintiff cannot establish the claims against Defendants without first establishing a fraudulent transfer or *de facto* merger in

---

[1] The hearing was held before Magistrate Judge Matthewman on October 31, 2013.

2

January 2011 from ModernAd to Acquinity, the entire basis of Plaintiff's claims arise from the original dispute between Plaintiff and ModernAd based on the Contracts (which was ultimately resolved in arbitration); and because the Plaintiff knew of the facts giving rise to that claim before the filing of the arbitration in March of 2011, Plaintiff was required bring its claims within the one-year statute of limitations which expired in 2012. Having failed to do so, the claims are time-barred.

On November 1, 2013, the Magistrate Judge entered a Report and Recommendation Denying Defendants' Motion to Dismiss the Amended Complaint, or, in the Alternative Motion to Stay. Defendants specifically object to the Magistrate's conclusive findings that, (1) the one-year contractually-imposed limitation for bringing a lawsuit does not apply to the current action, and (2) neither the *Colorado* Abstention Doctrine nor the *Burford* Abstention Doctrine are applicable to stay the current action pending the resolution of the two related state actions.

## ARGUMENT

### I.     Standard of Review

A magistrate's report and recommendation is not final until adopted by the district court. 28 U.S.C. §636(b); *Perez-Priego v. Alachua County Clerk of Court*, 148 F. 3d 1272 (11th Cir. 1998). When a magistrate judge issues a report and recommendation and a timely objection is made thereto, the district judge must make a *de novo* determination of the findings and/or recommendations. *See* 28 U.S.C. § 636(b)(1)(C) (2003). "This requires that the district judge 'give fresh consideration to those issues to which specific objection has been made by a party.'" *Hatmaker v. Liberty Mut. Fire Ins. Co.*, 308 F. Supp. 2d 1308, 1312 (M.D. Fla. 2004). Regardless of whether objections are filed, a district judge must review a magistrate's legal conclusions *de novo*. *See id.* After reviewing a report and recommendation, objections, and

responses thereto, the district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *See* § 636(b)(1)(C).

## II.  Plaintiff's Claims Must Be Dismissed Because They Are Time-Barred Pursuant to the One-Year Statute of Limitations in the Contracts

The Contracts contain a one-year statute of limitations, stating that "Any cause of action *arising from or in connection with* this Agreement or an Attachment must be asserted within one (1) year of the date upon which such cause of action accrued, or the date upon which the complaining party should have reasonably discovered the existence of such cause of action, whichever is later." (DE 28, Ex. E & F (emphasis added)). All claims against Defendants are founded on the transfer of assets from ModernAd to Acquinity in January 2011, which transfer Plaintiff alleges was done in order to avoid liabilities arising from the Contracts. As such, all claims arise from and/or in connection with the Contracts. Because the Complaint exhibits Plaintiff's knowledge of the facts giving rise to its causes of action relating to the January 2011 transfer of assets well before one year prior to the filing of suit in July 2013, all claims are time-barred.

### A.  The claims against ModernAd and Warren Rustin, as well as some of the claims against Acquinity, are limited to the January 2011 asset transfer, and thus, clearly arise from and/or in connection with the Contracts.

The causes of action are not stated clearly enough to identify the specific Defendants Plaintiff targets in each cause of action. Nonetheless, from context, it is evident that all the claims against ModernAd and Warren Rustin are limited to the transfer of assets from ModernAd to Acquinity (and the resulting alleged direct benefits to Warrant Rustin) in *January 2011*. Although the Complaint alleges that the debt accrued both before and after this transfer, it is undisputable that such debt arose by virtue of what Plaintiff alleged were continued payment

obligations of ModernAd pursuant to the Contracts. Moreover, some of the claims against Acquinity are based on the same transfer of assets in January 2011, as the recipient of the assets from ModernAd. Plaintiff alleges that the January 2011 asset transfer from ModernAd to Acquinity was done in order to avoid liabilities arising from the Contracts; therefore, those claims clearly arise from and/or in connection with the Contracts.

