UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF FLORIDA
FORT LAUDERDALE DIVISION

PULSEPOINT, INC., f/k/a DATRAN
MEDIA CORP.,

    Plaintiff,                                                   CASE NO.: 0:13-CV-61448

           v.

7657030 CANADA INC., d/b/a ACQUINITY
INTERACTIVE, LLC, f/k/a MODERNAD
MEDIA LLC f/k/a PUREADS; ACQUINITY
INTERACTIVE, LLC; MODERNAD MEDIA LLC;
WARREN RUSTIN, an individual;
8333947 CANADA INC. and JOHN DOES 1-100,
    Defendant.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT 8333957 CANADA, INC.'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT OR
ALTERNATIVELY MOTION FOR MORE DEFINITE STATEMENT**

        Plaintiff Pulsepoint, Inc., f/k/a Datran Media Corp. ("Plaintiff"), by and through its undersigned counsel, hereby submits the following memorandum of law in opposition to the motion to dismiss or alternatively motion for more definite statement filed by Defendant 833947 Canada, Inc. d/b/a Inbox Direct ("Defendant" or "Inbox Direct").

**INTRODUCTION**

        Defendant Inbox Direct's motion is the latest in a series of attempts by the same cast of characters to evade the judgment entered in New York on June 13, 2013, and in Broward County, Florida on June 21, 2013 (the "Judgment") against Defendant ModernAd. The First Amended Complaint (the "Complaint") details an ongoing scheme to thwart Plaintiff's enforcement efforts. As the Complaint alleges, Inbox Direct conducts substantially the same Internet marketing business as did ModernAd and Acquinity, using the same technology as did

1

ModernAd and Acquinity, with the same employees as did ModernAd and Acquinity, under the same ownership and/or management as did ModernAd and Acquinity. ModernAd, Acquinity and Inbox Direct all walk, talk and quack alike. The only difference between ModernAd/Acquinity and Inbox Direct is that now, with the heat of the FTC and litigation from former managers beating down on them, their unchanged principals have attempted to hide their tracks, yet again, through the formation of yet another new entity. Simply put, Inbox Direct is liable for the actions of its predecessor entities, as all three entities are in fact the same company. The fact that Defendants, including Inbox Direct, have gone to great lengths to conceal the existence and evidence of such conduct should not warrant pre-answer dismissal. That notwithstanding, the Complaint sufficiently states a cause of action for Inbox Direct's role in Defendants' scheme.[1]

Notice pleading is all that is required. Inbox Direct contends that it cannot answer because it cannot interpret the Complaint. However, the Complaint is clear: Plaintiff seeks to hold Inbox Direct liable for de facto merger/successor liability. The facts alleged in the Complaint are plausible and raise a reasonable expectation that discovery will supply additional proof of Inbox Direct's liability for de facto merger/successor liability, as well as fraudulent conveyance and possibly other claims. Defendant characterizes the Complaint as a "shotgun pleading," however, incorporating the same set of background information into each count is not improper, and the cases cited by Defendant are inapposite. As such, Defendant's motion to dismiss should be denied.

Finally, as Plaintiff's Complaint sufficiently states a claim, Defendant's motion for a more definite statement should also be denied as moot. Furthermore, Defendant's motion is

---

[1] It should be telling that Inbox Direct (a Canadian corporation) does not challenge this Court's jurisdiction over it – perhaps because it engages in the same business from the same Florida locations as did ModernAd and Acquinity?

2

insufficient in that it does not identify the defects complained of or the details desired, as required by Fed. R. Civ. P. 12(e). Thus, even if the Court determines that the request for a more definite statement is not moot, it must also be denied.

