UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF FLORIDA
FORT LAUDERDALE DIVISION

PULSEPOINT, INC., f/k/a DATRAN
MEDIA CORP.,

        Plaintiff,                                  CASE NO.: 0:13-CV-61448

        v.

7657030 CANADA INC., d/b/a ACQUINITY
INTERACTIVE, LLC, f/k/a MODERNAD
MEDIA LLC f/k/a PUREADS; ACQUINITY
INTERACTIVE, LLC; MODERNAD MEDIA LLC;
WARREN RUSTIN, an individual,
8333947 CANADA INC; and JOHN DOES 1-100,

        Defendants.
_____/

### PLAINTIFF'S MOTION TO ENFORCE THIS COURT'S ORDER AND MOTION FOR SANCTIONS WITH INCORPORATED MEMORANDUM OF LAW

On December 16, 2013, this Court entered an Order (the "Second Order") granting Plaintiff's motion to enforce its October 31, 2013 Order, (*see* [DE 76]), which granted Plaintiff's Corrected and Amended Motion for Expedited Discovery ("First Order"). *See* [DE 48].  Despite the Second Order's clear directive that Defendants 7657030 Canada Inc., Acquinity Interactive, LLC, ModernAd Media LLC, and Warren Rustin (collectively, "Defendants") produce **all** documents responsive to Plaintiff's First Request for Production by no later than December 23, 2013, Defendants produced a glaringly incomplete set of documents, which Defendants' counsel did not review for completeness or bother to Bates stamp, and willfully withheld key financial documents, including the electronic QuickBooks files containing the Defendants' ledger books, bank records, complete tax returns, and other accounting records – all despite multiple requests from Plaintiffs' counsel that such documents be produced.  Defendants also failed to provide

written responses detailing whether all responsive documents had been produced as to each defendant, failed to produce electronic files in their native form, and dumped tens of thousands of pages of paper invoices on Plaintiffs, the scanning and review of which have added tens of thousands of dollars in needless cost and wasted nearly two months.

Pursuant to Rules 26, 34 and 37 of the Federal Rules of Civil Procedure and the Court's inherent power, Plaintiff PulsePoint, Inc. ("Plaintiff" or "PulsePoint") hereby moves this Court to enforce the terms of the Second Order immediately, seeks its attorneys' fees and costs associated with Defendants' noncompliance, and requests that the Court strike Defendants' pleadings for same, as well as impose such other sanctions as the Court deems just.  In support thereof, Plaintiff submits the following memorandum of law.

## INTRODUCTION AND BACKGROUND

On October 30, 2013, the Court held a hearing on Plaintiff's Corrected and Amended Motion for Expedited Discovery [DE 33] ("Discovery Motion").   In its October 31, 2013 decision, this Court found "that Plaintiff has demonstrated good cause for expedited discovery," and granted Plaintiff's Discovery Motion. [DE 48] at 2-3.  On November 1, 2013, Plaintiff served its First Request for Production ("First Request") on Defendants' counsel, pursuant to and as modified by the Court's Order.  A copy of Plaintiff's First Request for Production is annexed hereto as **Exhibit A**.  After Defendants failed to produce any documents responsive to the First Request, Plaintiff moved to compel Defendants' compliance with this Court's First Order, which motion this Court Granted by Order dated December 16, 2013 – the Second Order.  Defendants have again blatantly and inexplicably refused to produce documents, including ledger books, complete bank records, full tax returns, and electronic QuickBooks files covered by this Court's Orders, while dumping tens of thousands of pages of paper invoices – which were printed from

the very same QuickBooks files – on Plaintiff.  Defendants' counsel failed to inform Plaintiff of their intent to produce selective electronic files in hard copy, and acknowledged having failed to review Defendants' production for completeness or responsiveness.

Defendants have now been in possession of the First Requests for nearly eight months, having *twice* been ordered already to produce the requested documents.  Despite the clarity of the Court's Orders, Defendants have refused to produce critical ledger books, accounting and tax records requested by Plaintiff.  Moreover, of the documents that Defendants did produce, rather than produce electronic documents in their native electronic form, which would have required minimal effort, Defendants printed tens of thousands (if not over 100,000) pages of copies of QuickBooks invoices – without notice – and at a considerable waste of time and money to Plaintiff.  Defendants' willful defiance of this Court's Second Order and refusal over the past 20 days to produce the requested QuickBooks files in their native form have frustrated the Court's Orders and stymied the discovery process.  As such, Plaintiff is left with no choice but to move *again* to compel Defendants' compliance with the Court's Orders and for sanctions.

