# Exhibit 1

<u>ASSET PURCHASE AGREEMENT</u>

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement") is made as of January 1, 2011 by and among the following:

**VENDOR:**                              **MODERNAD MEDIA, LLC**, a limited liability company formed under the laws of the state of Florida, having its principal place of business at 2200 SW 10th Street, Deerfield Beach, Florida, 33442, USA, **MODERNAD MARKETING, LLC** a limited liability company formed under the laws of the state of Florida, having its principal place of business at 2200 SW 10th Street, Deerfield Beach, Florida, 33442, USA,  and **WARREN RUSTIN**, an individual resident of the State of Florida

                                         (hereinafter collectively referred to as the "**Vendor**")

**AND:**


**PURCHASER**                            **7657030 CANADA INC.**, a corporation duly incorporated under the laws of Canada, having its principal place of business at 39 Chambertin, Kirkland, Quebec, H9H 5E3,

                                         (hereinafter referred to as the "**Purchaser**")

**WHEREAS,** Vendor has agreed to sell, transfer and assign, and Purchaser has agreed to accept and assume, all right, title and interest in and to the Purchased Assets (as defined below).

**NOW, THEREFORE,** in consideration of the promises made herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree to the following terms and conditions:


## SECTION I - PURCHASE AND SALE AND ASSUMPTION OF LIABILITIES

1.1   <u>Purchase and Sale</u>: Subject to the terms and conditions stipulated herein, the Vendor hereby sells, assigns and transfers to the Purchaser and the Purchaser hereby purchases from the Vendor the following assets (collectively the "**Purchased Assets**"):

    i.    100% membership interest in the capital of Secure My Score, LLC (the "**Secure My Score Units**");

    ii.    100% membership interest in the capital of Inbox Send, LLC (the "**Inbox Send Units**");

      iii.   100% membership interest in the capital of Healthprofessor, LLC (the **"Healthprofessor Units"**)

      iv.   all of the assets described in Schedules B – G and I – O hereof (collectively the **"Schedules"**), which schedules are incorporated herein by reference.

Notwithstanding anything to the contrary contained herein, the parties acknowledge and agree that the following furniture and fixtures located in or relating to the building located at 2200 SW 10th, Deerfield Beach, Florida 33442 shall be excluded from the transactions contemplated hereby, which furniture and fixtures shall be available for use by the Purchaser at the discretion of the owner thereof:

      i.   cubicles/workstation and chairs;
      ii.   lunch tables and chairs (cafeteria);
      iii.   hurricane shutters and boards;
      iv.   training tables and chairs (training room); and
      v.   conference room table (executive conference room).

1.2   <u>Assumed Liabilities</u>: The Purchaser hereby assumes the liabilities of the Vendor more fully described in Schedule P hereof and undertakes to make all necessary payments on behalf of the Vendor pursuant to the terms of the Leasing Agreement, Payroll and Lease Payment (the whole as defined in Schedule P hereof), as applicable.

## SECTION II - PURCHASE PRICE

2.1   The purchase price payable for the Purchased Assets shall be the aggregate amount of three million one hundred ninety one thousand four hundred eighty three dollars ($3,191,483), which amount includes, without limitation, the liabilities assumed by the Purchaser pursuant to Section P hereof. The purchase price shall be allocated pursuant to Schedule Q hereof.

## SECTION III –SERVICES PROVIDED BY PURCHASER

3.1   As and if applicable, Purchaser agrees to provide Vendor with administrative and accounting services through transition of the Purchased Assets.

## SECTION IV – GUARANTEE,  CREDIT CARD USE & ADDITIONAL EXPENSES

4.1   As and if applicable, the Vendor hereby undertakes to guarantee, jointly and severally with the Purchaser, any contractual obligation of the Purchaser created or arising from the date of this Agreement until the first (1st) anniversary hereof.

4.2   As and if applicable, the Vendor hereby undertakes to permit Purchaser use of its credit card through the transition period. Purchaser shall pay Vendor's credit card bill for any

purchase(s) made by Purchaser. If Vendor makes any payments on behalf of Purchaser, Purchaser shall promptly repay Vendor.

4.3   As and if applicable, it is acknowledged that from tiem to time throughout the transition of the Purchased Assets to Purchaser, Vendor may incur charges or expenses on behalf of Purchaser. If Vendor makes any payments on behalf of Purchaser, Purchaser shall promptly repay Vendor.

