# Exhibit 8

THIS AGREEMENT is made at the City of Montreal, Province of Quebec, on this 23rd day of October, 2013.

| | |
|---|---|
| BETWEEN: | JUDITH COHEN, domiciled and residing at 6795 Korczak, apt 503, in the City of Cote-St-Luc, Province of Quebec, H4W 2W7, |
| | (hereinafter referred to as the "**Settlor**"); |
| AND: | GARRY JONAS, businessman, domiciled and residing at 6803 Heywood, apt 502, in the City of Cote-St-Luc, Province of Quebec, H4W 3L6, |
| AND: | HOWARD GREENSPOON, businessman, domiciled and residing at 310 Cote St. Antoine, in the City of Westmount, Province of Quebec  H3Y 2J4, |
| | (hereinafter collectively referred to as the "**Trustees**") |

WHEREAS, the Settlor wishes to constitute a trust, which shall be known as "THE IRENE MARCIANO FAMILY TRUST" in English and "LA FIDUCIE FAMILIALE IRENE MARCIANO" in French;

**NOW THEREFORE THIS AGREEMENT WITNESSES THAT THE PARTIES HERETO HAVE AGREED AND DO HEREBY COVENANT AND AGREE TO THE TERMS SET OUT BELOW:**

1.    **INTERPRETATION**

1.1    In this Agreement and in any instrument supplemental or ancillary hereto, unless the context otherwise requires:

(a)    "**Assets**" include cash, securities, estates, property, and any interests therein;

(b)    "**Beneficiaries**" means (i) Garry Jonas, (ii) Irene Marciano, (iii) Sierra Jonas, (iv) Joshua Rubin, (v) Daniel Rubin, and (vi) any private corporation incorporated under the laws of Canada or under the laws of any province of Canada that is controlled by any one or several of the Beneficiaries or by this Trust, whether or not the corporation was incorporated at the time of the creation of this trust, and "**Beneficiary**" shall mean any one of the above;

INBOX- 239

- 2 -

(c)    "**Capital**" and "**Income**" and all other terms used in this Trust shall, unless otherwise specified, be interpreted in accordance with the *Civil Code of Quebec*.

(d)    "**Civil Code**" means the *Civil Code of Quebec*, as amended from time to time;

(e)    "**Deemed Income**" shall mean all amounts which are treated as income or deemed to be income pursuant to the *Income Tax Act* resulting from, without limitation, deemed dispositions or resulting in deemed dividends the whole irrespective of the characterization of such amounts for the purposes of the *Civil Code of Québec*.

(f)    "*Income Tax Act*" shall mean the *Income Tax Act* (Canada) R.S.C. 1985 (5th Supp.) c.1, as amended, and the *Taxation Act* (Quebec), R.S.Q. 1977, c. I-3, as amended;

(g)    "**Time of Division**" shall mean the earlier of:

    (i)    one (1) month preceding the date that the Trust would otherwise be deemed to dispose of its capital property according to the relevant income tax laws in force at the time, unless the Trustees consider that the Trust will not be subject to the said deemed disposition notably because of the exercise of the power described in Section 5 of this Trust and have decided in their absolute discretion to extend the Time of Division beyond such deemed disposition date by way of written notice. Such notice must set out the revised Time of Division applicable to this paragraph and must be served prior to the deemed disposition date on all of the Beneficiaries alive or existing at the time of the signing of such notice;

    (ii)    The day preceding the one hundredth (100th) anniversary of this Trust;

    (iii)    any day as determined by the Trustees in their absolute discretion by way of a written notice signed by each of the Trustees and served on the Beneficiaries alive or existing at the time of the signing of such notice; and

INBOX- 240

- 3 -

<div style="margin-left:2em">

(iv)    after the death of Garry Jonas, any day specifically mentioned in the Last Will and Testament of Garry Jonas.

(h)    **"Trust"** means the trust patrimony constituted hereby;

(i)    **"Trust Fund"** shall mean the property referred to in paragraph 2.1 hereof and all other assets which may at any time be substituted therefor and all other assets which is now or which at any time during the continuance of the Trust may be assigned, transferred, or appointed to the Trustees by the Settlor or any other person or persons to be held upon the trusts hereof and all capital accretions to and all income from such assets, but excluding all amounts which have been paid or disbursed therefrom (whether out of Capital or Income) in the normal course of administration or pursuant to the provisions of this Agreement;

(j)    **"Trustees"** shall mean the Trustees from time to time acting under this Agreement and shall include the original Trustees named herein and any additional or substituted Trustees appointed pursuant to the provisions of this Agreement;

1.2    In this Agreement and in any instrument supplemental or ancillary hereto, the singular shall include the plural and the masculine shall include the feminine and vice versa.

</div>

**2.    GIFT AND ACCEPTANCE OF SETTLED PROPERTY**

<div style="margin-left:2em">

2.1    The Settlor hereby transfers irrevocably and gratuitously *inter vivos* unto the Trustees Twenty (20) Dollars Canadian.

2.2    The Trustees hereby acknowledge the receipt from the Settlor of the property referred to in Section 2.1 hereof which is to be held upon and subject to the trusts hereof and accept the trusts herein and agree to be bound by the provisions hereof and to hold the Trust Fund upon the trusts hereof.

</div>

**3.    PAYMENTS OF WHOLE, OR PART, OF THE INCOME OR CAPITAL OF THE TRUST FUND BEFORE TIME OF DIVISION**

<div style="margin-left:2em">

3.1    The Trustees shall, until Time of Division, have the full administration and legal possession of the Capital of and the Income and fruits derived from the Trust Fund, which

</div>

INBOX- 241

- 4 -

Income and fruits derived from the Trust Fund, which capital and income and fruits shall be invested and kept invested in accordance with the provisions of this Trust unless paid to a Beneficiary in accordance with the provisions of this Section 3.

3.2 Until Time of Division, the Trustees may, in their discretion, pay annually or at more frequent intervals to one or more than one of the Beneficiaries all or part of the annual net income of the Trust. Should the Trustees decide to make such payment, the Trustees shall determine, in their discretion, which Beneficiary or Beneficiaries shall receive such payment and the amount or share that will be paid to each recipient. The Trustees shall add to the capital of the Trust Fund the net income of the Trust which has not been paid or allocated to the Beneficiaries or affected by a vested right in favour of any of the Beneficiaries in the year or within three (3) months thereafter.

3.3 Until Time of Division, the Trustees may, in their discretion, pay, make payable or allocate any amounts of or on account of Deemed Income to one or more than one of the Beneficiaries, in cash, in kind or as a vested right, the whole as the Trustees may determine in their absolute discretion.

3.4 Until Time of Division, the Trustees may, in their discretion, pay to one or more than one of the Beneficiaries all or part of the Capital of the Trust Fund. Should the Trustees decide to make a payment of the Capital, they shall determine, in their sole and absolute discretion, which Beneficiary or Beneficiaries shall receive such payment and the amount or share that will be paid to each recipient.

3.5 Notwithstanding paragraphs 3.1 to 3.4, if the Trust holds shares in the share capital of a corporation that is not a small business corporation and a Beneficiary is a "*designated person*" within the meaning of subsection 74.5(5)(b) of the *Income Tax Act* in respect of a person (hereinafter the "Contributor") who has transferred property to such corporation in consideration for the issuance of shares of said corporation, then such Beneficiary, will not be allowed to receive or otherwise obtain the use of any part of the income or capital of the Trust derived from such corporation, during that period.

INBOX- 242

- 5 -

3.6 Notwithstanding the provisions of Sections 3.1 to 3.5 above, after the death of Garry Jonas or in the event that Garry Jonas is no longer acting as a Trustee under the present Trust, then, all of the Income and Capital, and Deemed Income, of the Trust Fund shall be distributed to any Beneficiary or Beneficiaries in accordance with the specific distribution directions set out in the Last Will and Testament or a Codicil thereto or any other written instrument of Garry Jonas. In the absence of such specific distribution directions, the Income, Deemed Income and Capital of the Trust Fund shall be distributed in accordance with Sections 3.1 to 3.5 and Section 3.7 above. Notwithstanding the above, distribution of the Trust Fund made pursuant to this paragraph shall be made directly to the person entitled to receive such property and shall not be transferred to or form part of the estate of Garry Jonas following his death.

3.7 Notwithstanding the provisions of Sections 3.1 to 3.6 above, in the event that the Trust Fund would include shares of the capital stock of a Beneficiary, then, none of these shares may be attributed to such Beneficiary nor any income of any kind derived from such shares may be allocated to such corporate Beneficiary. The Trustees will retain full discretion concerning the attribution of these shares between the other Beneficiaries.

4. **DISTRIBUTION AT TIME OF DIVISION**

4.1 Unless otherwise provided in this Trust, at the Time of Division the Trustees will pay and distribute all of the Trust Fund in cash or in kind to one, some or all of the Beneficiaries and in such amounts, shares and proportions as the Trustees may determine in their absolute discretion.

4.2 Notwithstanding Section 4.1 above, if the Trust holds shares in the share capital of a corporation that is not a small business corporation, and a Beneficiary is a "*designated person*" within the meaning of subsection 74.5(5)(b) of the *Income Tax Act* in respect of the Contributor who has transferred property to such corporation, in consideration for the issuance of shares of said corporation, then such Beneficiary will not be allowed to receive or otherwise obtain the use of any part of the income or capital of the Trust derived from such corporation during that period.

INBOX- 243

- 6 -

4.3    Notwithstanding Sections 4.1 and 4.2 above, should the Time of Division occur following the death of Garry Jonas or in the event that Garry Jonas is no longer acting as a Trustee under the present Trust, then, all of the income and capital, and Deemed Income, of the Trust Fund shall be distributed to any of the Beneficiary or Beneficiaries in accordance with the specific distribution directions set out in the Last Will and Testament of Garry Jonas or a Codicil thereto or any other written instrument of Garry Jonas. In the absence of such specific distribution directions, the income, Deemed Income and capital of the Trust Fund shall be distributed in accordance with Sections 4.1, 4.2 and 4.4 hereof. Notwithstanding the above, distribution of the Trust Fund made pursuant to this paragraph shall be made directly to the person entitled to receive such property and shall not be transferred to or form part of the estate of Garry Jonas following his death.

4.4    Notwithstanding the provisions of Sections 4.1 and 4.2 above, in the event that the Trust Fund would include shares of the capital stock of a Beneficiary, then, none of these shares may be attributed to such Beneficiary. The Trustees will retain full discretion concerning the attribution of these shares between the other Beneficiaries.

**5.    IRREVOCABLE ALLOCATION OF TRUST FUND TO BENEFICIARIES PRIOR TO TIME OF DIVISION**

5.1    The Trustees may, in accordance with the principles set out in Section 3 of this Trust *mutadis mutandis*, irrevocably attribute and allocate the Trust Fund to the Beneficiaries, in writing, and give notice to the Beneficiaries of the said allocation of the Trust Fund, without distributing the Trust Fund to the Beneficiaries. Upon taking such decisions, notwithstanding the provisions of Sections 2 or 4 above, the Trustees shall have no further discretion with respect to the distribution of income, capital and Deemed Income of the Trust Fund, which shall be distributed in accordance with the said allocation.

**6.    PAYMENTS FOR MINORS**

6.1    If any Capital of the Trust Fund or any of the Income therefrom shall be payable or distributable during a particular year, whether or not as a result of the exercise of the discretionary power vested in the Trustees, to a

- 7 -

Beneficiary who is under eighteen (18) years of age before the end of the year, the amount payable or distributable (hereinafter referred to as an "**Infant's Share**") may be held and kept invested by the Trustees and so much of the Income and Capital of an Infant's Share as the Trustees in their absolute and uncontrolled discretion consider advisable from time to time may be used for the care, maintenance, education, and advancement in life of such infant until he or she attains twenty-one (21) years of age, and any Income of an Infant's Share not so used in any year shall be accumulated and added in such year to the Capital thereof. The provisions of the Agreement respecting the administration of the Trust Fund shall apply *mutatis mutandis* to any Infant's Share held by the Trustees.