**B. Liability cannot be established as to Acquinity or 7657030 Canada Inc. without first establishing a fraudulent transfer or de factor merger in January 2011, and therefore, the claims against them also arise from and/or in connection with the Contracts.**

The remaining claims against Acquinity and 7657030 Canada Inc. are based on the alleged transfer of assets from Acquinity to 7657030 Canada Inc., and from Acquinity and 7657030 Canada Inc. to 8333947 Canada, Inc., as alleged "means of further shielding and protecting such assets" from Plaintiff and avoid payment of the judgment entered against *ModernAd* in 2013. However, neither Acquinity nor 7657030 Canada Inc. would be liable to Plaintiff if the original transfer of assets from ModernAd to Acquinity in January 2011 was a legitimate business transaction. To successfully plead and prove its claims against Acquinity and 7657030 Canada Inc. for alleged fraudulent transfers involved in these claims, purportedly in order to avoid payment of the judgment entered against *ModernAd* in 2013, Plaintiff must first establish the fraudulent transfer from ModernAd to Acquinity in January 2011. Without attaching liability to Acquinity based on the *January 2011* transfer, Plaintiff cannot successfully allege that Acquinity subsequently fraudulently transferred assets to 7657030 Canada Inc. and/or 8333947 Canada, Inc. Once again, because Plaintiff alleges the January 2011 transfer from ModernAd to Acquinity was done in order to avoid liabilities arising from the Contracts, these claims too arise from the Contracts.

While the Magistrate Judge noted in his Report that the current lawsuit pertains to past and potentially ongoing transfers of assets involving Acquinity, he failed to recognize that without liability for fraudulent conveyance first being attached to Acquinity based upon the January 2011 transfer arising from the original dispute based on the Contracts, there can be no claim for fraudulent conveyance against Acquinity or 7657030 Canada Inc. for subsequent transfers.

The Magistrate Judge also unnecessarily focused on the fact that the debtors, other than ModernAd, were not parties to the agreements between Plaintiff and ModernAd and did not exist at the time the Contracts were executed. Claims against non-signatories to a contract have been found to arise from or be in connection to contracts under many circumstances. *See Roman v. Atlantic Coast Construction and Development, Inc.*, 44 So. 3d 222, 223–24 (Fla. 4th DCA 2012) (finding that because the plaintiff was seeing relief under the contract against non-signatories the claims were deemed to arise from or where in connection with the contract such that the non-signatories could compel arbitration under the terms of that contract); *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527–28 (5th Cir. 2000) (finding that plaintiff, who was a signatory to the agreement, was equitably stopped from denying enforcement of the arbitration clause in that agreement because plaintiff was relying on that same agreement in order to assert claims against non-signatories to the agreement). The corporate existence of the non-signatories is not relevant in the analysis. Consequently, the claims against Defendants who were not parties to the contracts can be deemed to have arisen out of the Contracts.

Accordingly, any claims Plaintiff had against ModernAd, the signatory to the Contracts, or any relevant party non-signatories to the Contract but arising from or in connection with those Contracts, must have been brought within the applicable statute of limitations period provided

for by the written provisions of the contracts and pursuant to arbitration proceedings, as the alleged fraudulent conveyance arose out of the debts owed on the Contracts.

Moreover, by the nature of a claim for fraudulent transfer dictates that, in most circumstances, the transferee would not have been a signatory to the contract. Yet, in *Tenet Healthcare Corp. v. Maharaj*, 787 So. 2d 241 (Fla. 4th DCA 2001), the court specifically recognized that a claim for fraudulent conveyance against non-signatories to a contract can arise from the contract based on an arbitration provision, because in making out its claim for fraudulent conveyance the plaintiff relied on the same contract between the signatories and same operative facts as those claims plaintiff asserted against the signatory party.