## BACKGROUND

As set forth more fully in the Amended Complaint, Defendant ModernAd owes Plaintiff $2,292,063.73, pursuant to the judgment of the New York State Supreme Court, Hon. Barbara Kapnick, dated May 20, 2013 and entered June 13, 2013, confirming the award of Arbitrator Thomas Halket, Esq. of the American Arbitration Association, dated January 9, 2013, as modified on January 18, 2013 (the "Award"), plus interest accruing from the date of the Award at a rate of 9% per-annum. See Complaint at [DE 28]. Plaintiff's Complaint seeks injunctive relief to stop the transfer and dissipation of assets from ModernAd Media LLC ("Defendant ModernAd") to Defendants and/or other presently unknown entities and from Defendants to third parties. Defendant ModernAd – a company with revenues of roughly $120 million-per-year – purported to sell substantially all of its assets to defendant 7657030 Canada, Inc., d/b/a Acquinity Interactive ("Acquinity"), for the fire sale price of approximately $2.7 million. Complaint at ¶¶ 3, 24-38. Defendant ModernAd subsequently transferred to defendant Warren Rustin substantially all of the $2.7 million it received in that asset sale. Id. at ¶¶ 58, 64-68. The sale of substantially all of its assets for less than reasonably equivalent value – first to Acquinity, and a second time to Warren Rustin – left Defendant ModernAd insolvent and unable to pay its debts to creditors. Id. at ¶¶ 4, 65, 100-174.

As stated in Plaintiff's Motion for Expedited Discovery [DE 33], since the filing of the Complaint in this action, Defendants have begun the process of shutting down Defendant Acquinity, again, for the sole purpose of evading payment of the Judgment, as well as debts

owed to other creditors. Complaint at ¶¶ 190-192; [DE 33] at 3.  Defendants either have transferred, or are in the process of transferring, Acquinity's assets to new entities, including Defendant 8333947 Canada d/b/a Inbox Direct ("Inbox Direct"). Id.  Inbox Direct is a mere continuation of ModernAd and Acquinity, the same as Acquinity was a mere continuation of ModernAd. Id.; see Complaint at ¶¶ 190-192.

Plaintiff has been and continues to be harmed as a direct and proximate result of the transferring of Defendant ModernAd's assets to corporate entities and/or individuals that are either owned, operated, or managed by Defendants ModernAd or Acquinity, in whole or in part, or have such a significant relationship with Defendants ModernAd and Acquinity that the third party received such asset(s) without paying reasonably equivalent value in exchange for them. Complaint at ¶¶ 4, 68, 154 and 186.  Specifically, the Complaint alleges that,

> 4.     [Defendant ModernAd] transferr[ed] assets that it maintained an ownership interest in [or] to third party corporate entities and/or individuals that are either owned, operated, or managed by Defendant ModernAd, in whole or in part, or have such a significant relationship with Defendant ModernAd that the third party received the asset(s) without paying reasonably equivalent value in exchange for the asset(s).
>
> \*     \*     \*
>
> 5.     Upon information and belief, such sales were made with the purpose of hindering, delaying, and/or defrauding creditors.
>
> \*     \*     \*
>
> 6. . . .[Defendant ModernAd] convey[ed] . . . certain assets from Defendant ModernAd to . . . the other Defendants, and any other parties, as yet unknown. . .

[DE 28] at ¶¶ 4-6.

The Complaint alleges various fraudulent transfers between ModernAd, Acquinity, and Warren Rustin, and asserts successor liability against both Acquinity and Inbox Direct. See [DE 28] at ¶¶

4

17-73, 190-192.  As stated in the Complaint, the gang at ModernAd are at it again – they have shuffled off the assets of Acquinity into new entities, including Defendant Inbox Direct, again in an effort to evade and frustrate the Judgment. Complaint at ¶¶ 190-192; see [DE 33] at 4.  The Complaint incorporates the factual allegations against all Defendants, and pleads additional allegations specific to Inbox Direct:

> 190.    Upon information and belief, as a direct result of this litigation and similar litigation, as well as a suit recently filed by the FTC against Acquinity, Defendants Acquinity and Acquinity, LLC have or are in the process of transferring all assets, personnel, technology and business to Defendant [Inbox Direct] for little or no consideration.
>
> 191. Upon information and belief, Defendants, Acquinity and Acquinity, LLC and Defendant [Inbox Direct] share the same corporate structure and ownership, with Defendant [Inbox Direct] being merely a continuation and alter ego of Defendants, Acquinity and Acquinity, LLC.

[DE 28] at ¶¶ 190-91.