Alarmingly, while Defendants have been playing hide the ball with their financial documents, they have been actively spinning new entities, of which there are no fewer than seven Canadian entities, two family trusts involving Garry Jonas, his wife and her relatives, and ten related U.S. entities, with complex ownership structures often involving a family trust owning a Canadian entity, which owns another Canadian entity, which owns another Canadian entity, which owns another Canadian entity, which owns a U.S. entity. *See* Affidavit of Justin Mercer ("Mercer Aff.") at ¶¶ 6-12, filed concurrently herewith.

The discovery taken thus far establishes that no consideration changed hands for any of the assets of ModernAd, despite the fire sale price.  Via an Asset Purchase Agreement dated

January 1, 2011, ModernAd, a company that made in excess of $120 million in 2010, purported to sell all of its assets to 7657030 Canada Inc. for approximately $2,682,783. *See* Mercer Aff. at Exhibit 1.  The Asset Purchase Agreement makes no mention of any payment or allocation for intangible assets, customer contracts, data or goodwill. *See id.*  Moreover, there was no change of control, leadership, location, personnel or customers.  It was business as usual – except for the name change.

According to a "Nominee Agreement" dated December 31, 2011, 7657030 Canada Inc. then transferred all of what were ModernAd's assets to Acquinity Interactive, LLC, for no consideration. *See* Mercer Aff. at Exhibit 4.  With the stroke of a pen, Acquinity Interactive now owned the former $120 million business without paying a dime. *Id.*  7657030 Canada Inc. was merely a "conduit" to purchase ModernAd and launder its assets through Canada. *See* Mercer Aff. at Exhibit 3.  Dubiously, during 2011, when 7657030 Canada Inc. purported to hold ModernAd's assets for Acquinity Interactive, LLC (and before the Delaware LLC was even licensed to do business in the state of Florida), Acquinity Interactive, LLC reported to the IRS that *it* — not 7657030 Canada Inc — had acquired the assets of ModernAd Media LLC on January 1, 2011. *Compare* Mercer Aff. at Exhibit 5 *with* Mercer Aff. at Exhibit 6.  7657030 Canada Inc. reported no income on its 2011 taxes, and actually posted a loss, whereas Acquinity Interactive, the Delaware LLC that did not own any assets of ModernAd until December 31, 2011, claimed $147,3332,888 in income for 2011. Mercer Aff. at Exhibit 5.

Nor was any effort even made to paper an asset transfer from Acquinity Interactive LLC – a company that made on average in excess of $150 million from 2011-2012 – to any of the new entities formed by that company. *See* Mercer Aff. at ¶¶ 13-15.  New entities merely sprung up, owned by the same cast of characters, without any payment for assets, contracts, data, or

goodwill. *See* Mercer Aff. at ¶ 15; compare *id.* at ¶ 13 with ¶ 14.  For example, as was the case with 7657030 Canada Inc./Acquinity, Defendant 8333947 Canada Inc. d/b/a Inbox Direct a/k/a Inbox Express ("Inbox Express") is effectively owned and operated by the Irene Marciano Family Trust – Irene Marciano being the wife of Garry Jonas, former ModernAd and Acquinity Interactive CEO. *See* Mercer Aff. at Exhibit 7.  Garry Jonas and David Hatton, general counsel of Acquinity Interactive, are trustees of the Irene Marciano Family Trust. *Id.* at Exhibit 8.  Not only are Acquinity Interactive's insiders actively involved in this new entity, *nearly **80%*** of 8333947 Canada Inc.'s customers are the same as Acquinity Interactive, LLC's. *See* Mercer Aff. at ¶¶ 13-15, Exhibits 9-10.  It is the same people, engaging in the same business with the same customers.

Defendants were well on their way to creating a web of entities on the day that Defendants' counsel stood up in court and claimed that there was "no evidence" that any such entities existed. *See* Mercer Aff. at ¶¶ 11-12, 17.  Since that date, Defendants have called up more entities from its bullpen of sham companies, including 8333947 Canada Inc. and Inbox Express, LLC. *See* Mercer Aff. at ¶¶ 12, 17.  Defendants' insiders have also pulled at least $22 million dollars of cash out of Defendant Acquinity in 2013 alone, and engaged in shady multi-million dollar loan transactions within and among each other. *See* Mercer Aff. at ¶ 16.