## SECTION V - REPRESENTATIONS, AND WARRANTIES

5.1   The following representations and warranties are made and given by the Vendor to the Purchaser which shall expressly survive:

5.1.1   the Vendor has good and marketable title to all of the Purchased Assets, and none of the Purchased Assets is subject to any lien, mortgage, security interest, pledge, encumbrance, charge, claim or restriction of any kind;

5.1.2   upon the execution and delivery of this Agreement, the Purchaser will be vested with good and marketable title to all of the Purchased Assets, free and clear of all liens, mortgages, security interests, pledges, encumbrances, charges, claims and restrictions of any nature whatsoever;

5.1.3   the Purchased Assets are in good operating condition, as applicable; and

5.1.4   the Vendor will hereinafter do all such things and execute all such documents as may be required for the proper and effective completion of this Agreement.

## SECTION VI – VENDOR'S UNDERTAKING RE: SALE, ASSIGNMENT AND TRANSFER OF CISCO EQUIPMENT TO THE PURCHASER

6.1   In consideration for the assumption by the Purchaser of all of the Vendor's obligations pursuant to the Leasing Agreement, the Vendor hereby undertakes to sell, assign and transfer to the Purchaser, immediately upon the expiry of the Leasing Agreement and the acquisition by the Vendor of all of the right, title and interest in and to the equipment leased thereunder (the "**Equipment**").

## SECTION VII – MISCELLANEOUS

7.1   No modification to or amendment of this Agreement shall be valid or binding unless set forth in writing and duly executed by the parties hereto.

7.2   This Agreement shall be binding upon and enure to the benefit and advantage of the parties hereto and their respective heirs, administrators, legal representatives, successors, legatees, executors and permitted assigns

7.3     The division of this Agreement into Sections and Subsections, and the insertion of headings, are for convenience of reference only and shall not affect or be utilized in the construction or interpretation of this Agreement.

7.4     This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one and the same instrument. A facsimile signature of any party shall be considered to have the same binding legal effect as an original signature.

7.6     Each party represents and warrants that it is duly organized, validly existing and in good standing within its country and/or state provence of incorporation. Each party has the requisite authority and legal capacity to deliver and perform this Agreement and other transactional documents. Each party has taken all action necessary to authorize the execution and delivery of this Agreement, the performance of its obligations hereunder and the consummation of the transaction contemplated hereby.

7.7     For purposes of contract interpretation, including resolution of any ambiguity, the parties acknowledge that this Agreement was prepared jointly by their respective attorneys and therefore the terms of the Agreement should not be construed against either party as the drafting party.

7.8     Vendor shall indemnify defend and hold harmless Purchaser for any and all claims or actions against Purchaser arising out of the Purchased Assets prior to the date of this Agreement. Purchaser shall indemnify defend and hold harmless Vendor for any and all claims or actions against Vendor arising out of the Purchased Assets after to the date of this Agreement.

7.9     The failure of either party to insist upon or enforce performance by the other party of any provision of this Agreement or to exercise any right under this Agreement will not be construed as a waiver or relinquishment to any extent of such party's right to assert or rely upon any such provision or right in that or any other instance; rather the same will be and remain in full force and effect.

7.10    All provisions are inserted conditionally on their being valid in law. In the event that any provision of the Agreement conflicts with the law under which the Agreement is to be construed or if any such provision is held invalid or unenforceable by a court with jurisdiction over the Parties to the Agreement: (i) such provision will be restated to reflect as nearly as possible the original intentions of the Parties in accordance with applicable law; and (ii) the remaining terms, provisions, covenants, and restrictions of the Agreement will remain in full force and effect.

7.11    This Agreement constitutes the entire and only agreement and supersedes any and all prior agreements, whether written, oral, express, or implied, of the Parties with respect to the transactions set forth herein.

7.12    This Agreement is governed by the laws of the Province of Quebec.

7.13   This Agreement has been drafted in the English language at the express request of the parties. Cette convention a été redigée en langue anglaise à la demande explicite des parties.

*(**Signatures on Following Page**)*

**IN WITNESS WHEREOF**, the parties have signed on the date and at the place first mentioned hereinabove.


**MODERNAD MEDIA, LLC**

Per: Warren Rustin

**7657030 CANADA INC.**

Per: Garry Jonas