6.2     The Trustees are authorized to make any payment or distribution, whether of Income or Capital, for any Beneficiary under the age of majority or under any other disability, to the parent, tutor or curator of such Beneficiary or to anyone to whom the Trustees in their discretion deem it advisable to make such payment on behalf of the Beneficiary, whose receipt shall be a sufficient discharge to the Trustees.

7.     **POWERS OF TRUSTEES**

In addition to all other powers conferred upon them by the other provisions of this agreement or by the *Civil Code of Quebec*, the Trustees shall have and are hereby given the power and authority in their absolute and uncontrolled discretion at any time and from time to time to administer the Trust Fund in whatever manner they may determine and they shall have the right to take any action in connection with the Trust Fund and to exercise any rights, powers, and privileges which may exist or arise in connection therewith to the same extent and as fully as an individual could if they were the sole owners of the Trust Fund. Without in any way limiting the generality of the foregoing, the Trustees shall have the power and authority:

7.1     **Investments** – to invest any money constituting part of the Trust Fund in any investments which the Trustees consider advisable, notwithstanding that such investments may not be investments authorized by law for the Trustees. Without limiting the generality of the foregoing, the Trustees may hold any investment including shares in a private company whether or not it is producing Income and whether or not in

INBOX- 245

- 8 -

the opinion of the Trustees it is likely to undergo capital appreciation. The holding of any such investment is specifically authorized whether or not it might have the effect of conferring an advantage on any one or more of the Beneficiaries or, but for the foregoing, could be considered as not being an impartial exercise by the Trustees of their duties hereunder or as the failure to maintain an even hand among the Beneficiaries;

7.2   **Life Insurance** – to apply for and purchase, as an authorized investment of the Trust Fund, life insurance (whether "term" or "whole life") on the life of any person; to accept as assignees, for a consideration or as a donation to the Trust Fund, any life insurance policy or policies on the life of any person or benefits under any such policy or policies; and to use and apply any portion of the Capital of the Trust Fund in the payment or repayment of premiums upon, or for the purpose of maintaining in force, any such insurance whether applied for and purchased by the Trustees or accepted by them as assignee or donee. Any insurance so purchased by, donated to, or otherwise acquired by the Trustees shall be deemed to be an authorized investment for the purposes of the Trust and whenever from time to time the Trustees pay or prepay any premium or premiums on any insurance they shall be deemed to have made an authorized investment. The proceeds of any such insurance and any amount payable as a result of the prepayment of premiums shall be payable and paid to the Trustees and, when received by them, shall constitute part of the Capital of the Trust Fund. The Trustees are empowered to exercise any and all rights and powers howsoever available or arising with respect to any policy of insurance applied for, purchased by, donated to, or otherwise acquired by the Trustees and to dispose of such policy in such manner, at such time, for such price, and upon such terms as he consider advisable;

7.3   **Immovable Property** – to invest in, own, or hold immovable property as part of the Trust Fund and in such event to lease the same to such persons, for such times, and upon such terms and conditions as the Trustees see fit and to accept surrenders of leases and tenancies and to spend money out of the Income or Capital of the Trust Fund for repairs and improvements and generally to manage the property and with a view to the sale thereof to give any

INBOX- 246

- 9 -

options that he deems advisable; in particular, the Trustees are authorized to permit any Beneficiary to occupy any such immovable property either rent free or at such rent as the Trustees shall determine;

7.4    **Borrow** – to borrow on behalf of the Trust Fund such amount or amounts as the Trustees may deem necessary or advisable, upon such terms and subject to such conditions as they may see fit, and, for the repayment of any amount so borrowed, to mortgage, pledge, hypothecate, or otherwise charge all or any part of the Trust Fund. No person or bank from whom any amount is borrowed shall be obliged in any way to see to the application of the funds advanced;

7.5    **Dispose** – to sell, transfer, assign, exchange, convey, mortgage, lease, or otherwise dispose of any of the assets from time to time constituting the Trust Fund in any manner the Trustees may deem proper and at such price, upon such terms, and for such consideration as they shall deem suitable, and to give any option with respect to any property in the Trust Fund as they may deem appropriate. In so doing, the Trustees are empowered to execute and deliver all deeds or other instruments as may be necessary or desirable to make good and sufficient title to any such trust asset;

7.6    **Interest in Companies and Corporations** – to vote all stock and shares or other securities, to exercise all rights incidental to the ownership of stocks, bonds, or other securities and investments and property held as part of the Trust Fund, to issue proxies to others, to sell or exercise any subscription rights, and to consent to and join in any plan, reorganization, re-adjustment, merger, amalgamation, or consolidation with respect to any corporation whose stock, shares, bonds, or other securities at any time form part of the Trust Fund, and to authorize the sale of the undertaking or assets or any portion of the undertaking or assets of any such corporation;

7.7    **Lend** – to advance monies out of the Trust Fund by way of loan to any person or corporation, such loans to be made with or without interest, upon such terms as to repayment, and with or without security, all as the Trustees may deem advisable;

INBOX- 247

- 10 -

7.8   **Guarantee** -- to guarantee, with or without security, the performance of contracts and the performance of undertakings and obligations of any person, partnership, firm, or association, including the payment of interest, principal, and premium, if any, of or on any bonds, debentures, or other securities, mortgages or other liabilities of any such person, corporation, partnership, firm, or association;

7.9   **Agents** -- to employ and pay for such professional or other assistance, including the assistance of a corporate agent or nominee, as the Trustees may deem appropriate and to act on the opinion or advice of or information obtained from any financial adviser, accountant, lawyer, evaluator, surveyor, broker, auctioneer, or other expert or professional person and the Trustees shall not be responsible for any loss, depreciation, or damage occasioned by acting or not acting in accordance therewith. The Trustees shall have the powers to pay fees or charges to such firm and to charge such fees and charges to the Income or the Capital or to both Income and Capital of the Trust Fund as the Trustees in their absolute discretion deem advisable;

7.10   **Incorporation** -- to incorporate any company or companies under the laws of any jurisdiction in the world at the expense of the Trust Fund for such purposes as the Trustees may deem appropriate, including for the purpose of acquiring the whole or any part of the Trust Fund, and to sell the Trust Fund or any part thereof to any such company for such consideration as the Trustees may deem appropriate, including consideration consisting wholly or partly of debentures or other securities of such company;

7.11   **Distribution and Valuation** -- upon any distribution or division of the Trust Fund or of any part hereof, to distribute or divide the same either wholly or in part in money or in other assets of the Trust Fund and for the purpose of such distribution or division and for any other purpose hereunder, to place such value on the assets from time to time forming the whole or any part of the Trust Fund as they deem just and proper, and any such valuation shall be absolutely final and binding upon all persons entitled hereunder; and upon any such distribution or division to determine to whom or to what shares specified assets shall be given or allocated and to distribute or divide the same subject to the payment of



INBOX- 248

- 11 -

such amounts as shall be necessary to adjust the shares of the various Beneficiaries.

8.    **REGISTRATION OF ASSETS**

All assets from time to time constituting the Trust Fund shall be held by and registered in the name of the Trustees or in the name of his or her nominees or otherwise as the Trustees may deem expedient.

9.    **INCOME TAX COMPLIANCE**

The following provisions are made to assist the Trustees in administering the Trust hereby constituted and in complying with the provisions of the *Income Tax Act*. Any reference to an item being taxable refers to the taxation of such item pursuant to the *Income Tax Act*. The words "preferred beneficiary" and "accumulating income" shall have, for the purpose of this provision, the meanings given to such words in the *Income Tax Act*:

(a)    the Trustees are authorized from time to time to join with any preferred beneficiary of the Trust Fund in making any election, in the prescribed manner, pursuant to any provisions of the *Income Tax Act* enabling him to do so, in order to allocate for purposes of the *Income Tax Act* only the whole or any part of the accumulating Income of the Trust Fund in any taxation year to such Beneficiary. Such election shall not entitle such preferred beneficiary to any greater rights to the Income or Capital of the Trust Fund than such preferred beneficiary would have if such election had not been made;

(b)    in addition to all other powers conferred upon them by the other provisions of this Agreement, the Trustees are authorized at any time to pay to any preferred beneficiary of the Trust Fund an amount out of the accumulating Income of the Trust Fund in any year sufficient to enable such Beneficiary to pay his or her increased liability, if any, under the *Income Tax Act* resulting from any election made by such Beneficiary and the Trustees, pursuant to any provisions of that Act enabling them to do so, whereby some or all of the accumulating Income of the Trust Fund for that taxation year is allocated to such Beneficiary for income tax purposes;

(c)    where the Trustees consider it to be in the interest of any Beneficiary, the Trustees are authorized to execute on behalf

INBOX- 249

- 12 -

of any infant preferred beneficiary an election, in the prescribed manner, pursuant to any provisions of the *Income Tax Act* enabling them to do so, in order to allocate for purposes of the *Income Tax Act* the whole or any part of the accumulating Income in any taxation year of the Trust Fund to such preferred beneficiary; and

(d) the Trustees shall have the right to pay out of the Income or Capital of the Trust Fund, as they may from time to time in their absolute discretion determine, any taxes payable in connection with the Trust Fund or payable by any Beneficiary in respect of the Trust Fund or any part thereof.

## 10. PROCEDURES

10.1 The exercise of any rights, powers and priviledges granted to the Trustees referred to in Section 7 hereof and any action in connection therewith shall be determined jointly by each of the Trustees for the time being in office.

10.2 The Trustees may adopt any rules and regulations which they may from time to time deem proper to govern their own procedure. Subject to Section 10.1 hereof, the Trustees may act either by a resolution jointly passed by each of them at a meeting or by an instrument in writing jointly signed by each of them, and any such decision or act of a majority of the Trustees shall, for all purposes of this Agreement be deemed the decision or act of the Trustees. Subject to Section 10.1 hereof, every deed or instrument of every nature or description jointly executed by each of the Trustees for the time being in office shall be as valid, effectual and binding as if executed by each of the Trustees.

## 11. BANKING ARRANGEMENTS

Notwithstanding the other provisions of this Agreement, the following provisions shall govern the banking arrangements of the Trust hereby constituted:

(a) the Trustees may appoint any bank, trust company, securities dealer or other financial institution to be their banker for the purposes of the Trust;

INBOX- 250

- 13 -

(b)    acting jointly, the Trustees are authorized on behalf of the Trust:

        (i)    to sign, endorse, make, draw, or accept any cheques, promissory notes, bills of exchange, or other negotiable instrument, any orders for the payment of money, contracts for letters of credit or foreign exchange and generally all instruments or documents for the purpose of binding or obligating the Trustees in any way in connection with the accounts and transactions of the Trust with the banker, whether or not an overdraft is thereby created, and any instruments and documents so signed shall be binding upon the Trustees;

        (ii)    to receive from the banker and where applicable give a receipt for, all statements of account, cheques and other debit vouchers, unpaid and unaccepted bills of exchange and other negotiable instruments and to delegate in writing to be filed with the banker such authority to one or more other persons.

## 12.    RESIGNATION AND REPLACEMENT OF TRUSTEES

12.1    Each of the persons named as a Trustee, in virtue of the present deed, originally or thereafter, shall remain trustees for as long or until one of the following events shall have occurred.  There shall at all times be two (2) Trustees to administer this Trust.

12.2    Any Trustee shall immediately cease to be a Trustee in the event that he or she becomes bankrupt, effects an assignment of his or her property or, for whatever reason, becomes incapable to fulfil his or her function as Trustee. Any Trustee shall have the right to resign, even after having accepted his or her appointment as Trustee, by giving a written notice to such effect, sent to the Settlor, to the Beneficiaries or to the other Trustee in office, if any, and shall be replaced in accordance with the provisions set forth in this Section 12.  The resignation of a Trustee, who has accepted such appointment, shall only be effective within 30 days from receipt of said notice by the Settlor, the Beneficiaries and the other Trustee, if any.

12.3    If the Trustee being replaced is Garry Jonas, he shall be replaced by such person other than the Settlor who has

INBOX- 251

- 14 -

previously been designated, in writing, by Garry Jonas, to be his replacement. Should there have been no such designation, the replacement will be named by the legal representatives of Garry Jonas. Any other replacement Trustee at a time when Garry Jonas is acting as Trustee shall be such person designated by Garry Jonas. In any other circumstances, the replacement Trustee shall be named by the legal representatives of Garry Jonas.