Here, Plaintiff's Complaint pointedly relies upon the Contracts, which is necessary, as Plaintiff's claims do not arise without the existence of and dispute over the Contracts. Plaintiff's Complaint makes clear that even Plaintiff believes the transfer of assets from ModernAd to Acquinity was deliberately in anticipation of ModernAd's debts owed due to ModernAd's alleged breach of the Contracts between it and Plaintiff. Plaintiff's Complaint specifically alleges:

> 27.  During the Arbitration, [ModernAd] was deliberately vague about which of [ModernAd's] assets had been transferred to Acquinity and which remained. [ModernAd's] former CFO and Acquinity's current CFO, Scott Modist, testified that only "certain assets and liabilities" were conveyed by [ModernAd] to Acquinity, and claimed that Acquinity had not acquired [ModernAd's] email marketing business – the dispute between CREDITOR and [ModernAd] was over [ModernAd's] refusal to pay for email marketing services rendered by CREDITOR pursuant to the Skylist Agreement.

> 50. Upon further information and belief, one of the reasons that Mr. Rustin and Mr. Jonas structured the "sale" as they did, and depressed the sale price of [ModernAd's] assets and membership units, was to diminish any assets available to pay creditors and to

diminish liabilities to individuals with a contractual right to share in the profits of a sale or change in control of [ModernAd].

59. Upon information and belief, following the sale of substantially all of [ModernAd's] assets to Acquinity, Mr. Rustin caused ModernAd to transfer $2,682,783 to himself, without consideration.

60. Such transfer was made at a time when *Mr. Rustin knew that CREDITOR had a claim against [ModernAd] and had threatened [ModernAd] with litigation.* Mr. Rustin was also aware of the Skylist Agreement, and knew, or reasonable should have known, that it contained an automatic renewal clause and had, in fact, renewed for another year.

61. Indeed, *CREDITOR and [ModernAd] had been engaged in negotiations over the Claim from October to December 2010. On January 24, 2011, CREDITOR sent [ModernAd] a formal notice demanding payment of CREDITOR's Claim, then roughly $475,000. CREDITOR also reminded [ModernAd] that the operative agreement had renewed, and that DEBTOR was liable for making twelve additional payments of $92,500 each.*

62. [ModernAd] *knew or reasonably should have known that it was indebted to CREDITOR for a minimum of roughly $1,585,000.*

63. Following receipt of the January 24, 2011 letter, Mr. Modist responded by email, dated January 26, 2011, that, "[w]e hope to work out this matter in a mutually agreeable manner." Mr. Modist write from an Acquinity email address and made no distinction between Acquinity and [ModernAd] in his pledge to work the matter out. At the time of Mr. Modist's email, he was CFO of Acquinity – not ModernAd.

84. ModernAd stopped paying for Services it received under the Skylist Agreement after July 2010. The Skylist Agreement automatically renewed for another year on or about January 2, 2011. ModernAd failed to make 17 required monthly payments of $92,500, for a total of $1,572,000.

85. After the sale of substantially all of ModernAd's assets to Acquinity on January 1, 2011, Acquinity continued to use Datran's services without compensation.

Clearly, Plaintiff has relied on the Contracts to make out its claims against the Defendants. The very basis of Plaintiff's claims is ModernAd's alleged breach of the Contracts and the alleged debts ModernAd incurred as a result thereof, which Defendants allegedly knew existed and deliberately wanted to avoid. This is further evidenced in Plaintiff's allegations in each of its claims in the Complaint. For example, as to the first claim for fraudulent conveyance, Plaintiff alleges the following:

> 110. Upon information and belief, at the time of the purported conveyance of substantially all of the assets of [ModernAd] to Acquinity on January 1, 2011, [ModernAd], 7567030 Canada, Inc., and Mr. Rustin knew that [ModernAd] owed $462,500 to CREDITOR, and was *contractually obligated* to pay CREDITOR another $1,110,000 in 2011.

> 111. CREDITOR's claim arose, and [ModernAd's] debt to CREDITOR, accrued, both before and after the purported transfer was made. [ModernAd] was aware of, ad reasonably should have known about CREDITOR's claim.