Accordingly, the Complaint lays out a history of the relationship between the entities of which Plaintiff is aware, and a framework of how the principals of Defendant ModernAd shuffled assets between one or more third-party companies.  See Complaint at ¶¶ 1-108.  The Amended Complaint makes clear that Inbox Direct is one of those companies, and that Inbox Direct should be held liable under a theory of successor liability. Id. at ¶¶ 6, 190-192.

## ARGUMENT

**I.    Defendant's Motion To Dismiss Must Be Denied.**

"It is long settled that a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Tires Inc. of Broward v. Goodyear Tire & Rubber, 295 F. Supp. 2d 1349, 1352 (S.D. Fla. 2009) (citing Conley v. Gibson, 355 U.S. 41 (1957)).  In reviewing a motion to

dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must take all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. See Chaparro v. Carnival Corp., 693 F. 3d 1333, 1337 (11th Cir. 2012); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). Detailed factual allegations are not necessary in order to prevent dismissal of a complaint, but the allegations must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Gibson, 355 U.S. at 47).

### A.  Plaintiff's Complaint alleges successor liablity against Defendant Inbox Direct.

Defendant Inbox Directs asserts that it should be dismissed from the case because the Complaint fails to allege, inter alia, the existence of successor liability. [DE 81] at 6-7. Under Florida law, a predecessor corporation's liabilities may be imposed on its successor when: "(1) the successor expressly or impliedly assumes the obligations of the predecessor; (2) the transaction is a de facto merger; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor." Sewell v. D'Alessandro & Woodyard, Inc., 655 F. Supp. 2d 1228, 1235 (M.D. Fla. 2009) (citing Centimark Corp. v. A to Z Coatings & Sons, Inc., 288 Fed.Appx. 610, 614 (11th Cir. 2008); see also Cuervo v. Airport Services, Inc., Case No. 12-20608-CIV-GOODMAN (S.D. Fla. Nov. 22, 2013); Bernard v. Kee Mfg. Co., 409 So.2d 1047, 1049 (Fla. 1982).

In Sewell, the plaintiff alleged that two entities devised a real estate investment scheme where the two companies would sell new houses, and then another, third-party company took over the business and obligations under the subject agreements. 655 F. Supp. 2d at 1235. After

the third-party company filed a motion to dismiss for failure to state a claim, the Court denied the motion, noting that the Sewell plaintiff's allegations of continuity of management, personnel and physical address and take over of business operations of the predecessor entities "supports a finding of de facto merger under Florida law," for the first and second basis for successor liability Id. at 1236.

Similarly, in Airport Services, the Court denied a motion to dismiss for failure to state a claim under successor liability when the plaintiff alleged the successor entity had knowledge of a debtor's outstanding judgment, was a "mere continuation" of the debtor entity, and engaged in a fraudulent transactions to avoid paying the judgment. See Airport Services, Case No. 12-20608-CIV-GOODMAN.  Noting that while the complaint was "light on specifics of how Proficient took over ASI's operations," plaintiffs "are not required to allege that level of detail to survive a motion to dismiss." Id.; cf. Infante v. Bank of America Corp., 680 F. Supp. 2d 1298, 1305 (S.D. Fla. 2009) (granting motion to dismiss where there was no allegation of "continuity of the selling corporation as evidenced by" . . . "the same management, personnel, assets, location and stockholders.")

As stated above, the Complaint details the relationship between the named Defendants and how the principals of Defendant ModernAd (both known and covert) shuffled assets between one or more third-party companies. See [DE 28] at ¶¶ 1-108.  Inbox Direct is one of those companies. Id. at ¶¶ 6, 190-192.  Specifically, the Complaint alleges that,

> 4. [Defendant ModernAd] transferr[ed] assets that it maintained an ownership interest in [or] to third party corporate entities and/or individuals that are either owned, operated, or managed by DEBTOR, in whole or in part, or have such a significant relationship with DEBTOR that the third party received the asset(s) without paying reasonably equivalent value in exchange for the asset(s).

7

> \*     \*     \*
>
> 5.     Upon information and belief, such sales were made with the purpose of hindering, delaying, and/or defrauding creditors.
>
> \*     \*     \*
>
> 6. . . .[Defendant ModernAd] convey[ed] . . . certain assets from DEBTOR to . . . the other Defendants, and any other parties, as yet unknown. . .