Because Defendants' conduct is so egregious, Plaintiff requests that the Court grant Plaintiff its fees and costs under Rule 37, that Defendants' pleadings be stricken, and that the Court grant such other sanctions that the Court deems appropriate.

## ARGUMENT

**DEFENDANTS HAVE AGAIN VIOLATED THIS COURT'S ORDERS BY FAILING TO PRODUCE ALL DOCUMENTS RESPONSIVE TO PLAINTIFF'S REQUESTS**

Instead of heeding this Court's warnings and explicit directions the first two times, Defendants have again ignored the Court's Orders and continue to frustrate and delay the discovery process. In the meantime, Defendants have continued their shell game of spinning off new entities and transferring their business and assets with the click of a mouse, in what is very clearly a deliberate effort to evade liability for Plaintiff's claims and the claims of other creditors. In short, Defendants' document production is procedurally and substantively deficient. These deficiencies implicate the central issues and claims in this action, and are willful. As such, Plaintiff requests that, in addition to taking all necessary steps to enforce its Orders (again), that the Court strike the Defendants' pleadings and grant such other relief as the Court deems just.

## A.    Defendants' Response is Procedurally Deficient and is in Violation of the Federal Rules.

After the Court struck Defendants' Responses and Objections, as improper, Defendants failed to respond to the First Requests in writing. Although the Court made clear that Defendants' objections were largely improper, Defendants failed to replace those stricken responses with valid ones specifying in writing whether each Defendant had produced documents responsive to each document request. Such failure is procedurally improper as to all Defendants (see Fed. R. Civ. P. 34(b)(2)(A) ("[t]he party to whom the request is directed must respond in writing. . .")) and as to Defendants' counsel, see Fed. R. Civ. P. 26(g) ("every discovery request, response, or objection must be signed by at least one attorney of record. . ."). *See Branhaven, LLC v. BeefTek, Inc.*, 288 F.R.D. 386, 389 (D. Md. 2013).

By letter dated February 14, 2014, Plaintiff requested that Defendants provide written responses and certify that either (i) they have produced all responsive documents, (ii) they contend that certain requested documents do not exist, or (iii) that Defendants are not in possession, custody, or control of the requested documents. A copy of the letter dated February

14, 2014 from Plaintiff's counsel to Defendants' counsel is annexed hereto as **Exhibit B**. Plaintiff attempted to understand the basis of Defendants' lack of written responses and gave Defendants an opportunity to comply with the Federal Rules and this Court's Order. *Id.* In response, Defendants acknowledged that they had not provided any written response—claiming that no such response was required—but stated that they would provide the required writing for only Defendant Warren Rustin, as he was "[t]he only Defendant that did not have documents in response to some of the requests. . ." A copy of the letter dated February 18, 2014 from Defendants' counsel to Plaintiff's counsel is annexed hereto as **Exhibit C**. This is untenable. Because Defendants have not affirmatively certified whether or not each Defendant, individually, had responsive documents in its possession and produced all such documents, Plaintiff cannot fully assess where the deficiencies in the production lie or whether Defendants contend that all Defendants have produced all responsive documents. This is exactly why the Federal Rules mandate responding parties to provide a written response, signed by counsel. Fed. R. Civ. P. 34(b)(2)(A).

That Defendants' counsel failed to provide signed, written responses is even more troubling, given that counsel openly acknowledged that it is "not yet in a position to even evaluate" the production's deficiencies. *See* Exhibit C at 2. Counsel could not certify the completeness of the production, having apparently failed to review the documents produced for compliance with the Court's Orders. *Id.* (stating, until "we are able to review the production, we will not be in a position to evaluate your claim"). In other words, counsel left it up to its clients to decide what constituted compliance with the Court's Orders, then dumped 50 bankers boxes on Plaintiffs' counsel with no direct knowledge of what was in those boxes, and no written certification as to any Defendant as to what was produced.

Defendants have also failed to Bates number any of the nearly 130,000 pages of paper documents, making it virtually impossible to reference any of the documents contained in the production.  Considering the quantity of documents and variety of requests, these references are essential and render the production nearly unusable without them.  While Plaintiff acknowledges that Bates stamping is not required in all cases, in light of the sheer volume of paper documents and incompleteness of same, Defendants' failure to provide such numbering is unreasonable. *See Branhaven, LLC*, 288 F.R.D. at 319.  For the sake of time and clarity, Plaintiff is in the process of having the documents Bates-stamped, at significant cost.