12.4   At any time, Garry Jonas (or, in the event of his death, his legal representatives), may, in his absolute discretion remove a Trustee from office by a notice to such effect served upon such Trustee or sent to him/her by registered mail and the latter Trustee shall thereupon be discharged from all of his duties hereunder. At the same time, Garry Jonas, or his legal representatives, shall appoint a new Trustee.

12.5   Trustees' decisions must be taken during validly convened meetings that comply with the provisions herein. A meeting of the Trustees may be convened at any time and in any location by any one of the Trustees in office provided that notice of the meeting is given to each Trustee or, in the absence of a notice, that all of the Trustees are present or a Trustee has waived the notice in writing.

12.6   A Trustee may, either prior to or following a meeting of the Trustees, waive notice of such meeting either in writing or by way of telegram, cablegram, facsimile, telex or electronic mail. The Trustees sole attendance at a meeting is a waiver except where he attends a meeting for the express purpose of objecting to the holding of the meeting on the ground that the manner of calling i twas irregular.

12.7   The notice must contain the object of the meeting, the day, hour and location of the meeting and, if delivered by mail, it must be sent at least seven (7) days prior to the meeting or, if transmitted by electronic mail or facsimile, at least sixty (60) hours before the meeting. If the notice is transmitted by hand, delay is then reduced to forty eight (48) hours. The notice need not be signed.

12.8   Notwithstanding any other provision of this Trust Agreement, but subject to the provisions of the *Civil Code* and in particular Article 1275, Garry Jonas may increase the number of Trustees in office. Garry Jonas may also, by

INBOX- 252

- 15 -

notarial act en *minute*, modify the terms and conditions by which he may be replaced. Consequently, Garry Jonas may name his successor or provide for the modalities by which his successor; and such successor's successor, shall be appointed. Subject to the provisions of the *Civil Code*, the arrangements made by Garry Jonas in regards to the exercise of the rights attributed to him by this Paragraph take precedence over all other provisions of this Trust Agreement. Garry Jonas may also, from time to time, modify the arrangements he has established pursuant to this Paragraph.

**13.    NO REVERSION**

No part of the Trust Fund shall in any event revert to the Settlor.

**14.    FUTURE GIFTS**

The Settlor and any other person or persons may at any time and from time to time add to the Trust Fund, provided the Trustees, having regard to tax and other considerations, are willing to accept such additions.

**15.    INVENTORY, SECURITY AND CURATORSHIP**

The Trustees shall not be required:

(a)    to make any inventory or accounting more detailed than that which, in their sole opinion, may be required for the purposes of keeping proper records of their administration of the Trust Fund;

(b)    to furnish any security for their administration, notwithstanding any provision to the contrary contained in any legislation whatsoever;

(c)    to make the property of the Trust Fund more productive.

**16.    LIABILITY OF TRUSTEES**

The Trustees shall be fully protected in exercising any discretion granted to them in this Agreement and shall not be liable to the Settlor or the Settlor's estate or to any Beneficiary of the Trust hereby created or to any other person whatsoever by reason of the exercise of any such discretion. The Trustees shall exercise the powers and discretion given to them in what they deem to be the best interests, whether

INBOX- 253

- 16 -

monetary or otherwise, of the Beneficiaries, whether or not such exercise may have the effect of conferring an advantage on any one or more of the Beneficiaries at the expense of the other Beneficiaries or would otherwise, but for the foregoing, be considered as being other than an impartial exercise of their duties hereunder or as not being the maintenance of an even hand among the Beneficiaries, and all such exercise of his powers and discretion shall be binding upon all the Beneficiaries and shall not be subject to any question by any person, official, authority, Court, or tribunal whatsoever or whomsoever. The Trustees shall not be responsible for the acts or defaults of each other or for any error in judgement or for any act of omission or commission not amounting to actual fraud in the management and administration of the Trust Fund. The Trustees shall not be personally liable upon any monies to become due from or by any claims against the Trust Fund or upon any investment executed by the Trustees under the provisions hereof. The Trustees shall have the power to bind the Trust Fund without rendering themselves personally liable. The legal title to all the Trust Fund shall be and remain vested in the Trustees and their successors.

17.   **SAFEKEEPING OF ASSETS**

The Trustees shall be entitled to employ the safekeeping services of any bank, trust company, securities dealer, or other financial institution and shall not be liable for any loss which may be occasioned thereby.

18.   **RESETTLEMENT OR TRANSFER**

The Trustees may at any time if in their absolute and uncontrolled discretion they deem appropriate, pay or transfer the whole or any part of the Income or Capital of the Trust Fund to the Trustees of any other trust whether testamentary or *inter vivos* and established in the Province of Quebec, in another Province of Canada or elsewhere, the dispositive provisions of which is in the opinion of the Trustees such that the only beneficiaries likely to benefit thereunder are persons who are Beneficiaries under this Trust and in the same proportions.

19.   **COMPENSATION OF TRUSTEES**

The Trustees shall be entitled to be paid out of the Trust Fund such amounts as may be agreed upon from time to time by the Trustees or failing agreement such amounts as may be determined by a court of competent jurisdiction in the Province of Quebec. Such remuneration shall be a first charge upon the assets of the Trust Fund and the Trustees shall be permitted to take from time to time reasonable

- 17 -

amounts on account of compensation to be agreed upon or awarded. Notwithstanding the foregoing, the remuneration of any Trustee hereunder for any 12 month period shall not exceed two percent of the Income derived from the Trust Fund in such twelve month period.

**20.   MEANING OF CHILD AND ISSUE**

Any reference in this Agreement to a person in terms of a relationship to another person determined by blood or marriage shall not include a person born outside marriage nor a person who comes within the description traced through another person who was born outside marriage, provided that any person who has been legally adopted shall be regarded as having been born within marriage to his or her adopting parent and any person who would otherwise have been one of the Beneficiaries hereunder who shall have been or shall be adopted by any other person as his child shall not, by reason of such adoption, cease to be a Beneficiary hereunder but shall for all purposes of this agreement nevertheless remain a Beneficiary and be entitled to take his or her interest in the Trust Fund in the same manner and to the same extent as if he had not been so adopted.

**21.   IRREVOCABILITY**

This Agreement and the Trust hereby created are intended by the parties and are hereby declared to be irrevocable.

**22.   NOT SUBJECT TO SEIZURE OR ASSIGNMENT**

The Trust Fund is intended as an alimentary provision and so long as the Trust Fund and the revenue therefrom remain in the possession and under the control of the Trustees, the same shall be exempt from seizure or attachment for the debts of any Beneficiary or issue of any Beneficiary hereunder.   Likewise the Trust Fund and the revenue therefrom shall be incapable of being assigned or anticipated by any Beneficiary or issue of any Beneficiary without the written consent of the Trustees.   This provision shall be without effect as regards the right granted to the Trustees to hypothecate, pledge or otherwise effect voluntarily the said Trust Fund.

**23.   EXCLUSION OF DISTRIBUTIONS FROM COMMUNITY OF PROPERTY**

Distributions of Income or Capital shall not fall into any community of property, partnership of acquests or other form of sharing or division of property which may exist between any Beneficiary and his spouse, and every gift together with the Income therefrom shall

INBOX- 255

- 18 -

remain the separate property of a Beneficiary hereunder, free from all matrimonial rights or controls by his spouse.

24.   **GOVERNING LAW**

This Agreement shall be enforced and interpreted in accordance with the laws of the Province of Quebec and the trusts herein declared shall be governed by and administered in accordance with such laws.

25.   **COUNTERPARTS**

This Agreement may be executed in counterparts and each counterpart will be effective to bind the party signing.

26.   **LANGUAGE OF THE TRUST DEED**

*Chaque partie déclare, par les présentes, avoir exigé la rédaction en anglais de la présente convention et chaque partie consent, par les présentes, que tous documents, avis ou procédures légales prévus, découlant ou émis suite aux présentes ou s'y rapportant directement ou indirectement soient rédigés en français ou en anglais.* The parties hereby declare that each has required this Agreement to be in the English language, and each party does hereby consent to any documentation, notices issued hereunder or relating directly hereto, to be in either the French or English language.

**IN WITNESS WHEREOF**, the parties have executed this Agreement at the place and as of the date first above written.

_____
JUDITH COHEN [Settlor]

_____
GARRY JONAS [Trustee]

_____
HOWARD GREENSPOON
[Trustee]

INBOX- 256



INBOX- 257



INBOX- 258

**THIS AGREEMENT** is made at the City of Montreal, Province of Quebec, on this 25th day of October, 2013.

| | |
|---|---|
| **BETWEEN:** | **JUDITH COHEN,** domiciled and residing at 6795 Korczak, apt 503, in the City of Cote-St-Luc, Province of Quebec, H4W 2W7, |
| | (hereinafter referred to as the **"Settlor"**); |
| **AND:** | **GARRY JONAS,** businessman, domiciled and residing at 6803 Heywood, apt 502, in the City of Cote-St-Luc, Province of Quebec, H4W 3L6, |
| **AND:** | **DAVID L. HATTON,** attorney, having his legal practice at 2960 Wentworth, in the City of Weston, in the State of Florida, USA 33332, |
| | (hereinafter collectively referred to as the **"Trustees"**) |

**WHEREAS,** the Settlor wishes to constitute a trust, which shall be known as "THE IRENE MARCIANO FAMILY TRUST" in English and "LA FIDUCIE FAMILIALE IRENE MARCIANO" in French;

**NOW THEREFORE THIS AGREEMENT WITNESSES THAT THE PARTIES HERETO HAVE AGREED AND DO HEREBY COVENANT AND AGREE TO THE TERMS SET OUT BELOW:**

1.   **INTERPRETATION**

1.1   In this Agreement and in any instrument supplemental or ancillary hereto, unless the context otherwise requires:

(a)   **"Assets"** include cash, securities, estates, property, and any interests therein;

(b)   **"Beneficiaries"** means (i) Garry Jonas, (ii) Irene Marciano, (iii) Sierra Jonas, (iv) Joshua Rubin, (v) Daniel Rubin, and (vi) any private corporation incorporated under the laws of Canada or under the laws of any province of Canada that is controlled by any one or several of the Beneficiaries or by this Trust, whether or not the corporation was incorporated at the time of the creation of this trust, and **"Beneficiary"** shall mean any one of the above;

INBOX- 259

- 2 -

(c)    **"Capital"** and **"Income"** and all other terms used in this Trust shall, unless otherwise specified, be interpreted in accordance with the *Civil Code of Quebec.*

(d)    **"Civil Code"** means the *Civil Code of Quebec,* as amended from time to time;

(e)    **"Deemed Income"** shall mean all amounts which are treated as income or deemed to be income pursuant to the *Income Tax Act* resulting from, without limitation, deemed dispositions or resulting in deemed dividends the whole irrespective of the characterization of such amounts for the purposes of the *Civil Code of Québec.*

(f)    *"Income Tax Act"* shall mean the *Income Tax Act* (Canada) R.S.C. 1985 (5th Supp.) c.1, as amended, and the *Taxation Act* (Quebec), R.S.Q. 1977, c. I-3, as amended;

(g)    **"Time of Division"** shall mean the earlier of:

    (i)    one (1) month preceding the date that the Trust would otherwise be deemed to dispose of its capital property according to the relevant income tax laws in force at the time, unless the Trustees consider that the Trust will not be subject to the said deemed disposition notably because of the exercise of the power described in Section 5 of this Trust and have decided in their absolute discretion to extend the Time of Division beyond such deemed disposition date by way of written notice. Such notice must set out the revised Time of Division applicable to this paragraph and must be served prior to the deemed disposition date on all of the Beneficiaries alive or existing at the time of the signing of such notice;

    (ii)    The day preceding the one hundredth (100th) anniversary of this Trust;

    (iii)    any day as determined by the Trustees in their absolute discretion by way of a written notice signed by each of the Trustees and served on the Beneficiaries alive or existing at the time of the signing of such notice; and

INBOX- 260

- 3 -

(iv)    after the death of Garry Jonas, any day specifically mentioned in the Last Will and Testament of Garry Jonas.