As to the second claim for fraudulent conveyance, Plaintiff alleges the following:

> 133. Upon information and belief, at the time of the purported conveyance of substantially all of the assets of [ModernAd] to Acquinity on January 1, 2011, Defendants knew that [ModernAd] owed $462,500 to CREDITOR.

> 134. CREDITOR's claim arose, and [ModernAd's] debt to CREDITOR accrued, before the purported transfer was made.

As to the third claim for fraudulent conveyance, Plaintiff alleges the following:

> 144. Upon information and belief, following the sale of substantially all of DEBTOR's assets to Acquinity, Mr. Rustin caused DEBTOR to transfer $2,682,783.00 to himself, without consideration.

> 145. Such transfer was made at a time when Mr. Rustin knew that CREDITOR had a Claim against [ModernAd] and had threatened [ModernAd] with litigation.

As to the fourth claim for fraudulent conveyance, Plaintiff alleges the following:

> 161. Upon information and belief, following the sale of substantially all of DEBTOR's assets to Acquinity, Mr. Rustin caused DEBTOR to transfer $2,682,783.00 to himself, without consideration.

> 162. Such transfer was made at a time when Mr. Rustin knew that CREDITOR had a Claim against [ModernAd] and had threatened [ModernAd] with litigation.

The claims refer to a debt arising from Plaintiff's claims against ModernAd for breach of the Contracts and the alleged efforts to avoid payment of that debt. None of those claims allege that the purported fraudulent conveyance between ModernAd and Acquinity arose for any other reason other than because ModernAd allegedly wanted to avoid its debts to Plaintiff that it was *contractually obligated* to pay.

Moreover, like the plaintiff in *Maharaj*, Plaintiff alleges fraudulent conveyance claims of assets it believes it was entitled to as a creditor of ModernAd. It alleges the Defendants transferred assets away from ModernAd to Acquinity skirt the requirement to pay under the contracts. Accordingly, like *Maharaj*, Plaintiff's relationship with Defendants and Defendants' duties to Plaintiff—and specifically the alleged obligation to pay $92,500.00 a month for seventeen months—arise from the Contracts. Therefore, the claims arise from and/or in connection with the Contracts, and, as such, Plaintiff is equitably estopped from disclaiming its responsibilities under the contracts; particularly, the one-year statute of limitations in the contracts. *See Grigson*, 210 F.3d at 527 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 948 (11th Cir. 1999), *abrogation on other grounds recognized by Escobal v. Celebration Cruise Operator, Inc.,* 482 Fed. Appx. 475, 476 (11th Cir. 2012) *cert. denied,* 133 S. Ct. 1998 (U.S. 2013)).

**C. The Complaint exhibits Plaintiff's knowledge of the facts giving rise to the causes of action prior to one year before filing of this lawsuit; thus, the action is time-barred.**

Plaintiff was aware of the transfer and sale of assets from ModernAd to Acquinity since January 2011. Specifically, Plaintiff identifies its knowledge of the transfer and suspicions related to transfer dating back to January 2011:

> 31. On or about January 13, 2011, in a letter addressed "Dear Partner," Mr. Jonas proclaimed that he had, "formed a new company, Acquinity Interactive, along with two former ModernAd Media executives, Greg Van Horn and Josh Greenberg." Jonas stated that Acquinity had acquired "certain strategic assets of ModernAd." For both advertisers and publishers, Jonas assured clients that, "your existing campaigns will remain unaffected," and to expect to hear from their current account managers. . . . Jonas referred to Acquinity as, "our new entity."
>
> ***
>
> 33. By letter of that same date [January 13, 2011] from Scott Modist, Chief Financial Officer of both ModernAd and Acquinity, to "Our Valued Customers," Mr. Modist stated that, "we have transitioned certain aspects of our operations from ModernAd Media, LLC to Acquinity Interactive. . . .
>
> 34. Mr. Modist used the word "our" to describe the operations that were "transitioned." The use of the personal pronouns "we" and "our" in the January 13 letters was intended to convey to customers that Acquinity was a continuation of [ModernAd], a position that [ModernAd] has taken in two unrelated litigations.
>
> 35. The Modist Letter further instructed [ModernAd's] customers to "direct all future payments to Acquinity Interactive, 2200 SW 10th Street, Deerfield Beach, FL 33442," the same address at which [ModernAd] conducted business.
>
> ***
>
> 37. The letter further stated that the, [sic] "ACH and Domestic Wire Routing Numbers for ModernAd and Acquinity are the same."
>
> 38. [Plaintiff] received copies of both January 13[, 2011] letters from Acquinity.