[DE 28] at ¶¶ 4-6.

The Complaint alleges various fraudulent transfers between ModernAd, Acquinity, and Warren Rustin, and asserts successor liability against both Acquinity and Inbox Direct. See [DE 28] at ¶¶ 17-73, 190-192.  The Complaint alleges:

> 190.   Upon information and belief, as a direct result of this litigation and similar litigation, as well as a suit recently filed by the FTC against Acquinity, Defendants Acquinity and Acquinity, LLC have or are in the process of transferring all assets, personnel, technology and business to Defendant [Inbox Direct] for little or no consideration.
>
> 191. Upon information and belief, Defendants, Acquinity and Acquinity, LLC and Defendant [Inbox Direct] share the same corporate structure and ownership, with Defendant [Inbox Direct] being merely a continuation and alter ego of Defendants, Acquinity and Acquinity, LLC.

[DE 28] at ¶¶ 190-91.

Like in <u>Sewell</u>, where the plaintiff alleged continuity of business and personnel, Plaintiff herein alleges "Defendants Acquinity and Acquinity, LLC have or are in the process of transferring all assets, personnel, technology and business to Defendant [Inbox Direct]." <u>See Sewell</u>, 655 F. Supp. 2d. at 1235-36.  These allegations, when taken in connection with the entire Complaint, and viewed in the light most favorable to Plaintiff, are sufficient to plead successor liability. <u>See Sewell</u>, 655 F. Supp. 2d. at 1235-36.

Moreover, Defendant Inbox Direct's connection to Acquinity and ModernAd cannot be denied with a straight face.  When offered the opportunity in Court to deny that Inbox Direct was created by Acquinity, Acquinity's counsel was conspicuously silent. See [DE 50], Tr. 40:22-41:5.  Discovery produced by Inbox Direct indicates that Garry Jonas, an owner of Acquinity and ModernAd, is a trustee of Inbox Direct. See Affidavit of Justin Mercer ("Mercer Aff.") at Exhibit A, annexed hereto as **Exhibit 1**. Inbox Direct uses the same mailing address as 7657030 Canada Inc., d/b/a Acquinity Interactive. Mercer Aff. at Exhibit B.  Inbox Direct is represented by a former Lydecker Diaz attorney – the same firm representing Defendants ModernAd, Warren Rustin and Acquinity.  To suggest that Inbox Direct is somehow unaware of the allegations against it, or its role in Defendants' scheme to evade paying the Judgment, is disingenuous, at best.  Defendant's motion is just more of the same frivolous and obstructionist litigation employed by the other Defendants in this action.

In sum, Plaintiff's allegations put Inbox Direct on notice of the claim against it.  While Plaintiff may not have (nor need to have) all the details of that transfer, that allegation raises a reasonable expectation that discovery will supply additional proof of Inbox Direct's liability under a de facto merger theory, as well as additional theories. See Airport Services, Case No. 12-20608-CIV-GOODMAN. As such, Defendant's motion to dismiss must be denied.

   B.  The Complaint is not a "shotgun pleading"

Next, Defendant mistakes Plaintiff's recitation of the factual allegations as a "shotgun pleading," when it is clearly not. "[S]hotgun pleadings . . . incorporate all allegations of *each count* into every *successive count*." SEC v. Levin, Case No. 12-21917-CIV-ROSENBAUM/SNOW (S.D. Fla. Feb. 14, 2013) (emphasis added); see Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002) ("The typical

9

shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.").

"[P]leadings such as this one that merely incorporate the *same set of factual circumstances discretely into each count* are sufficient to state a claim." Levin, Case No. 12-21917-CIV-ROSENBAUM/SNOW (emphasis added). "It is hardly a violation in every case for several counts to adopt by reference paragraphs describing the same set of circumstances." Oginsky v. Paragon Properties of Costa Rica LLC, 784 F.Supp.2d 1353, 1361 (S.D. Fla. May 16, 2011) (quoting Flamenbaum v. Orient Lines, Inc., Case No. 0322549, 2004 WL 1773207, at *15)).