Defendants' noncompliance with the Federal Rules, along with their counsels' refusal to provide written responses, or even to review the documents that Defendants produced, has created an untenable situation.  Defendants' counsel cannot even say if their clients have complied with the Court's Orders, and so did not even provide written responses after their objections were stricken.  As such, Plaintiff requests that the Court require each Defendant to immediately certify in writing that either that it (i) has produced all responsive documents, (ii) contends that certain requested documents do not, or no longer, exist, or (iii) is not in possession, custody, or control of the requested documents, or otherwise, as required by the Federal Rules.  Plaintiff further requests that Defendants and their counsel be ordered to re-pay Plaintiff for the cost of Bates stamping Defendants' documents.

**B.      Defendants' Production is Incomplete, Substantively Deficient and Not Compliant with the Federal Rules.**

In addition to the procedural deficiencies above, Defendants' production is glaringly deficient and incomplete.  While Defendants dumped nearly 130,000 pages of documents on Plaintiff — consisting mainly of un-numbered paper invoices and incomplete bank records — they failed to produce numerous requested documents concerning, among other matters,

financial transfers between and among Defendants, related parties, and third parties. Defendants' production is also devoid of any company books, ledgers, or financial statements, and contains only partial tax returns and bank records. Tellingly, in one egregious example, Defendants omitted the page of a tax return that listed foreign bank accounts from its production. Mercer Aff. at ¶ 9.

Through a review of the production and Defendants' counsel's own admissions, Plaintiff has learned that many, if not all, of the requested documents were ordinarily maintained in electronic QuickBooks files. Instead of producing the electronic QuickBooks files for Defendants' accounting, in the manner in which they exist in the ordinary course of business, Defendants dumped tens of thousands of pages of paper invoices on Plaintiff. Defendants' failure to provide these documents in electronic form, along with complete QuickBooks and financial records, violates the Second Order and the Federal Rules.

The Federal Rules provide three options regarding the form in which a party may produce electronically-stored documents, and Defendants did not satisfy any of them. Under Rule 34, the responding party must produce documents: (i) in the form requested, (ii) as they are ordinarily maintained, or (iii) in a reasonably usable form. *See* Fed. R. Civ. P. 34(b)(2)(E). When Plaintiff served its First Request, it was unaware of what form or method that Defendants maintained their accounting system. Thus, Plaintiff did not request a specific form of production of Defendants' electronic records. Nonetheless, the Federal Rules provide a procedure for producing such records. *See* Fed. R. Civ. P. 34(b)(2)(E)(ii). Rule 34 (b)(2)(E)(ii) states as follows:

> If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

Fed. R. Civ. P. 34(b)(2)(E)(ii). The Advisory Committee Notes to Rule 34 warn that:

> The responding party also is involved in determining the form of production. Stating the intended form *before* the production occurs may permit the parties to identify and seek to resolve disputes before the expense and work of the production occurs. A party that responds to a discovery request by simply producing electronically stored information in a form of its choice, *without identifying that form in advance of the production in the response required by Rule 34(b)*, runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form.

(Emphasis added).

In a nutshell, when a document request is silent as to the form of electronically stored documents, the responding party must produce them *as they are* or in a *reasonably usable* form. *See United Subcontractors, Inc. v. Darsey*, 2014 WL 3149072 at *2 (M.D. Fla. June 20, 2013); *see also Branhaven, LLC v. BeefTek, Inc.*, 288 F.R.D. 386, 391 (D. Md. Jan. 4, 2013); *Plan Pros, Inc. v Torczon*, 2009 WL 3063017 at *3 (D. Neb. Sept. 18, 2009); *Westport Marina, Inc. v. Dolphinite, Inc.*, 2007 WL 3053314 at *1 (E.D.N.Y. Oct. 18, 2007).

As such, when Defendants received the First Request and realized that documents responsive to that request were stored electronically (now known to reside in QuickBooks files), they had an obligation to produce them as they were "ordinarily maintained," i.e. as QuickBooks files[1], or, if possible, in a different, but still reasonably usable form.  It takes a matter of minutes to copy QuickBooks files from one hard drive to another, as opposed to the substantial effort that it must have taken to print out tens of thousands of pages of invoices.  As Defendants went out of their way not to provide the Quickbooks files in the form that they were ordinarily maintained, the question remains whether they provided the documents in a *reasonably usable* form.