(h)    **"Trust"** means the trust patrimony constituted hereby;

(i)    **"Trust Fund"** shall mean the property referred to in paragraph 2.1 hereof and all other assets which may at any time be substituted therefor and all other assets which is now or which at any time during the continuance of the Trust may be assigned, transferred, or appointed to the Trustees by the Settlor or any other person or persons to be held upon the trusts hereof and all capital accretions to and all income from such assets, but excluding all amounts which have been paid or disbursed therefrom (whether out of Capital or Income) in the normal course of administration or pursuant to the provisions of this Agreement;

(j)    **"Trustees"** shall mean the Trustees from time to time acting under this Agreement and shall include the original Trustees named herein and any additional or substituted Trustees appointed pursuant to the provisions of this Agreement;

1.2    In this Agreement and in any instrument supplemental or ancillary hereto, the singular shall include the plural and the masculine shall include the feminine and vice versa.

2.    **GIFT AND ACCEPTANCE OF SETTLED PROPERTY**

2.1    The Settlor hereby transfers irrevocably and gratuitously *inter vivos* unto the Trustees Twenty (20) Dollars Canadian.

2.2    The Trustees hereby acknowledge the receipt from the Settlor of the property referred to in Section 2.1 hereof which is to be held upon and subject to the trusts hereof and accept the trusts herein and agree to be bound by the provisions hereof and to hold the Trust Fund upon the trusts hereof.

3.    **PAYMENTS OF WHOLE, OR PART, OF THE INCOME OR CAPITAL OF THE TRUST FUND BEFORE TIME OF DIVISION**

3.1    The Trustees shall, until Time of Division, have the full administration and legal possession of the Capital of and the Income and fruits derived from the Trust Fund, which

- 4 -

capital and income and fruits shall be invested and kept invested in accordance with the provisions of this Trust unless paid to a Beneficiary in accordance with the provisions of this Section 3.

3.2     Until Time of Division, the Trustees may, in their discretion, pay annually or at more frequent intervals to one or more than one of the Beneficiaries all or part of the annual net income of the Trust. Should the Trustees decide to make such payment, the Trustees shall determine, in their discretion, which Beneficiary or Beneficiaries shall receive such payment and the amount or share that will be paid to each recipient. The Trustees shall add to the capital of the Trust Fund the net income of the Trust which has not been paid or allocated to the Beneficiaries or affected by a vested right in favour of any of the Beneficiaries in the year or within three (3) months thereafter.

3.3     Until Time of Division, the Trustees may, in their discretion, pay, make payable or allocate any amounts of or on account of Deemed Income to one or more than one of the Beneficiaries, in cash, in kind or as a vested right, the whole as the Trustees may determine in their absolute discretion.

3.4     Until Time of Division, the Trustees may, in their discretion, pay to one or more than one of the Beneficiaries all or part of the Capital of the Trust Fund. Should the Trustees decide to make a payment of the Capital, they shall determine, in their sole and absolute discretion, which Beneficiary or Beneficiaries shall receive such payment and the amount or share that will be paid to each recipient.

3.5     Notwithstanding paragraphs 3.1 to 3.4, if the Trust holds shares in the share capital of a corporation that is not a small business corporation and a Beneficiary is a "*designated person*" within the meaning of subsection 74.5(5)(b) of the *Income Tax Act* in respect of a person (hereinafter the "Contributor") who has transferred property to such corporation in consideration for the issuance of shares of said corporation, then such Beneficiary, will not be allowed to receive or otherwise obtain the use of any part of the income or capital of the Trust derived from such corporation, during that period.

INBOX- 262

- 5 -

3.6     Notwithstanding the provisions of Sections 3.1 to 3.5 above, after the death of Garry Jonas or in the event that Garry Jonas is no longer acting as a Trustee under the present Trust, then, all of the Income and Capital, and Deemed Income, of the Trust Fund shall be distributed to any Beneficiary or Beneficiaries in accordance with the specific distribution directions set out in the Last Will and Testament or a Codicil thereto or any other written instrument of Garry Jonas. In the absence of such specific distribution directions, the Income, Deemed Income and Capital of the Trust Fund shall be distributed in accordance with Sections 3.1 to 3.5 and Section 3.7 above. Notwithstanding the above, distribution of the Trust Fund made pursuant to this paragraph shall be made directly to the person entitled to receive such property and shall not be transferred to or form part of the estate of Garry Jonas following his death.

3.7     Notwithstanding the provisions of Sections 3.1 to 3.6 above, in the event that the Trust Fund would include shares of the capital stock of a Beneficiary, then, none of these shares may be attributed to such Beneficiary nor any income of any kind derived from such shares may be allocated to such corporate Beneficiary. The Trustees will retain full discretion concerning the attribution of these shares between the other Beneficiaries.

4.      **DISTRIBUTION AT TIME OF DIVISION**

4.1     Unless otherwise provided in this Trust, at the Time of Division the Trustees will pay and distribute all of the Trust Fund in cash or in kind to one, some or all of the Beneficiaries and in such amounts, shares and proportions as the Trustees may determine in their absolute discretion.

4.2     Notwithstanding Section 4.1 above, if the Trust holds shares in the share capital of a corporation that is not a small business corporation, and a Beneficiary is a "*designated person*" within the meaning of subsection 74.5(5)(b) of the *Income Tax Act* in respect of the Contributor who has transferred property to such corporation, in consideration for the issuance of shares of said corporation, then such Beneficiary will not be allowed to receive or otherwise obtain the use of any part of the income or capital of the Trust derived from such corporation during that period.

INBOX- 263

- 6 -

4.3     Notwithstanding Sections 4.1 and 4.2 above, should the Time of Division occur following the death of Garry Jonas or in the event that Garry Jonas is no longer acting as a Trustee under the present Trust, then, all of the income and capital, and Deemed Income, of the Trust Fund shall be distributed to any of the Beneficiary or Beneficiaries in accordance with the specific distribution directions set out in the Last Will and Testament of Garry Jonas or a Codicil thereto or any other written instrument of Garry Jonas. In the absence of such specific distribution directions, the income, Deemed Income and capital of the Trust Fund shall be distributed in accordance with Sections 4.1, 4.2 and 4.4 hereof. Notwithstanding the above, distribution of the Trust Fund made pursuant to this paragraph shall be made directly to the person entitled to receive such property and shall not be transferred to or form part of the estate of Garry Jonas following his death.

4.4     Notwithstanding the provisions of Sections 4.1 and 4.2 above, in the event that the Trust Fund would include shares of the capital stock of a Beneficiary, then, none of these shares may be attributed to such Beneficiary. The Trustees will retain full discretion concerning the attribution of these shares between the other Beneficiaries.

5.   **IRREVOCABLE ALLOCATION OF TRUST FUND TO BENEFICIARIES PRIOR TO TIME OF DIVISION**

5.1     The Trustees may, in accordance with the principles set out in Section 3 of this Trust *mutadis mutandis*, irrevocably attribute and allocate the Trust Fund to the Beneficiaries, in writing, and give notice to the Beneficiaries of the said allocation of the Trust Fund, without distributing the Trust Fund to the Beneficiaries. Upon taking such decisions, notwithstanding the provisions of Sections 2 or 4 above, the Trustees shall have no further discretion with respect to the distribution of income, capital and Deemed Income of the Trust Fund, which shall be distributed in accordance with the said allocation.

6.   **PAYMENTS FOR MINORS**

6.1     If any Capital of the Trust Fund or any of the Income therefrom shall be payable or distributable during a particular year, whether or not as a result of the exercise of the discretionary power vested in the Trustees, to a

INBOX- 264

- 7 -

Beneficiary who is under eighteen (18) years of age before the end of the year, the amount payable or distributable (hereinafter referred to as an "**Infant's Share**") may be held and kept invested by the Trustees and so much of the Income and Capital of an Infant's Share as the Trustees in their absolute and uncontrolled discretion consider advisable from time to time may be used for the care, maintenance, education, and advancement in life of such infant until he or she attains twenty-one (21) years of age, and any Income of an Infant's Share not so used in any year shall be accumulated and added in such year to the Capital thereof. The provisions of the Agreement respecting the administration of the Trust Fund shall apply *mutatis mutandis* to any Infant's Share held by the Trustees.

6.2     The Trustees are authorized to make any payment or distribution, whether of Income or Capital, for any Beneficiary under the age of majority or under any other disability, to the parent, tutor or curator of such Beneficiary or to anyone to whom the Trustees in their discretion deem it advisable to make such payment on behalf of the Beneficiary, whose receipt shall be a sufficient discharge to the Trustees.

7.     **POWERS OF TRUSTEES**

In addition to all other powers conferred upon them by the other provisions of this agreement or by the *Civil Code of Quebec*, the Trustees shall have and are hereby given the power and authority in their absolute and uncontrolled discretion at any time and from time to time to administer the Trust Fund in whatever manner they may determine and they shall have the right to take any action in connection with the Trust Fund and to exercise any rights, powers, and privileges which may exist or arise in connection therewith to the same extent and as fully as an individual could if they were the sole owners of the Trust Fund. Without in any way limiting the generality of the foregoing, the Trustees shall have the power and authority:

7.1     **Investments** – to invest any money constituting part of the Trust Fund in any investments which the Trustees consider advisable, notwithstanding that such investments may not be investments authorized by law for the Trustees. Without limiting the generality of the foregoing, the Trustees may hold any investment including shares in a private company whether or not it is producing Income and whether or not in

- 8 -

the opinion of the Trustees it is likely to undergo capital appreciation. The holding of any such investment is specifically authorized whether or not it might have the effect of conferring an advantage on any one or more of the Beneficiaries or, but for the foregoing, could be considered as not being an impartial exercise by the Trustees of their duties hereunder or as the failure to maintain an even hand among the Beneficiaries;

7.2     **Life Insurance** – to apply for and purchase, as an authorized investment of the Trust Fund, life insurance (whether "term" or "whole life") on the life of any person; to accept as assignees, for a consideration or as a donation to the Trust Fund, any life insurance policy or policies on the life of any person or benefits under any such policy or policies; and to use and apply any portion of the Capital of the Trust Fund in the payment or repayment of premiums upon, or for the purpose of maintaining in force, any such insurance whether applied for and purchased by the Trustees or accepted by them as assignee or donee. Any insurance so purchased by, donated to, or otherwise acquired by the Trustees shall be deemed to be an authorized investment for the purposes of the Trust and whenever from time to time the Trustees pay or prepay any premium or premiums on any insurance they shall be deemed to have made an authorized investment. The proceeds of any such insurance and any amount payable as a result of the prepayment of premiums shall be payable and paid to the Trustees and, when received by them, shall constitute part of the Capital of the Trust Fund. The Trustees are empowered to exercise any and all rights and powers howsoever available or arising with respect to any policy of insurance applied for, purchased by, donated to, or otherwise acquired by the Trustees and to dispose of such policy in such manner, at such time, for such price, and upon such terms as he consider advisable;

7.3     **Immovable Property** – to invest in, own, or hold immovable property as part of the Trust Fund and in such event to lease the same to such persons, for such times, and upon such terms and conditions as the Trustees see fit and to accept surrenders of leases and tenancies and to spend money out of the Income or Capital of the Trust Fund for repairs and improvements and generally to manage the property and with a view to the sale thereof to give any

INBOX- 266

- 9 -

options that he deems advisable; in particular, the Trustees are authorized to permit any Beneficiary to occupy any such immovable property either rent free or at such rent as the Trustees shall determine;

7.4 **Borrow** – to borrow on behalf of the Trust Fund such amount or amounts as the Trustees may deem necessary or advisable, upon such terms and subject to such conditions as they may see fit, and, for the repayment of any amount so borrowed, to mortgage, pledge, hypothecate, or otherwise charge all or any part of the Trust Fund. No person or bank from whom any amount is borrowed shall be obliged in any way to see to the application of the funds advanced;

7.5 **Dispose** – to sell, transfer, assign, exchange, convey, mortgage, lease, or otherwise dispose of any of the assets from time to time constituting the Trust Fund in any manner the Trustees may deem proper and at such price, upon such terms, and for such consideration as they shall deem suitable, and to give any option with respect to any property in the Trust Fund as they may deem appropriate. In so doing, the Trustees are empowered to execute and deliver all deeds or other instruments as may be necessary or desirable to make good and sufficient title to any such trust asset;