(DE 28 at ¶¶ 25, 31-35, 37, 38).

Plaintiff further alleges that on January 24, 2011, Plaintiff sent ModernAd correspondence formally requesting ModernAd pay Plaintiff's claim, "then roughly $475,000.00," for unpaid services ModernAd was receiving under the Contracts since July of 2010. (DE 28 at ¶¶ 61, 84). In that January 24, 2011 letter, Plaintiff also asserted ModernAd was liable for making another twelve payments at $92,500.00 for the year 2011 (payment which would be owed under the agreement if the contract auto-renewed). (DE 28 at ¶ 61; DE 28-6). Plaintiff alleges that, "[f]ollowing receipt of the January 24, 2011 letter, Mr. Modist responded by email, dated January 26, 2011, that, '[w]e hope to work out this matter in a mutually agreeable manner,'" and alleges that "Mr. Modist wrote *from an Acquinity email address and made no distinction between Acquinity and [ModernAd] in his pledge to work the matter out*. At the time of Mr. Modist's email, he was CFO of Acquinity – not ModernAd." (DE 28 at ¶ 63 (emphasis added)).

Thereafter, on March 17, 2011, Plaintiff filed a claim in arbitration against ModernAd for breach of the Contracts, in which it initially named Acquinity. (DE 28 at ¶ 86).

These facts evidence Plaintiff's knowledge of the facts giving rise to the claims relating to the transfer of assets in January 2011 as early as that same month.

Because the transfer of assets between ModernAd and Acquinity took place in January 2011 and was allegedly initiated to avoid the debts of ModernAd incurred from the Contracts, and Plaintiff was well aware of the transfer at that time, Plaintiff was required to bring its claims arising from or in connection with the Contracts within one year—not when the statute of limitations had ran well before the filing of this action in July of 2013. Plaintiff cannot be permitted to bring untimely claims founded on a January 2011 conveyance based on the alleged avoidance of debts arising from the Contracts in order to attempt to collect a judgment that was

12

entered against ModernAd in May of 2013 following arbitration proceedings. Having failed to present the claims that arose from and/or in connection with the Contracts in arbitration within the one-year statute of limitations, the claims against Defendants are time-barred and must be dismissed.

> **D. If the Court is inclined to deny Defendants' Motion to Dismiss, it should not close the door for future argument on these issues based on development of the record through discovery.**

In recommending that Defendants' Motion to Dismiss be denied, the Magistrate's Report conclusively foreclosed Defendants' opportunity to reargue these issues based on development of the record through discovery. As noted above, the allegations of the Complaint establish the Plaintiff's knowledge of the facts giving rise to the causes of action arising from and/or in connection with the Contracts. Nonetheless, should the Court find these allegations insufficient to establish the expiration of the statute of limitations, it should allow the Defendants to raise the argument based on facts developed in discovery or based on matters outside of the Complaint.

### III.   Alternatively, This Action Should Be Stayed Pending The Result Of The Action Currently Pending Before The Fourth District Court Of Appeal

In the Report, the Magistrate Judge incorrectly found that a stay on the current action is not warranted because the two pending, related state actions are not sufficiently parallel to the present case under the *Colorado* abstention doctrine and the action pending in front of the Fourth District Court of Appeal is not a true setoff action because it is so unrelated to the present case such that it cannot meet the two factors under the *Burford* abstention doctrine.