The Complaint merely adopts the factual circumstances of paragraphs 1 through 108 discretely into each count. See [DE 28]. This is not improper. Thus, this Court should deny Defendant's motion to dismiss in its entirety.

## II. Defendant's Motion for a More Definite Statement must be denied as moot.

First, "a motion for a more definite statement must be denied if the complaint attacked thereby, considered as a whole, fairly gives notice of the claim or claims asserted therein so as to permit the filing of a responsive answer." Herman v. Continental Grain Co., 80 F. Supp. 2d 1290, 1297 (M.D. Ala. Jan. 18, 2000) (citing Anderson v. District Board of Trustees of Central Florida Community College, 77 F.3d 364 (11th Cir. 1996)). "A motion for a more definite statement under Rule 12(e) is not to be employed as a substitute for pre-trial discovery proceedings." Id. Specific details are not required under the Federal Rules of Civil Procedure, for "details surrounding the allegations in [Plaintiff's Complaint] are properly obtained through the discovery process." Campbell v. Miller, 836 F. Supp. 827, 832 (M.D. Fla. 1993). In the

instant matter, the Complaint is a clear notice pleading. Defendant's argument that the Complaint is vague or unclear simply lacks credibility. As stated above, Plaintiff's Complaint places Defendant Inbox Direct on notice that Plaintiff is accusing Inbox Direct of being a mere continuation of Defendants ModernAd and Acquinity, and of being a successor in interest of Acquinity by de facto merger. No further details are required at this stage. Miller, 836 F. Supp. at 832. Thus, Defendant's motion must be denied outright.

Second, the motion itself is insufficient under Rule 12(e) requirements because it does not does not identify the defects complained of or the details desired. Fed. R. Civ. P. 12(e) ("The motion . . . must point out the defects complained of and the details desired."). Defendant's motion does neither. Instead, Defendant simply contends that it is "unclear" and "ambiguous" without giving details as to what additional information it seeks. See [DE 81] at 9. Furthermore, Defendant's claim that it requires a definition of dictionary phrases, such as "transferee," is unconvincing and should not force Plaintiff to amend the Complaint for such a simple phrase. See id. Thus, Defendant's motion for a more definite statement should be denied.

Respectfully Submitted: January 13, 2014.

*HARTLEY LAW OFFICES, PLC*
Attorneys for Plaintiff
800 Southeast Third Avenue
Fourth Floor
Fort Lauderdale, Florida 33316
Telephone: (954) 357-9973
Facsimile: (954) 357-2275
Email: hartley@hartleylaw.net

By: /s/ Timothy M. Hartley
TIMOTHY M. HARTLEY
FL BAR NO. 979066

*LEWIS & LIN, LLC*
Attorneys for Plaintiff
45 Main Street, Suite 608
Brooklyn, NY 11201
Telephone: (718) 243-9323

Email: brett@iLawco.com

By: /s/ Brett E. Lewis
BRETT E. LEWIS

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 13, 2014, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and on all counsel or parties of record identified on the attached service list below via email and/or U.S. Mail.

/s/Timothy M. Hartley
Timothy M. Hartley, Esq.
Hartley@hartleylaw.net
HARTLEY LAW OFFICES, PLC
800 SE Third Avenue, Fourth Floor
Fort Lauderdale, Florida 33316
Tel. 954-357-9973
Fax: 954-357-2275
Attorney for Plaintiff

## SERVICE LIST

*Onier Llopiz, Esq.* (FBN 579475)
Email: ol@lydeckerdiaz.com

*Joan Carlos Wizel, Esq.* (FBN 37903)
Email: jcw@lydeckerdiaz.com
Email: rb@lydeckerdiaz.com

*Roland Potts, Esq.* (FBN 087072)
Email: rp@lydeckerdiaz.com
Email: ag@lydeckerdiaz.com

LYDECKER DIAZ
1221 Brickell Avenue 19th Floor
Miami, Florida 33131
Tel. 305-416-3180
Fax: 305-416-3190

*Alexander Pastukh, Esq.*
Law Office of Alexander Pastukh, P.A.
1395 Brickell Avenue, Suite 800
Miami, FL 33131


Attorneys for Defendants