---

[1] We have consulted several experts and all of them have confirmed that it takes a nominal about of time to produce the QuickBooks files – literally, minutes.  As the Court ordered these documents to be produced, Defendants' counsel should already have a copy of these files in their possession, as they are clearly highly relevant and material. *See* Fed. R. Civ. P 26(g). Thus, producing the QuickBooks files for each Defendant should not take more than nominal effort or expense.

Given the sheer volume of invoices produced, and the difficulty and costliness of reviewing such invoices, those documents are not "reasonably usable" without Plaintiff having to spend literally hundreds if not thousands of hours of time reviewing the invoices and inputting data into an accounting program – none of which would be necessary if Defendants had simply produced their QuickBooks files.  *See Branhaven, LLC*, 288 F.R.D. at 391 (production of 112,106 pages printed from documents normally stored electronically, and without Bates stamps, violated Rule 34 because it "was not in a form 'in which it is ordinarily maintained' or in 'a reasonably useable form' . . .").

Defendants' failure to produce the requested QuickBooks files in their original form, or a reasonably usable form, or to inform Plaintiff's counsel of their intention selectively to print tens of thousands of pages of hard copies of certain electronic documents, goes hand in glove with Defendants' outright failure to produce ledgers, financial statements, complete tax returns, and complete QuickBooks files.  Defendants' counsel has danced around the issue of producing the QuickBooks files, first stating that they were not required to be produced in electronic form, and then stating that they contained information beyond the scope of the First Requests. Exhibit C at 2.  Neither excuse justifies Defendants' refusal to turn over what amount to the company books.  QuickBooks files are clearly discoverable – especially in a case alleging fraudulent transfers between and among the Defendants, related entities, and third parties. *See Darsey*, 2014 WL 3149072 at *2; *Torczon*, 2009 WL 3063017 at *3; *Dolphinite, Inc.*, 2007 WL 3053314 at *1; *see also Branhaven, LLC*, 288 F.R.D. at 389-91 (D. Md. Jan. 4, 2013).

In response, Defendants' counsel implied, if not outright admitted, that it has not yet reviewed the documents in its client's production, and, thus, could not evaluate their clients'

claimed deficiencies.[2]  This excuse is unavailing.  Defendants' counsel has an affirmative

obligation to conduct a reasonable inquiry and insure that their clients have provided all

responsive documents. Fed. R. Civ. P. 26(g); *see Bernal v. All American Investment Realty, Inc.*,

479 F.Supp. 2d 1291, 1333 (S.D. Fla. March 23, 2007)("Rule 26(g) thus imposes upon attorneys

the duty to make a reasonable investigation to assure that their clients have provided all available

responsive information and documents.").  Failing to do so is inexcusable, especially given

Defendants' prior discovery misconduct in this case and the fact that Defendants have already

been sanctioned for violating this Court's Orders.

In sum, as Defendants have failed to produce any company books, ledgers, or financial

statements, documents which they admit were maintained in QuickBooks software, Plaintiff

requests that the Court order Defendants to produce their complete, electronic QuickBooks files,

as well as full tax returns, domestic and foreign bank account records, and all other requested

documents, immediately.

**C.      The Court Should Award Plaintiff its Reasonable Expenses Incurred in Scanning
         and Reviewing QuickBooks Files and Making this Motion Pursuant to Rule 37(a),
         Strike Defendants' Pleadings, and Make Appropriate Findings of Fact Against
         Defendants Pursuant to Rule 37(b).**

Defendants have refused to abide by several Orders of this Court, refused to produce

documents, and flouted timelines set by this Court.  These actions have wasted the Court's time

and Plaintiff's resources and have prolonged this portion of the case far beyond the time

otherwise necessary.  Plaintiff respectfully requests that, should this Court grant the instant

Motion, it award Plaintiff its reasonable fees incurred in forcing Defendants to comply, pursuant

to Rule 37(a), and strike Defendants' pleadings, pursuant to Rule 37(b).