7.6 **Interest in Companies and Corporations** – to vote all stock and shares or other securities, to exercise all rights incidental to the ownership of stocks, bonds, or other securities and investments and property held as part of the Trust Fund, to issue proxies to others, to sell or exercise any subscription rights, and to consent to and join in any plan, reorganization, re-adjustment, merger, amalgamation, or consolidation with respect to any corporation whose stock, shares, bonds, or other securities at any time form part of the Trust Fund, and to authorize the sale of the undertaking or assets or any portion of the undertaking or assets of any such corporation;

7.7 **Lend** – to advance monies out of the Trust Fund by way of loan to any person or corporation, such loans to be made with or without interest, upon such terms as to repayment, and with or without security, all as the Trustees may deem advisable;

- 10 -

7.8   **Guarantee** – to guarantee, with or without security, the performance of contracts and the performance of undertakings and obligations of any person, partnership, firm, or association, including the payment of interest, principal, and premium, if any, of or on any bonds, debentures, or other securities, mortgages or other liabilities of any such person, corporation, partnership, firm, or association;

7.9   **Agents** – to employ and pay for such professional or other assistance, including the assistance of a corporate agent or nominee, as the Trustees may deem appropriate and to act on the opinion or advice of or information obtained from any financial adviser, accountant, lawyer, evaluator, surveyor, broker, auctioneer, or other expert or professional person and the Trustees shall not be responsible for any loss, depreciation, or damage occasioned by acting or not acting in accordance therewith.  The Trustees shall have the powers to pay fees or charges to such firm and to charge such fees and charges to the Income or the Capital or to both Income and Capital of the Trust Fund as the Trustees in their absolute discretion deem advisable;

7.10   **Incorporation** – to incorporate any company or companies under the laws of any jurisdiction in the world at the expense of the Trust Fund for such purposes as the Trustees may deem appropriate, including for the purpose of acquiring the whole or any part of the Trust Fund, and to sell the Trust Fund or any part thereof to any such company for such consideration as the Trustees may deem appropriate, including consideration consisting wholly or partly of debentures or other securities of such company;

7.11   **Distribution and Valuation** – upon any distribution or division of the Trust Fund or of any part hereof, to distribute or divide the same either wholly or in part in money or in other assets of the Trust Fund and for the purpose of such distribution or division and for any other purpose hereunder, to place such value on the assets from time to time forming the whole or any part of the Trust Fund as they deem just and proper, and any such valuation shall be absolutely final and binding upon all persons entitled hereunder; and upon any such distribution or division to determine to whom or to what shares specified assets shall be given or allocated and to distribute or divide the same subject to the payment of

OH

INBOX- 268

- 11 -

such amounts as shall be necessary to adjust the shares of the various Beneficiaries.

8.  **REGISTRATION OF ASSETS**

All assets from time to time constituting the Trust Fund shall be held by and registered in the name of the Trustees or in the name of his or her nominees or otherwise as the Trustees may deem expedient.

9.  **INCOME TAX COMPLIANCE**

The following provisions are made to assist the Trustees in administering the Trust hereby constituted and in complying with the provisions of the *Income Tax Act*. Any reference to an item being taxable refers to the taxation of such item pursuant to the *Income Tax Act*. The words "preferred beneficiary" and "accumulating income" shall have, for the purpose of this provision, the meanings given to such words in the *Income Tax Act*:

(a)  the Trustees are authorized from time to time to join with any preferred beneficiary of the Trust Fund in making any election, in the prescribed manner, pursuant to any provisions of the *Income Tax Act* enabling him to do so, in order to allocate for purposes of the *Income Tax Act* only the whole or any part of the accumulating Income of the Trust Fund in any taxation year to such Beneficiary.  Such election shall not entitle such preferred beneficiary to any greater rights to the Income or Capital of the Trust Fund than such preferred beneficiary would have if such election had not been made;

(b)  in addition to all other powers conferred upon them by the other provisions of this Agreement, the Trustees are authorized at any time to pay to any preferred beneficiary of the Trust Fund an amount out of the accumulating Income of the Trust Fund in any year sufficient to enable such Beneficiary to pay his or her increased liability, if any, under the *Income Tax Act* resulting from any election made by such Beneficiary and the Trustees, pursuant to any provisions of that Act enabling them to do so, whereby some or all of the accumulating Income of the Trust Fund for that taxation year is allocated to such Beneficiary for income tax purposes;

(c)  where the Trustees consider it to be in the interest of any Beneficiary, the Trustees are authorized to execute on behalf

INBOX- 269

- 12 -

of any infant preferred beneficiary an election, in the prescribed manner, pursuant to any provisions of the *Income Tax Act* enabling them to do so, in order to allocate for purposes of the *Income Tax Act* the whole or any part of the accumulating Income in any taxation year of the Trust Fund to such preferred beneficiary; and

(d)     the Trustees shall have the right to pay out of the Income or Capital of the Trust Fund, as they may from time to time in their absolute discretion determine, any taxes payable in connection with the Trust Fund or payable by any Beneficiary in respect of the Trust Fund or any part thereof.

10.     **PROCEDURES**

10.1    The exercise of any rights, powers and priviledges granted to the Trustees referred to in Section 7 hereof and any action in connection therewith shall be determined jointly by each of the Trustees for the time being in office.

10.2    The Trustees may adopt any rules and regulations which they may from time to time deem proper to govern their own procedure.  Subject to Section 10.1 hereof, the Trustees may act either by a resolution jointly passed by each of them at a meeting or by an instrument in writing jointly signed by each of them, and any such decision or act of a majority of the Trustees shall, for all purposes of this Agreement be deemed the decision or act of the Trustees.   Subject to Section 10.1 hereof, every deed or instrument of every nature or description jointly executed by each of the Trustees for the time being in office shall be as valid, effectual and binding as if executed by each of the Trustees.

11.     **BANKING ARRANGEMENTS**

Notwithstanding the other provisions of this Agreement, the sole signature of either one of the Trustees shall be sufficient to exercise all of the banking powers conferred upon the Trustees herein.  It is the express intent of the Settlor that either Trustee may sign, endorse, make, draw, or accept any cheques, promissory notes, bills of exchange, or other negotiable instrument, any orders for the payment of money, contracts for letters of credit or foreign exchange and generally all instruments or documents for the purpose of binding or obligating the Trustees in any way in connection with the accounts and transactions of the Trust with the banker, whether or not an overdraft is thereby created, and any

- 13 -

instruments and documents so signed shall be binding upon the Trustees. Either one of the Trustees may appoint any bank, trust company, securities dealer or other financial institution to be their banker for the purposes of the Trust following provisions shall govern the banking arrangements of the Trust hereby constituted.

12. **RESIGNATION AND REPLACEMENT OF TRUSTEES**

12.1   Each of the persons named as a Trustee, in virtue of the present deed, originally or thereafter, shall remain trustees for as long or until one of the following events shall have occurred. There shall at all times be two (2) Trustees to administer this Trust.

12.2   Any Trustee shall immediately cease to be a Trustee in the event that he or she becomes bankrupt, effects an assignment of his or her property or, for whatever reason, becomes incapable to fulfil his or her function as Trustee. Any Trustee shall have the right to resign, even after having accepted his or her appointment as Trustee, by giving a written notice to such effect, sent to the Settlor, to the Beneficiaries or to the other Trustee in office, if any, and shall be replaced in accordance with the provisions set forth in this Section 12. The resignation of a Trustee, who has accepted such appointment, shall only be effective within 30 days from receipt of said notice by the Settlor, the Beneficiaries and the other Trustee, if any.

12.3   If the Trustee being replaced is Garry Jonas, he shall be replaced by such person other than the Settlor who has previously been designated, in writing, by Garry Jonas, to be his replacement. Should there have been no such designation, the replacement will be named by the legal representatives of Garry Jonas. Any other replacement Trustee at a time when Garry Jonas is acting as Trustee shall be such person designated by Garry Jonas. In any other circumstances, the replacement Trustee shall be named by the legal representatives of Garry Jonas.

12.4   At any time, Garry Jonas (or, in the event of his death, his legal representatives), may, in his absolute discretion remove a Trustee from office by a notice to such effect served upon such Trustee or sent to him/her by registered mail and the latter Trustee shall thereupon be discharged from all of his duties hereunder. At the same time, Garry

INBOX- 271

- 14 -

Jonas, or his legal representatives, shall appoint a new Trustee.

12.5    Trustees' decisions must be taken during validly convened meetings that comply with the provisions herein. A meeting of the Trustees may be convened at any time and in any location by any one of the Trustees in office provided that notice of the meeting is given to each Trustee or, in the absence of a notice, that all of the Trustees are present or a Trustee has waived the notice in writing.

12.6    A Trustee may, either prior to or following a meeting of the Trustees, waive notice of such meeting either in writing or by way of telegram, cablegram, facsimile, telex or electronic mail. The Trustees sole attendance at a meeting is a waiver except where he attends a meeting for the express purpose of objecting to the holding of the meeting on the ground that the manner of calling i twas irregular.

12.7    The notice must contain the object of the meeting, the day, hour and location of the meeting and, if delivered by mail, it must be sent at least seven (7) days prior to the meeting or, if transmitted by electronic mail or facsimile, at least sixty (60) hours before the meeting. If the notice is transmitted by hand, delay is then reduced to forty eight (48) hours. The notice need not be signed.

12.8    Notwithstanding any other provision of this Trust Agreement, but subject to the provisions of the *Civil Code* and in particular Article 1275, Garry Jonas may increase the number of Trustees in office. Garry Jonas may also, by notarial act en *minute*, modify the terms and conditions by which he may be replaced. Consequently, Garry Jonas may name his successor or provide for the modalities by which his successor; and such successor's successor, shall be appointed. Subject to the provisions of the *Civil Code*, the arrangements made by Garry Jonas in regards to the exercise of the rights attributed to him by this Paragraph take precedence over all other provisions of this Trust Agreement. Garry Jonas may also, from time to time, modify the arrangements he has established pursuant to this Paragraph.

13.    **NO REVERSION**

No part of the Trust Fund shall in any event revert to the Settlor.

- 15 -

**14.   FUTURE GIFTS**

The Settlor and any other person or persons may at any time and from time to time add to the Trust Fund, provided the Trustees, having regard to tax and other considerations, are willing to accept such additions.

**15.   INVENTORY, SECURITY AND CURATORSHIP**

The Trustees shall not be required:

(a)   to make any inventory or accounting more detailed than that which, in their sole opinion, may be required for the purposes of keeping proper records of their administration of the Trust Fund;

(b)   to furnish any security for their administration, notwithstanding any provision to the contrary contained in any legislation whatsoever;

(c)   to make the property of the Trust Fund more productive.

**16.   LIABILITY OF TRUSTEES**

The Trustees shall be fully protected in exercising any discretion granted to them in this Agreement and shall not be liable to the Settlor or the Settlor's estate or to any Beneficiary of the Trust hereby created or to any other person whatsoever by reason of the exercise of any such discretion. The Trustees shall exercise the powers and discretion given to them in what they deem to be the best interests, whether monetary or otherwise, of the Beneficiaries, whether or not such exercise may have the effect of conferring an advantage on any one or more of the Beneficiaries at the expense of the other Beneficiaries or would otherwise, but for the foregoing, be considered as being other than an impartial exercise of their duties hereunder or as not being the maintenance of an even hand among the Beneficiaries, and all such exercise of his powers and discretion shall be binding upon all the Beneficiaries and shall not be subject to any question by any person, official, authority, Court, or tribunal whatsoever or whomsoever. The Trustees shall not be responsible for the acts or defaults of each other or for any error in judgement or for any act of omission or commission not amounting to actual fraud in the management and administration of the Trust Fund. The Trustees shall not be personally liable upon any monies to become due from or by any claims against the Trust Fund or upon any investment executed by the Trustees under the provisions hereof. The Trustees shall have the

INBOX- 273

- 16 -

power to bind the Trust Fund without rendering themselves personally liable. The legal title to all the Trust Fund shall be and remain vested in the Trustees and their successors.