In doing so, the Magistrate Judge failed to recognize that, for purposes of abstention under the *Colorado River*, the parties need not be identical; rather, they must involve "substantially the same parties and substantially the same issues." *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004) (citing *Interstate Material Corp. v. City*

*of Chicago,* 847 F.2d 1285, 1288 (7th Cir. 1988), for the proposition that, "the addition of the federal defendants in the federal suit by itself does not destroy the parallel nature of the case. If it did, parties could avoid the doctrine of *Colorado River* by the simple expedient of naming additional parties."); *see also Calvert Fire Ins. Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1229 (7th Cir. 1979). Plaintiff alleges the parties are substantially the same. Further, the actions involve substantially the same issues insofar as the state action would serve as a setoff of the judgment Plaintiff seeks to collect.

The Magistrate Judge also failed to recognize that the New York judgment that Plaintiff seeks to collect from Defendants includes an award for attorney's fees relating to the action pending before the Fourth District Court of Appeal, and that the state action would serve as a setoff to the judgment, and as such, is a proper consideration for staying proceedings in this Court. It is clear that a setoff action can be the basis for a motion to stay. In *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706 (1996), the Supreme Court determined that dismissal of a federal action where a setoff action is being decided in a state court action was improper, but noted that "*a stay order* might have been *appropriate.*" *Id.* at 731 (emphasis added). The Court further noted, "*Burford* might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law." *Id.* at 730–31. *Quackenbush* directly supports Defendants' position that it is appropriate in this case to stay the action pending the resolution of its appeal on the setoff action pending before the Fourth District Court of Appeal. The appeal involves significant and "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.* The question of substantial public import being decided is whether the trial court improperly determined that ModernAd was required to bring its claim

under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") in the arbitration under New York law, even though there is no analogous statutory scheme in New York law under which ModernAd could have asserted its FDUTPA claim. The policy problem of substantial public importance is that ModernAd has been prevented from pursuing its FDUTPA claim in Florida courts and has been deprived of its statutory right as a resident of Florida.

Accordingly, at issue in that action is the scope of a right of the citizen of the state of Florida to bring an action in Florida courts when application of a contractual provision would deny the citizen a statutory right. If the Court were to continue this litigation, it would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern" by rendering the Fourth District Court of Appeal's opinion meaningless. Reversal of the trial court's ruling would allow ModernAd to challenge the arbitration award in state court and seek a setoff pursuant to the FDUTPA claim. Such setoff would reduce the liability or completely render the current causes of action against Defendants futile. Accordingly, if the Court decides to deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint, it should vacate the Magistrate's Report denying Defendants' Motion to Stay and stay the proceeding pending the outcome of the state court actions.

## <u>CONCLUSION</u>

For the aforementioned reasons, Defendants' respectfully request that this Court not adopt the Magistrate Judge's Report and Recommendation and, instead, enter and Order granting Defendants' Motion to Dismiss the Amended Complaint, or, in the Alternative, Motion to Stay.

Dated: November 15, 2013.             Respectfully submitted,

s/ Joan Carlos Wizel
Onier Llopiz (FBN 579475)
ol@lydeckerdiaz.com
Joan Carlos Wizel (FBN 37903)
jcw@lydeckerdiaz.com
Roland Potts (FBN 087072)
rp@@lydeckerdiaz.com
LYDECKER │ DIAZ
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone: (305) 416-3180
Facsimile:  (305) 416-3190

*Attorneys for Defendants 7657030 Canada
Inc., Acquinity Interactive, LLC, ModernAd
Media LLC, and Warren Rustin*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 15, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I also certify that a true and correct copy of the foregoing was served this day via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.

s/ Joan Carlos Wizel
Joan Carlos Wizel (FBN 37903)

## SERVICE LIST

**Timothy M. Hartley**
Hartley Law Offices, PLC
800 SE third Avenue, Fourth Floor
Fort Lauderdale, FL 33316
Telephone: (954) 357-9973
E-mail:Hartley@hartleylaw.net

**Brett E. Lewis**
Lewis & Lin, LLC
45 Main Street, Suite 608
Brooklyn, NY 11201
Telephone: (718) 243-9323
E-mail:brett@iLawco.com