Fed. R. Civ. P. 37(b)(2)(A) allows a court in a variety of ways to sanction a party that

---

[2] Defendants' counsel states, in relevant part, "[u]ntil your copy service company releases the documents and we are able to review the production, we will not be in a position to evaluate your claim." Exhibit C at 2.

fails to obey Court Orders on discovery, including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," prohibiting a party from introducing designated matters into evidence, striking pleadings, or by rendering a default judgment. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

As stated above, Defendants have failed to produce ledgers, financial statements and company books that would show transfers of assets between Defendants or potentially judgment-proof, third party entities.  However, through the limited probative documents that Defendants did provide, Plaintiff has discovered a complicated web of over seven Canadian corporations (including Defendant 7657030 Canada, Inc.) and over 10 other U.S. entities that own each other and/or are owned by several family trusts. *See* Mercer Aff. at ¶¶ 9-10.  These same trusts are owned by former ModernAd Media CEO and current Acquinity CEO, Garry Jonas, his wife, Irene Marciano, and his family. *See* Mercer Aff. at ¶ 12.  Without the court-ordered ledgers, financial statements, and company books, Plaintiff is unable to uncover the financial relationship between these entities, or trace the flow of money between these entities.  These deficiencies implicate the central issues and claims in this action, and this Court found such discovery relevant to Plaintiff's claims. *See* [DE 76].  Instead of complying, Defendants dumped tens of thousands of pages of documents that do not progress Plaintiff's inquiries.  Meanwhile, Defendants have closed shop on Acquinity Interactive LLC, a 150 million dollar-a-year business, are actively spinning off new entities, and have set up shop – yet again – with the same assets, customers and personnel.

Because the Defendants have continuously refused to satisfy their discovery obligations, including after this Court ordered them to do so, for the second time, on December 16, 2013, and are explicitly refusing to comply with the scope of discovery established therein, Plaintiff

requests that the Court strike Defendants' pleadings and impose other sanctions described within Fed. R. Civ. P. 37(b)(2)(A).  Defendants' tactics are willful and contumacious.  They are very clearly designed to buy time for Defendants to create new entities and launder Defendants' assets.  Defendants have no intention of ever paying the Judgment or the claims in this action. An order granting additional sanctions, striking the Defendants' Answers, and granting such other relief as is necessary to blunt the effect of Defendants' efforts to hide their assets behind a constantly-evolving series of fraudulent conveyances among and between a growing list of foreign and domestic trusts and entities, is warranted under the circumstances.  Absent swift action by the Court, Plaintiff respectfully submits that Defendants will continue their obfuscation and gamesmanship, aided by counsel, to the ultimate frustration of the law.

## CONCLUSION

Pursuant to Rules 26, 34 and 37 of the Federal Rules of Civil Procedure and the Court's inherent power, Plaintiff requests that this Court act as necessary to enforce the terms of the Second Order immediately, award attorney fees and costs associated with Defendants' noncompliance, and strike Defendants' pleadings for same, as well as impose such other sanctions as the Court deems just and proper.

**DATED** this 21st day of February 2014.

*HARTLEY LAW OFFICES, PLC*
Attorneys for Plaintiff
800 Southeast Third Avenue
Fourth Floor
Fort Lauderdale, Florida 33316
Telephone: (954) 357-9973
Facsimile: (954) 357-2275
Email: hartley@hartleylaw.net

By: /s/ Timothy M. Hartley
TIMOTHY M. HARTLEY
FL BAR NO. 979066

14

***LEWIS & LIN, LLC***
Attorneys for Plaintiff
45 Main Street, Suite 608
Brooklyn, NY 11201
Telephone: (718) 243-9323
Email: brett@iLawco.com

By: /s/ Brett E. Lewis
BRETT E. LEWIS
JUSTIN MERCER

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 22, 2014, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and on all counsel or parties of record identified on the attached service list below via email and/or U.S. Mail.

/s/ Timothy M. Hartley
Timothy M. Hartley, Esq.
 Hartley@hartleylaw.net
HARTLEY LAW OFFICES, PLC
800 SE Third Avenue, Fourth Floor
Fort Lauderdale, Florida 33316
Tel. 954-357-9973
Fax: 954-357-2275
Attorney for Plaintiff

## SERVICE LIST

**Onier Llopiz, Esq.** (FBN 579475)
Email: ol@lydeckerdiaz.com
**Joan Carlos Wizel, Esq.** (FBN 37903)
Email: jcw@lydeckerdiaz.com
Email: rb@lydeckerdiaz.com
**Roland Potts, Esq.** (FBN 087072)
Email: rp@lydeckerdiaz.com
Email: ag@lydeckerdiaz.com
LYDECKER DIAZ
1221 Brickell Avenue 19th Floor
Miami, Florida 33131
Tel. 305-416-3180
Fax: 305-416-3190
Attorneys for Defendants