17.  **SAFEKEEPING OF ASSETS**

The Trustees shall be entitled to employ the safekeeping services of any bank, trust company, securities dealer, or other financial institution and shall not be liable for any loss which may be occasioned thereby.

18.  **RESETTLEMENT OR TRANSFER**

The Trustees may at any time if in their absolute and uncontrolled discretion they deem appropriate, pay or transfer the whole or any part of the Income or Capital of the Trust Fund to the Trustees of any other trust whether testamentary or *inter vivos* and established in the Province of Quebec, in another Province of Canada or elsewhere, the dispositive provisions of which is in the opinion of the Trustees such that the only beneficiaries likely to benefit thereunder are persons who are Beneficiaries under this Trust and in the same proportions.

19.  **COMPENSATION OF TRUSTEES**

The Trustees shall be entitled to be paid out of the Trust Fund such amounts as may be agreed upon from time to time by the Trustees or failing agreement such amounts as may be determined by a court of competent jurisdiction in the Province of Quebec. Such remuneration shall be a first charge upon the assets of the Trust Fund and the Trustees shall be permitted to take from time to time reasonable amounts on account of compensation to be agreed upon or awarded. Notwithstanding the foregoing, the remuneration of any Trustee hereunder for any 12 month period shall not exceed two percent of the Income derived from the Trust Fund in such twelve month period.

20.  **MEANING OF CHILD AND ISSUE**

Any reference in this Agreement to a person in terms of a relationship to another person determined by blood or marriage shall not include a person born outside marriage nor a person who comes within the description traced through another person who was born outside marriage, provided that any person who has been legally adopted shall be regarded as having been born within marriage to his or her adopting parent and any person who would otherwise have been one of the Beneficiaries hereunder who shall have been or shall be adopted by any other person as his child shall not, by reason of such

- 17 -

adoption, cease to be a Beneficiary hereunder but shall for all purposes of this agreement nevertheless remain a Beneficiary and be entitled to take his or her interest in the Trust Fund in the same manner and to the same extent as if he had not been so adopted.

21.   **IRREVOCABILITY**

This Agreement and the Trust hereby created are intended by the parties and are hereby declared to be irrevocable.

22.   **NOT SUBJECT TO SEIZURE OR ASSIGNMENT**

The Trust Fund is intended as an alimentary provision and so long as the Trust Fund and the revenue therefrom remain in the possession and under the control of the Trustees, the same shall be exempt from seizure or attachment for the debts of any Beneficiary or issue of any Beneficiary hereunder.   Likewise the Trust Fund and the revenue therefrom shall be incapable of being assigned or anticipated by any Beneficiary or issue of any Beneficiary without the written consent of the Trustees.   This provision shall be without effect as regards the right granted to the Trustees to hypothecate, pledge or otherwise effect voluntarily the said Trust Fund.

23.   **EXCLUSION OF DISTRIBUTIONS FROM COMMUNITY OF PROPERTY**

Distributions of Income or Capital shall not fall into any community of property, partnership of acquests or other form of sharing or division of property which may exist between any Beneficiary and his spouse, and every gift together with the Income therefrom shall remain the separate property of a Beneficiary hereunder, free from all matrimonial rights or controls by his spouse.

24.   **GOVERNING LAW**

This Agreement shall be enforced and interpreted in accordance with the laws of the Province of Quebec and the trusts herein declared shall be governed by and administered in accordance with such laws.

25.   **COUNTERPARTS**

This Agreement may be executed in counterparts and each counterpart will be effective to bind the party signing.

OH

INBOX- 275

- 18 -

26.   **LANGUAGE OF THE TRUST DEED**

*Chaque partie déclare, par les présentes, avoir exigé la rédaction en anglais de la présente convention et chaque partie consent, par les présentes, que tous documents, avis ou procédures légales prévus, découlant ou émis suite aux présentes ou s'y rapportant directement ou indirectement soient rédigés en français ou en anglais.* The parties hereby declare that each has required this Agreement to be in the English language, and each party does hereby consent to any documentation, notices issued hereunder or relating directly hereto, to be in either the French or English language.

**IN WITNESS WHEREOF,** the parties have executed this Agreement at the place and as of the date first above written.

_____

**JUDITH COHEN [Settlor]**

_____

**GARRY JONAS [Trustee]**

_____

**DAVID L. HATTON [Trustee]**

INBOX- 276

**THIS AGREEMENT** is made at the City of Montreal, Province of Quebec, on this 10th day of January, 2014.

|  |  |
|---|---|
| **BETWEEN:** | **JUDITH COHEN,** domiciled and residing at 6795 Korczak, apt 503, in the City of Cote-St-Luc, Province of Quebec, H4W 2W7, |
|  | (hereinafter referred to as the "**Settlor**"); |
| **AND:** | **GARRY JONAS,** businessman, domiciled and residing at 6803 Heywood, apt 502, in the City of Cote-St-Luc, Province of Quebec, H4W 3L6, |
| **AND:** | **CLAUDE MARCIANO,** businessman, domiciled and residing at 207 Harland, in the City of Hamstead, Province of Quebec, H3X 3G1, |
|  | (hereinafter collectively referred to as the "**Trustees**") |

**WHEREAS,** the Settlor wishes to constitute a trust, which shall be known as "The Irene Marciano Family Trust" in English and "La Fiducie familiale Irene Marciano" in French;

**NOW THEREFORE THIS AGREEMENT WITNESSES THAT THE PARTIES HERETO HAVE AGREED AND DO HEREBY COVENANT AND AGREE TO THE TERMS SET OUT BELOW:**

1. **INTERPRETATION**

    1.1   In this Agreement and in any instrument supplemental or ancillary hereto, unless the context otherwise requires:

    (a)   "**Assets**" include cash, securities, estates, property, and any interests therein;

    (b)   "**Beneficiaries**" means (i) Garry Jonas, (ii) Irene Marciano, (iii) Sierra Jonas, (iv) Joshua Rubin, (v) Daniel Rubin, and (vi) any private corporation incorporated under the laws of Canada or under the laws of any province of Canada that is controlled by any one or several of the Beneficiaries or by this Trust, whether or not the corporation was incorporated at the time of the creation of this trust, and "**Beneficiary**" shall mean any one of the above;

INBOX- 277

- 2 -

(c)    **"Capital"** and **"Income"** and all other terms used in this Trust shall, unless otherwise specified, be interpreted in accordance with the *Civil Code of Quebec.*

(d)    **"Civil Code"** means the *Civil Code of Quebec,* as amended from time to time;

(e)    **"Deemed Income"** shall mean all amounts which are treated as income or deemed to be income pursuant to the *Income Tax Act* resulting from, without limitation, deemed dispositions or resulting in deemed dividends the whole irrespective of the characterization of such amounts for the purposes of the *Civil Code of Québec.*

(f)    *"Income Tax Act"* shall mean the *Income Tax Act* (Canada) R.S.C. 1985 (5th Supp.) c.1, as amended, and the *Taxation Act* (Quebec), R.S.Q. 1977, c. I-3, as amended;

(g)    **"Time of Division"** shall mean the earlier of:

    (i)    one (1) month preceding the date that the Trust would otherwise be deemed to dispose of its capital property according to the relevant income tax laws in force at the time, unless the Trustees consider that the Trust will not be subject to the said deemed disposition notably because of the exercise of the power described in Section 5 of this Trust and have decided in their absolute discretion to extend the Time of Division beyond such deemed disposition date by way of written notice. Such notice must set out the revised Time of Division applicable to this paragraph and must be served prior to the deemed disposition date on all of the Beneficiaries alive or existing at the time of the signing of such notice;

    (ii)    The day preceding the one hundredth (100th) anniversary of this Trust;

    (iii)    any day as determined by the Trustees in their absolute discretion by way of a written notice signed by each of the Trustees and served on the Beneficiaries alive or existing at the time of the signing of such notice; and

INBOX- 278

- 3 -

(iv)   after the death of Garry Jonas, any day specifically mentioned in the Last Will and Testament of Garry Jonas.

(h)   **"Trust"** means the trust patrimony constituted hereby;

(i)   **"Trust Fund"** shall mean the property referred to in paragraph 2.1 hereof and all other assets which may at any time be substituted therefor and all other assets which is now or which at any time during the continuance of the Trust may be assigned, transferred, or appointed to the Trustees by the Settlor or any other person or persons to be held upon the trusts hereof and all capital accretions to and all income from such assets, but excluding all amounts which have been paid or disbursed therefrom (whether out of Capital or Income) in the normal course of administration or pursuant to the provisions of this Agreement;

(j)   **"Trustees"** shall mean the Trustees from time to time acting under this Agreement and shall include the original Trustees named herein and any additional or substituted Trustees appointed pursuant to the provisions of this Agreement;

1.2   In this Agreement and in any instrument supplemental or ancillary hereto, the singular shall include the plural and the masculine shall include the feminine and vice versa.

2.   **GIFT AND ACCEPTANCE OF SETTLED PROPERTY**

2.1   The Settlor hereby transfers irrevocably and gratuitously *inter vivos* unto the Trustees Twenty (20) Dollars Canadian.

2.2   The Trustees hereby acknowledge the receipt from the Settlor of the property referred to in Section 2.1 hereof which is to be held upon and subject to the trusts hereof and accept the trusts herein and agree to be bound by the provisions hereof and to hold the Trust Fund upon the trusts hereof.

3.   **PAYMENTS OF WHOLE, OR PART, OF THE INCOME OR CAPITAL OF THE TRUST FUND BEFORE TIME OF DIVISION**

3.1   The Trustees shall, until Time of Division, have the full administration and legal possession of the Capital of and the Income and fruits derived from the Trust Fund, which

INBOX- 279

- 4 -

capital and income and fruits shall be invested and kept invested in accordance with the provisions of this Trust unless paid to a Beneficiary in accordance with the provisions of this Section 3.

3.2   Until Time of Division, the Trustees may, in their discretion, pay annually or at more frequent intervals to one or more than one of the Beneficiaries all or part of the annual net income of the Trust. Should the Trustees decide to make such payment, the Trustees shall determine, in their discretion, which Beneficiary or Beneficiaries shall receive such payment and the amount or share that will be paid to each recipient. The Trustees shall add to the capital of the Trust Fund the net income of the Trust which has not been paid or allocated to the Beneficiaries or affected by a vested right in favour of any of the Beneficiaries in the year or within three (3) months thereafter.

3.3   Until Time of Division, the Trustees may, in their discretion, pay, make payable or allocate any amounts of or on account of Deemed Income to one or more than one of the Beneficiaries, in cash, in kind or as a vested right, the whole as the Trustees may determine in their absolute discretion.

3.4   Until Time of Division, the Trustees may, in their discretion, pay to one or more than one of the Beneficiaries all or part of the Capital of the Trust Fund. Should the Trustees decide to make a payment of the Capital, they shall determine, in their sole and absolute discretion, which Beneficiary or Beneficiaries shall receive such payment and the amount or share that will be paid to each recipient.

3.5   Notwithstanding paragraphs 3.1 to 3.4, if the Trust holds shares in the share capital of a corporation that is not a small business corporation and a Beneficiary is a "*designated person*" within the meaning of subsection 74.5(5)(b) of the *Income Tax Act* in respect of a person (hereinafter the "Contributor") who has transferred property to such corporation in consideration for the issuance of shares of said corporation, then such Beneficiary, will not be allowed to receive or otherwise obtain the use of any part of the income or capital of the Trust derived from such corporation, during that period.



INBOX- 280

- 5 -

3.6     Notwithstanding the provisions of Sections 3.1 to 3.5 above, after the death of Garry Jonas or in the event that Garry Jonas is no longer acting as a Trustee under the present Trust, then, all of the Income and Capital, and Deemed Income, of the Trust Fund shall be distributed to any Beneficiary or Beneficiaries in accordance with the specific distribution directions set out in the Last Will and Testament or a Codicil thereto or any other written instrument of Garry Jonas. In the absence of such specific distribution directions, the Income, Deemed Income and Capital of the Trust Fund shall be distributed in accordance with Sections 3.1 to 3.5 and Section 3.7 above. Notwithstanding the above, distribution of the Trust Fund made pursuant to this paragraph shall be made directly to the person entitled to receive such property and shall not be transferred to or form part of the estate of Garry Jonas following his death.

3.7     Notwithstanding the provisions of Sections 3.1 to 3.6 above, in the event that the Trust Fund would include shares of the capital stock of a Beneficiary, then, none of these shares may be attributed to such Beneficiary nor any income of any kind derived from such shares may be allocated to such corporate Beneficiary. The Trustees will retain full discretion concerning the attribution of these shares between the other Beneficiaries.

**4.     DISTRIBUTION AT TIME OF DIVISION**

4.1     Unless otherwise provided in this Trust, at the Time of Division the Trustees will pay and distribute all of the Trust Fund in cash or in kind to one, some or all of the Beneficiaries and in such amounts, shares and proportions as the Trustees may determine in their absolute discretion.

4.2     Notwithstanding Section 4.1 above, if the Trust holds shares in the share capital of a corporation that is not a small business corporation, and a Beneficiary is a "*designated person*" within the meaning of subsection 74.5(5)(b) of the *Income Tax Act* in respect of the Contributor who has transferred property to such corporation, in consideration for the issuance of shares of said corporation, then such Beneficiary will not be allowed to receive or otherwise obtain the use of any part of the income or capital of the Trust derived from such corporation during that period.

INBOX- 281

- 6 -

4.3    Notwithstanding Sections 4.1 and 4.2 above, should the Time of Division occur following the death of Garry Jonas or in the event that Garry Jonas is no longer acting as a Trustee under the present Trust, then, all of the income and capital, and Deemed Income, of the Trust Fund shall be distributed to any of the Beneficiary or Beneficiaries in accordance with the specific distribution directions set out in the Last Will and Testament of Garry Jonas or a Codicil thereto or any other written instrument of Garry Jonas. In the absence of such specific distribution directions, the income, Deemed Income and capital of the Trust Fund shall be distributed in accordance with Sections 4.1, 4.2 and 4.4 hereof. Notwithstanding the above, distribution of the Trust Fund made pursuant to this paragraph shall be made directly to the person entitled to receive such property and shall not be transferred to or form part of the estate of Garry Jonas following his death.

4.4    Notwithstanding the provisions of Sections 4.1 and 4.2 above, in the event that the Trust Fund would include shares of the capital stock of a Beneficiary, then, none of these shares may be attributed to such Beneficiary. The Trustees will retain full discretion concerning the attribution of these shares between the other Beneficiaries.

**5.**    **IRREVOCABLE ALLOCATION OF TRUST FUND TO BENEFICIARIES PRIOR TO TIME OF DIVISION**

5.1    The Trustees may, in accordance with the principles set out in Section 3 of this Trust *mutadis mutandis*, irrevocably attribute and allocate the Trust Fund to the Beneficiaries, in writing, and give notice to the Beneficiaries of the said allocation of the Trust Fund, without distributing the Trust Fund to the Beneficiaries. Upon taking such decisions, notwithstanding the provisions of Sections 2 or 4 above, the Trustees shall have no further discretion with respect to the distribution of income, capital and Deemed Income of the Trust Fund, which shall be distributed in accordance with the said allocation.

**6.**    **PAYMENTS FOR MINORS**

6.1    If any Capital of the Trust Fund or any of the Income therefrom shall be payable or distributable during a particular year, whether or not as a result of the exercise of the discretionary power vested in the Trustees, to a

INBOX- 282

- 7 -

Beneficiary who is under eighteen (18) years of age before the end of the year, the amount payable or distributable (hereinafter referred to as an **"Infant's Share"**) may be held and kept invested by the Trustees and so much of the Income and Capital of an Infant's Share as the Trustees in their absolute and uncontrolled discretion consider advisable from time to time may be used for the care, maintenance, education, and advancement in life of such infant until he or she attains twenty-one (21) years of age, and any Income of an Infant's Share not so used in any year shall be accumulated and added in such year to the Capital thereof. The provisions of the Agreement respecting the administration of the Trust Fund shall apply *mutatis mutandis* to any Infant's Share held by the Trustees.

6.2     The Trustees are authorized to make any payment or distribution, whether of Income or Capital, for any Beneficiary under the age of majority or under any other disability, to the parent, tutor or curator of such Beneficiary or to anyone to whom the Trustees in their discretion deem it advisable to make such payment on behalf of the Beneficiary, whose receipt shall be a sufficient discharge to the Trustees.

7.     **POWERS OF TRUSTEES**

In addition to all other powers conferred upon them by the other provisions of this agreement or by the *Civil Code of Quebec*, the Trustees shall have and are hereby given the power and authority in their absolute and uncontrolled discretion at any time and from time to time to administer the Trust Fund in whatever manner they may determine and they shall have the right to take any action in connection with the Trust Fund and to exercise any rights, powers, and privileges which may exist or arise in connection therewith to the same extent and as fully as an individual could if they were the sole owners of the Trust Fund. Without in any way limiting the generality of the foregoing, the Trustees shall have the power and authority:

7.1     **Investments** – to invest any money constituting part of the Trust Fund in any investments which the Trustees consider advisable, notwithstanding that such investments may not be investments authorized by law for the Trustees. Without limiting the generality of the foregoing, the Trustees may hold any investment including shares in a private company whether or not it is producing Income and whether or not in

CH

INBOX- 283

- 8 -

the opinion of the Trustees it is likely to undergo capital appreciation. The holding of any such investment is specifically authorized whether or not it might have the effect of conferring an advantage on any one or more of the Beneficiaries or, but for the foregoing, could be considered as not being an impartial exercise by the Trustees of their duties hereunder or as the failure to maintain an even hand among the Beneficiaries;

7.2     **Life Insurance** -- to apply for and purchase, as an authorized investment of the Trust Fund, life insurance (whether "term" or "whole life") on the life of any person; to accept as assignees, for a consideration or as a donation to the Trust Fund, any life insurance policy or policies on the life of any person or benefits under any such policy or policies; and to use and apply any portion of the Capital of the Trust Fund in the payment or repayment of premiums upon, or for the purpose of maintaining in force, any such insurance whether applied for and purchased by the Trustees or accepted by them as assignee or donee. Any insurance so purchased by, donated to, or otherwise acquired by the Trustees shall be deemed to be an authorized investment for the purposes of the Trust and whenever from time to time the Trustees pay or prepay any premium or premiums on any insurance they shall be deemed to have made an authorized investment. The proceeds of any such insurance and any amount payable as a result of the prepayment of premiums shall be payable and paid to the Trustees and, when received by them, shall constitute part of the Capital of the Trust Fund. The Trustees are empowered to exercise any and all rights and powers howsoever available or arising with respect to any policy of insurance applied for, purchased by, donated to, or otherwise acquired by the Trustees and to dispose of such policy in such manner, at such time, for such price, and upon such terms as he consider advisable;

7.3     **Immovable Property** -- to invest in, own, or hold immovable property as part of the Trust Fund and in such event to lease the same to such persons, for such times, and upon such terms and conditions as the Trustees see fit and to accept surrenders of leases and tenancies and to spend money out of the Income or Capital of the Trust Fund for repairs and improvements and generally to manage the property and with a view to the sale thereof to give any

INBOX- 284

- 9 -

options that he deems advisable; in particular, the Trustees are authorized to permit any Beneficiary to occupy any such immovable property either rent free or at such rent as the Trustees shall determine;

7.4     **Borrow** – to borrow on behalf of the Trust Fund such amount or amounts as the Trustees may deem necessary or advisable, upon such terms and subject to such conditions as they may see fit, and, for the repayment of any amount so borrowed, to mortgage, pledge, hypothecate, or otherwise charge all or any part of the Trust Fund. No person or bank from whom any amount is borrowed shall be obliged in any way to see to the application of the funds advanced;

7.5     **Dispose** – to sell, transfer, assign, exchange, convey, mortgage, lease, or otherwise dispose of any of the assets from time to time constituting the Trust Fund in any manner the Trustees may deem proper and at such price, upon such terms, and for such consideration as they shall deem suitable, and to give any option with respect to any property in the Trust Fund as they may deem appropriate. In so doing, the Trustees are empowered to execute and deliver all deeds or other instruments as may be necessary or desirable to make good and sufficient title to any such trust asset;

7.6     **Interest in Companies and Corporations** – to vote all stock and shares or other securities, to exercise all rights incidental to the ownership of stocks, bonds, or other securities and investments and property held as part of the Trust Fund, to issue proxies to others, to sell or exercise any subscription rights, and to consent to and join in any plan, reorganization, re-adjustment, merger, amalgamation, or consolidation with respect to any corporation whose stock, shares, bonds, or other securities at any time form part of the Trust Fund, and to authorize the sale of the undertaking or assets or any portion of the undertaking or assets of any such corporation;

7.7     **Lend** – to advance monies out of the Trust Fund by way of loan to any person or corporation, such loans to be made with or without interest, upon such terms as to repayment, and with or without security, all as the Trustees may deem advisable;

INBOX- 285

- 10 -

7.8 **Guarantee** – to guarantee, with or without security, the performance of contracts and the performance of undertakings and obligations of any person, partnership, firm, or association, including the payment of interest, principal, and premium, if any, of or on any bonds, debentures, or other securities, mortgages or other liabilities of any such person, corporation, partnership, firm, or association;

7.9 **Agents** – to employ and pay for such professional or other assistance, including the assistance of a corporate agent or nominee, as the Trustees may deem appropriate and to act on the opinion or advice of or information obtained from any financial adviser, accountant, lawyer, evaluator, surveyor, broker, auctioneer, or other expert or professional person and the Trustees shall not be responsible for any loss, depreciation, or damage occasioned by acting or not acting in accordance therewith. The Trustees shall have the powers to pay fees or charges to such firm and to charge such fees and charges to the Income or the Capital or to both Income and Capital of the Trust Fund as the Trustees in their absolute discretion deem advisable;

7.10 **Incorporation** – to incorporate any company or companies under the laws of any jurisdiction in the world at the expense of the Trust Fund for such purposes as the Trustees may deem appropriate, including for the purpose of acquiring the whole or any part of the Trust Fund, and to sell the Trust Fund or any part thereof to any such company for such consideration as the Trustees may deem appropriate, including consideration consisting wholly or partly of debentures or other securities of such company;

7.11 **Distribution and Valuation** – upon any distribution or division of the Trust Fund or of any part hereof, to distribute or divide the same either wholly or in part in money or in other assets of the Trust Fund and for the purpose of such distribution or division and for any other purpose hereunder, to place such value on the assets from time to time forming the whole or any part of the Trust Fund as they deem just and proper, and any such valuation shall be absolutely final and binding upon all persons entitled hereunder; and upon any such distribution or division to determine to whom or to what shares specified assets shall be given or allocated and to distribute or divide the same subject to the payment of



INBOX- 286

- 11 -

such amounts as shall be necessary to adjust the shares of the various Beneficiaries.

**8.    REGISTRATION OF ASSETS**

All assets from time to time constituting the Trust Fund shall be held by and registered in the name of the Trustees or in the name of his or her nominees or otherwise as the Trustees may deem expedient.

**9.    INCOME TAX COMPLIANCE**

The following provisions are made to assist the Trustees in administering the Trust hereby constituted and in complying with the provisions of the *Income Tax Act*. Any reference to an item being taxable refers to the taxation of such item pursuant to the *Income Tax Act*. The words "preferred beneficiary" and "accumulating income" shall have, for the purpose of this provision, the meanings given to such words in the *Income Tax Act*:

(a)    the Trustees are authorized from time to time to join with any preferred beneficiary of the Trust Fund in making any election, in the prescribed manner, pursuant to any provisions of the *Income Tax Act* enabling him to do so, in order to allocate for purposes of the *Income Tax Act* only the whole or any part of the accumulating Income of the Trust Fund in any taxation year to such Beneficiary. Such election shall not entitle such preferred beneficiary to any greater rights to the Income or Capital of the Trust Fund than such preferred beneficiary would have if such election had not been made;

(b)    in addition to all other powers conferred upon them by the other provisions of this Agreement, the Trustees are authorized at any time to pay to any preferred beneficiary of the Trust Fund an amount out of the accumulating Income of the Trust Fund in any year sufficient to enable such Beneficiary to pay his or her increased liability, if any, under the *Income Tax Act* resulting from any election made by such Beneficiary and the Trustees, pursuant to any provisions of that Act enabling them to do so, whereby some or all of the accumulating Income of the Trust Fund for that taxation year is allocated to such Beneficiary for income tax purposes;

(c)    where the Trustees consider it to be in the interest of any Beneficiary, the Trustees are authorized to execute on behalf

INBOX- 287

- 12 -

of any infant preferred beneficiary an election, in the prescribed manner, pursuant to any provisions of the *Income Tax Act* enabling them to do so, in order to allocate for purposes of the *Income Tax Act* the whole or any part of the accumulating Income in any taxation year of the Trust Fund to such preferred beneficiary; and

(d)     the Trustees shall have the right to pay out of the Income or Capital of the Trust Fund, as they may from time to time in their absolute discretion determine, any taxes payable in connection with the Trust Fund or payable by any Beneficiary in respect of the Trust Fund or any part thereof.

**10.     PROCEDURES**

10.1    The exercise of any rights, powers and priviledges granted to the Trustees referred to in Section 7 hereof and any action in connection therewith shall be determined jointly by each of the Trustees for the time being in office.

10.2    The Trustees may adopt any rules and regulations which they may from time to time deem proper to govern their own procedure. Subject to Section 10.1 hereof, the Trustees may act either by a resolution jointly passed by each of them at a meeting or by an instrument in writing jointly signed by each of them, and any such decision or act of a majority of the Trustees shall, for all purposes of this Agreement be deemed the decision or act of the Trustees. Subject to Section 10.1 hereof, every deed or instrument of every nature or description jointly executed by each of the Trustees for the time being in office shall be as valid, effectual and binding as if executed by each of the Trustees.

**11.     BANKING ARRANGEMENTS**

Notwithstanding the other provisions of this Agreement, the sole signature of either one of the Trustees shall be sufficient to exercise all of the banking powers conferred upon the Trustees herein. It is the express intent of the Settlor that either Trustee may sign, endorse, make, draw, or accept any cheques, promissory notes, bills of exchange, or other negotiable instrument, any orders for the payment of money, contracts for letters of credit or foreign exchange and generally all instruments or documents for the purpose of binding or obligating the Trustees in any way in connection with the accounts and transactions of the Trust with the banker, whether or not an overdraft is thereby created, and any

INBOX- 288

- 13 -

instruments and documents so signed shall be binding upon the Trustees. Either one of the Trustees may appoint any bank, trust company, securities dealer or other financial institution to be their banker for the purposes of the Trust following provisions shall govern the banking arrangements of the Trust hereby constituted.

12.    **RESIGNATION AND REPLACEMENT OF TRUSTEES**

12.1    Each of the persons named as a Trustee, in virtue of the present deed, originally or thereafter, shall remain trustees for as long or until one of the following events shall have occurred.  There shall at all times be two (2) Trustees to administer this Trust.

12.2    Any Trustee shall immediately cease to be a Trustee in the event that he or she becomes bankrupt, effects an assignment of his or her property or, for whatever reason, becomes incapable to fulfil his or her function as Trustee. Any Trustee shall have the right to resign, even after having accepted his or her appointment as Trustee, by giving a written notice to such effect, sent to the Settlor, to the Beneficiaries or to the other Trustee in office, if any, and shall be replaced in accordance with the provisions set forth in this Section 12.  The resignation of a Trustee, who has accepted such appointment, shall only be effective within 30 days from receipt of said notice by the Settlor, the Beneficiaries and the other Trustee, if any.

12.3    If the Trustee being replaced is Garry Jonas, he shall be replaced by such person other than the Settlor who has previously been designated, in writing, by Garry Jonas, to be his replacement.  Should there have been no such designation, the replacement will be named by the legal representatives of Garry Jonas.  Any other replacement Trustee at a time when Garry Jonas is acting as Trustee shall be such person designated by Garry Jonas.  In any other circumstances, the replacement Trustee shall be named by the legal representatives of Garry Jonas.

12.4    At any time, Garry Jonas (or, in the event of his death, his legal representatives), may, in his absolute discretion remove a Trustee from office by a notice to such effect served upon such Trustee or sent to him/her by registered mail and the latter Trustee shall thereupon be discharged from all of his duties hereunder. At the same time, Garry

- 14 -

Jonas, or his legal representatives, shall appoint a new Trustee.

12.5 Trustees' decisions must be taken during validly convened meetings that comply with the provisions herein. A meeting of the Trustees may be convened at any time and in any location by any one of the Trustees in office provided that notice of the meeting is given to each Trustee or, in the absence of a notice, that all of the Trustees are present or a Trustee has waived the notice in writing.

12.6 A Trustee may, either prior to or following a meeting of the Trustees, waive notice of such meeting either in writing or by way of telegram, cablegram, facsimile, telex or electronic mail. The Trustees sole attendance at a meeting is a waiver except where he attends a meeting for the express purpose of objecting to the holding of the meeting on the ground that the manner of calling i twas irregular.

12.7 The notice must contain the object of the meeting, the day, hour and location of the meeting and, if delivered by mail, it must be sent at least seven (7) days prior to the meeting or, if transmitted by electronic mail or facsimile, at least sixty (60) hours before the meeting. If the notice is transmitted by hand, delay is then reduced to forty eight (48) hours. The notice need not be signed.

12.8 Notwithstanding any other provision of this Trust Agreement, but subject to the provisions of the *Civil Code* and in particular Article 1275, Garry Jonas may increase the number of Trustees in office. Garry Jonas may also, by notarial act en *minute*, modify the terms and conditions by which he may be replaced. Consequently, Garry Jonas may name his successor or provide for the modalities by which his successor; and such successor's successor, shall be appointed. Subject to the provisions of the *Civil Code*, the arrangements made by Garry Jonas in regards to the exercise of the rights attributed to him by this Paragraph take precedence over all other provisions of this Trust Agreement. Garry Jonas may also, from time to time, modify the arrangements he has established pursuant to this Paragraph.

13. **NO REVERSION**

No part of the Trust Fund shall in any event revert to the Settlor.

INBOX- 290

- 15 -

**14.   FUTURE GIFTS**

The Settlor and any other person or persons may at any time and from time to time add to the Trust Fund, provided the Trustees, having regard to tax and other considerations, are willing to accept such additions.

**15.   INVENTORY, SECURITY AND CURATORSHIP**

The Trustees shall not be required:

(a)   to make any inventory or accounting more detailed than that which, in their sole opinion, may be required for the purposes of keeping proper records of their administration of the Trust Fund;

(b)   to furnish any security for their administration, notwithstanding any provision to the contrary contained in any legislation whatsoever;

(c)   to make the property of the Trust Fund more productive.

**16.   LIABILITY OF TRUSTEES**

The Trustees shall be fully protected in exercising any discretion granted to them in this Agreement and shall not be liable to the Settlor or the Settlor's estate or to any Beneficiary of the Trust hereby created or to any other person whatsoever by reason of the exercise of any such discretion. The Trustees shall exercise the powers and discretion given to them in what they deem to be the best interests, whether monetary or otherwise, of the Beneficiaries, whether or not such exercise may have the effect of conferring an advantage on any one or more of the Beneficiaries at the expense of the other Beneficiaries or would otherwise, but for the foregoing, be considered as being other than an impartial exercise of their duties hereunder or as not being the maintenance of an even hand among the Beneficiaries, and all such exercise of his powers and discretion shall be binding upon all the Beneficiaries and shall not be subject to any question by any person, official, authority, Court, or tribunal whatsoever or whomsoever. The Trustees shall not be responsible for the acts or defaults of each other or for any error in judgement or for any act of omission or commission not amounting to actual fraud in the management and administration of the Trust Fund.   The Trustees shall not be personally liable upon any monies to become due from or by any claims against the Trust Fund or upon any investment executed by the Trustees under the provisions hereof.   The Trustees shall have the

- 16 -

power to bind the Trust Fund without rendering themselves personally liable. The legal title to all the Trust Fund shall be and remain vested in the Trustees and their successors.

17. **SAFEKEEPING OF ASSETS**

The Trustees shall be entitled to employ the safekeeping services of any bank, trust company, securities dealer, or other financial institution and shall not be liable for any loss which may be occasioned thereby.

18. **RESETTLEMENT OR TRANSFER**

The Trustees may at any time if in their absolute and uncontrolled discretion they deem appropriate, pay or transfer the whole or any part of the Income or Capital of the Trust Fund to the Trustees of any other trust whether testamentary or *inter vivos* and established in the Province of Quebec, in another Province of Canada or elsewhere, the dispositive provisions of which is in the opinion of the Trustees such that the only beneficiaries likely to benefit thereunder are persons who are Beneficiaries under this Trust and in the same proportions.

19. **COMPENSATION OF TRUSTEES**

The Trustees shall be entitled to be paid out of the Trust Fund such amounts as may be agreed upon from time to time by the Trustees or failing agreement such amounts as may be determined by a court of competent jurisdiction in the Province of Quebec. Such remuneration shall be a first charge upon the assets of the Trust Fund and the Trustees shall be permitted to take from time to time reasonable amounts on account of compensation to be agreed upon or awarded. Notwithstanding the foregoing, the remuneration of any Trustee hereunder for any 12 month period shall not exceed two percent of the Income derived from the Trust Fund in such twelve month period.

20. **MEANING OF CHILD AND ISSUE**

Any reference in this Agreement to a person in terms of a relationship to another person determined by blood or marriage shall not include a person born outside marriage nor a person who comes within the description traced through another person who was born outside marriage, provided that any person who has been legally adopted shall be regarded as having been born within marriage to his or her adopting parent and any person who would otherwise have been one of the Beneficiaries hereunder who shall have been or shall be adopted by any other person as his child shall not, by reason of such

INBOX- 292

- 17 -

adoption, cease to be a Beneficiary hereunder but shall for all purposes of this agreement nevertheless remain a Beneficiary and be entitled to take his or her interest in the Trust Fund in the same manner and to the same extent as if he had not been so adopted.

21.    **IRREVOCABILITY**

This Agreement and the Trust hereby created are intended by the parties and are hereby declared to be irrevocable.

22.    **NOT SUBJECT TO SEIZURE OR ASSIGNMENT**

The Trust Fund is intended as an alimentary provision and so long as the Trust Fund and the revenue therefrom remain in the possession and under the control of the Trustees, the same shall be exempt from seizure or attachment for the debts of any Beneficiary or issue of any Beneficiary hereunder.   Likewise the Trust Fund and the revenue therefrom shall be incapable of being assigned or anticipated by any Beneficiary or issue of any Beneficiary without the written consent of the Trustees.  This provision shall be without effect as regards the right granted to the Trustees to hypothecate, pledge or otherwise effect voluntarily the said Trust Fund.

23.    **EXCLUSION OF DISTRIBUTIONS FROM COMMUNITY OF PROPERTY**

Distributions of Income or Capital shall not fall into any community of property, partnership of acquests or other form of sharing or division of property which may exist between any Beneficiary and his spouse, and every gift together with the Income therefrom shall remain the separate property of a Beneficiary hereunder, free from all matrimonial rights or controls by his spouse.

24.    **GOVERNING LAW**

This Agreement shall be enforced and interpreted in accordance with the laws of the Province of Quebec and the trusts herein declared shall be governed by and administered in accordance with such laws.

25.    **COUNTERPARTS**

This Agreement may be executed in counterparts and each counterpart will be effective to bind the party signing.

INBOX- 293

- 18 -

26.    **LANGUAGE OF THE TRUST DEED**

*Chaque partie déclare, par les présentes, avoir exigé la rédaction en anglais de la présente convention et chaque partie consent, par les présentes, que tous documents, avis ou procédures légales prévus, découlant ou émis suite aux présentes ou s'y rapportant directement ou indirectement soient rédigés en français ou en anglais.* The parties hereby declare that each has required this Agreement to be in the English language, and each party does hereby consent to any documentation, notices issued hereunder or relating directly hereto, to be in either the French or English language.

**IN WITNESS WHEREOF,** the parties have executed this Agreement at the place and as of the date first above written.

_____
**JUDITH COHEN [Settlor]**

_____
**GARRY JONAS [Trustee]**

_____
**CLAUDE MARCIANO [Trustee]**

INBOX- 294