UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-61448-CIV-MARRA

PULSEPOINT, INC. f/k/a DATRAN
MEDIA CORP.,

    Plaintiff,
v.

7657030 CANADA INC., et al.

    Defendants.
_____/

**DEFENDANTS MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE THE COURT'S ORDER AND MOTION FOR SANCTIONS**

Defendants, 7657030 Canada Inc., Acquinity Interactive, LLC ("Acquinity"), ModernAd Media LLC ("ModernAd"), and Warren Rustin (collectively "Defendants"), by and through undersigned counsel, hereby file this Response in Opposition of Plaintiff's Motion to Enforce this Court's Order dated October 31, 2013 [DE 76].

**SUMMARY OF ARGUMENT**

Alarmingly, Plaintiff's motion is riddled with falsehoods—most of which are clearly the result of conjecture,[1] Plaintiff's counsel's failure to inspect the documents as made available for inspection and copying before deciding to copy and Bates stamp all such documents, and Plaintiff's counsel's failure to confer with Defendants' counsel prior to filing this motion in disregard of Local Rule 7.1(a)(3)(A). Moreover, Plaintiff attempts to disguise its motion to compel as a motion to enforce, and thereby, evade compliance with Local Rule 26.1(h)(2).

---

[1] Many of these inaccuracies have nothing to do with the discovery dispute at hand and are included in the motion as an evident means of improperly incensing the Court against the Defendants. In an effort to comply with the spirit of the Court's Order Setting Discovery Procedure [DE 103], Defendants will focus this response on the actual discovery issues.

Below the elusive and murky claim that Defendants' comprehensive production of documents is incomplete lays Plaintiff's real, yet unsubstantiated claim: that it wants the production of the Defendants' electronic QuickBooks files. Tellingly, Plaintiff does not direct the Court to any of the numbered requests in its First Request for Production, because it simply *did not make this request there*. Finally, while acknowledging that a producing party is not responsible for Bates stamping, Plaintiff seeks to impose these costs on Defendants, based on the fact that the production (which Plaintiff requested) is too voluminous. These costs were incurred by Plaintiff largely as a result of its counsel's failure to inspect the documents that Defendants made available for inspection and copying prior to deciding to simply copy all the records (including the large number of invoices Plaintiff asked for in the Request for Production, but which it evidently did not want to copy). Defendants produced the documents as they were kept by them, in the very same labeled folders, and flagged many of the paper documents identifying the numbered requests the documents were responsive to.

In a good faith effort to resolve the discovery dispute (after the filing of the motion, given that no substantive effort to resolve was made by Plaintiff's counsel before), Defendants have offered to produce the Defendants' electronic QuickBooks files for the time period the Court previously deemed relevant subject to an order of confidentiality to cover the types of documents that were not called for by the First Request for Production. Significantly, Plaintiff's counsel has advised Plaintiff would agree and drop the subject motion but only if Defendants agreed to split the costs of the rash scanning and Bates stamping (which purportedly exceed $25,000).

## **ARGUMENT**

**A.    Defendants have fully observed this Court's Orders and produced the documents called for by the First Request for Production.**

Contrary to Plaintiff's false claims, Defendants have fully observed this Court's Orders. On December 16, 2013, this Court ordered that Defendants produced all the documents requested in Plaintiff's First Request for Production served on November 1, 2013, and awarded attorneys' fees and costs to Plaintiff. Upon learning of the Court's ruling, although they respectfully disagreed with the Court's ruling, Defendants showed deference to the Court's view and forewent any further argument or review of the issue. Instead, *in coordination with the undersigned counsel*, Defendants compiled all documents responsive to the extensive requests for documents which are in their possession or control, and made available approximately fifty (50) Bankers Boxes of documents and a CD with electronic financial records of the Defendants.[2] Contrary to the dire picture painted in Plaintiff's motion regarding the production made, among other items, Defendants produced the following non-exhaustive list of documents:

1. All Bank of Montreal bank statements for 7657030 Canada, Inc. from December 2010 through November 2013 [produced electronically in pdf format];
2. All Fifth Third Bank statements for Acquinity Interactive, LLC, from October 2012 through November 2013 [produced electronically in pdf format];
3. All Fifth Third Bank statements for Acquinity Mobile, LLC, from January 2013 through June 2013 [produced electronically in pdf format];
4. All Fifth Third Bank statements for Acquinity Interactive, LLC, BSaving-Merchant, from September 2012 through November 2013 [produced electronically in pdf format];
5. All BMO Harris Bank statements for 7657030 Canada, Inc., from January 2011 through July 2012 [produced electronically in pdf format];
6. Quarterly Notices of Maturity and Renewal of Harris Bank Certificate of Deposit for 7657 Canada, Inc., for September 2011 through March 2012 [produced electronically in pdf format];
7. All Regions Bank statements for Acquinity Interactive, LLC, from December 2011 through November 2013 [produced electronically in pdf format]
8. Documents related to Regions Bank CD account for Acquinity Interactive, LLC [produced electronically in pdf format];

---

[2] Defendants also timely tendered payment of the fees awarded.

9. Excel spreadsheet identifying all ModernAd Media accounts and account balances as of 12/31/10, 12/31/11, and 12/31/12 [produced electronically in xls format and paper format];

10. All Regions Bank statements for Warren Rustin from October 2010 through July 2013 [produced in paper format];

11. All HSBC Bank statements for Warren Rustin from October 2010 through the first week of December 2013 [produced in paper format];

12. All Royal Bank of Canada Bank statements for Warren Rustin from October 21, 2010 through November 21, 2013 [produced in paper format]

13. Printout of QuickBooks report entitled "Balance Sheet" identifying all Acquinity Interactive, LLC, and 7657030 Canada, Inc.'s, bank accounts and account balances as of 12/31/11, 12/31/12, and 12/31/13 [produced in paper format];

14. Various other documents produced in paper format that contain identifying bank account information (e.g., wire instructions and wire reports attached to invoices);

15. 2011 Canadian tax returns for 7657030 Canada, Inc.;

16. 2012 Canadian tax returns for 7657030 Canada, Inc.;

17. 2011 Federal tax returns for Acquinity Interactive, LLC;

18. 2012 Federal tax returns for Acquinity Interactive, LLC;

19. 2011 Arizona Partnership tax returns for Acquinity Interactive, LLC;

20. 2012 Arizona Partnership tax returns for Acquinity Interactive, LLC;

21. 2012 New York Partnership tax returns for Acquinity Interactive, LLC;

22. ModernAd Media's financials (various reports exported from QuickBooks) from 2010 through 2013 [produced electronically in xls format and paper format];

23. Various QuickBooks reports produced in paper format detailing Acquinity Interactive, LLC and 7657030 Canada, Inc.'s financials from 2011 through 2013 [produced in paper format];

24. Copies of all relevant documents, leases and monthly invoices for all motor vehicles of all Defendants [produced in paper format and electronic format via pdf and xls];

25. Various asset schedules and lease agreements for all Defendants were produced. Some of these materials are included in the depreciation schedules as part of tax returns, while other relevant asset schedules were produced as stand-alone documents as exhibits to written agreements [produced in paper format, as well as, xls and pdf format];

26. Various asset schedules of Acquinity and ModernAd were produced in paper format. Some of these materials are included in the depreciation schedules as part of tax returns, while other relevant asset schedules were produced as stand-alone documents are as Exhibits to written agreements [some produced in paper format, others produce in xls format];

4

27. All applicable leases of real and personal property for all Defendants [produced in both electronic and paper format];

28. All applicable leases of real and personal property for all Defendants [produced in both electronic and paper format];

29. All corporate documents, including articles of organization, operating agreements, state database records, member consents, etc., for each Defendant;

30. ModernAd Media's, Acquinity Interactive's, and 7657030 Canada's complete HR files for Garry Jonas produced in paper format, includes W-2s;

31. ModernAd Media's complete HR files for Warren Rustin produced in paper format, includes W-2s. Warren Rustin was never employed by Acquinity Interactive or 7657030 Canada, Inc.;

32. ModernAd Media's, Acquinity Interactive's, and 7657030 Canada's complete HR files for Scott Modist produced in paper format, includes W-2s, employment offer letter, and employment agreement;

33. All applicable QuickBooks reports (containing the responsive financial information) for all corporate Defendants and for all relevant years were produced in either electronic or paper format or both;

34. All invoices (containing the responsive names and addresses) for all corporate Defendants and for all relevant years were produced;

35. All applicable QuickBooks reports were produced in paper format or xls format or both.

36. UCC filings and written agreements regarding relationships and indebtedness were [produced in paper format or xls format or both];

37. The documents responsive to the request for asset purchase agreements, stock purchase agreements, stock sale agreements, mergers, acquisitions, asset sales, investments, letters of intent, or other such agreements entered into by any of Defendants with a third party within the last three (3) years [produced in pdf and paper formats];

38. The documents responsive to the request for any asset purchase agreements, stock purchase agreements, stock sale agreements, mergers, acquisitions, asset sales, investments, letters of intent, or other such agreements entered into by any of Defendants with any other Defendant, including subsidiaries or affiliates owned by a Defendant, in whole or in part, within the last three (3) years [produced in pdf and paper formats];

39. The documents responsive to the request for records pertaining to the loan, payment, or transfer of any money or property interests or other financial interests made by any Defendant to another Defendant or a third party within three (3) years prior to the filing of this suit [produced in xls, pdf and paper formats];

40. The documents responsive to the request for records of any loans made or obtained by a Defendant in the last three (3) years [produced in xls, pdf and paper formats];

5

41. The documents responsive to the request for bills of sale, deeds, contracts, or other documents showing transfer of any and all property to a Defendant, or executed by a Defendant;

42. xls files showing all payments between the Defendants for all applicable years;

43. Invoices between the Defendants [produced in paper format];

44. Communications between Defendants regarding the ownership of Defendants, including subsidiaries or affiliates owned by Defendants;

45. The documents responsive to the request for security agreements, UCC financing statements, and deeds of trust [produced in electronic or paper formats].

Plaintiff's claim that "Defendants . . . willfully withheld key financial documents, including electronic QuickBooks files containing Defendants' ledger books, bank records, complete tax returns, and other accounting records" is simply untenable. [DE 98 at 1]. Plaintiff *did not* request electronic QuickBooks files. Tellingly, Plaintiff does not direct the Court to any of the numbered requests in its First Request for Production, because it simply *did not make this request there*. This would have been even more evident had Plaintiff complied with Local Rule 26.1(h)(2). As such, Defendants were not required to produce all documents in electronic form. *See Armor Screen Corp. v. Storm Catcher, Inc.*, 2008 WL 4753358 (S.D. Fla. 2008 (finding it "unnecessary for Defendants to re-produce in electronic format, the hard copy documents that Defendants have already produced, in light of Plaintiff's failure to specify that such documents were to be produced in electronic format.").

In fact, Plaintiff's attorneys have acknowledged that they did not request electronic files in the First Request for Production because they did not know the company Defendants used electronic QuickBooks files. In fact, the first time production of electronic or QuickBooks files was even brought up by Plaintiff was as part of the parties' Rule 26 Conference. *See* Plaintiff's edits to Defendants' proposed joint scheduling report and discovery plan attached as Exhibit A, at page 5 where Plaintiff's counsel adds, for the first time ever, "Plaintiff *requests* that the Quickbook files for each Defendant and related entity be produced in electronic form, which will

6

greatly simplify and expedite the review of such records." (Emphasis added.) As part of their Rule 26 Conference discussions, Defendants' counsel advised that, "upon receipt of a discovery request for it, ModernAd Media, LLC will agree to produce, at Plaintiff's expense, the Quickbook files of its company books, ledgers, and financial records in electronic form. Requests from other Defendants will be evaluated on a case-by-case basis."[3] *See* Exhibit B, at page 1. Rather than serving a supplemental request for production for these files, Plaintiff seeks to avoid affording Defendants the opportunity to seek a protective order of confidentiality for documents that were not requested in the First Request for Production and which have already been produced, under the guise that the documents produced were not produced in a reasonably usable form because it would be easier for Plaintiff to obtain and use the QuickBooks files. This is absurd.

In what can be surmised to be the requests at issue, Plaintiff made specific requests for: (1) copies of each Defendant's financial statements; (2) all accounts receivable ledgers, including internal customer records that set forth the names and addresses of all persons or business enterprises that are indebted to each Defendant; (3) same as 2, but as to co-partners or joint venturers; (4) all records pertaining to loans, payments or transfer between Defendants; (5) all documents regarding payments from Defendants to a third party outside the normal course of business; and (6) all documents regarding expenses or liabilities of one defendant paid by another Defendant. Plaintiff did not make a general request Defendant's "ledger books" or "company books." As detailed above, Defendants produced the reports exported from

---

[3] The purpose of requiring an additional request for production, as discussed with counsel at the time and multiple times since, was simply to allow Defendants to seek a protective order of confidentiality for information in the financial records that was not covered by the First Request for Production (given that the Court previously required Defendants to produce the documents responsive to the First Request for Production without such a protective order of confidentiality).

QuickBooks (some in excel format, some in paper format) that included the specific requested information. As noted above, there was no request made for QuickBooks files; the documents obtained from QuickBooks were limited to the requests made. The QuickBooks reports Defendants produced included: (1) profit and loss statements; (2) transaction lists by vendor; (3) income by customer summaries; (4) accounts payable and vendor contact list; (5) transactions by account; (6) balance sheets; and (7) transactions by date; and (8) asset lists and related transactions. Defendants even produced any of the xls format reports to Plaintiff on a CD, organized into folders showing which reports were responsive to which requests. Each and every bank statement and QuickBooks report identifying all bank accounts were produced, including all statements for Mr. Rustin's personal accounts. The paper copies were produced in the same labeled folders and in the same alphabetical order as they are stored by Defendants. Defendants also flagged (attaching sticky notes) to the documents showing with the number of the request the documents were responsive to.

Furthermore, Defendants produced the complete tax returns as they existed at the time of production. Defendants did not remove or withhold any pages from any of the tax returns. Had Plaintiff's counsel complied with the obligations of Local Rule 7.1(a)(3)(A) by brining this to the Defendants' counsel attention before filing the motion, he would have learned that the page that Plaintiff's counsel falsely classifies as an "egregious example" (which was really the only concrete example given) of a production deficiency—implying Defendants intentionally removed and/or withheld information—was never previously filed with the taxing authority.

In a good faith effort to resolve the discovery dispute after the motion was filed, Defendants have offered to produce the Defendants' electronic QuickBooks files for the time period the Court previously deemed relevant subject to a protective order of confidentiality to

8

cover the types of documents that were not called for by the First Request for Production. Significantly, Plaintiff's counsel has advised Plaintiff would agree and drop the subject motion but only if Defendants agreed to split the costs of the Plaintiff's scanning and Bates stamping (which purportedly exceed $25,000).

Plaintiff's arguments lack merit and their refusal to simply serve additional requests for production for the records it seeks to improperly attach to the First Request for Production or even reach an agreement on the terms proposed by Defendants is unjustified.

### B.  Defendants are not responsible for scanning, copying and Bates stamping costs.

The Federal Rules maintain a presumption that parties are required to satisfy their own costs in responding to discovery requests. *Oppenheimer Fund. Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Indeed, Plaintiff acknowledges that Bates stamping is typically not required. Yet, it seeks to impose these costs on Defendants. Plaintiff's claim for costs of scanning and Bates stamping is principally based on the untenable claim that "Defendants . . . dumped tens of thousands of pages of paper invoices on Plaintiffs, the scanning and review of which have added tens of thousands of dollars in needless cost and wasted nearly two months." [DE 98 at 2]. Plaintiff's requested all accounts receivable ledgers, including all internal customer records or other records that set forth the names and addresses of all person or business enterprises that are indebted to each Defendant. Plaintiff also requested other documentation and information that required production of invoices. As such, Defendants pulled all invoices from storage for the relevant years and produced them in the exact form in which they are stored. The documents were made available for Plaintiff's inspection in the same labeled folders and in the same alphabetical order as they are stored. It is evident that the costs expended were largely in connection with invoices that Plaintiff requested—these comprised

9

approximately forty seven (47) Bankers Boxes—but did not necessarily want copied. Had Plaintiff's attorneys inspected the boxes prepared for production, they would have avoided the need for scanning all the documents they did not need copied, scanned, and Bates stamped. Nothing in Plaintiff's decision to have all the documents scanned and Bates stamped justifies imposing any costs on Defendants.

## CONCLUSION

Because Defendants' have complied with the Magistrate's Order and because Plaintiff has failed to comply with Local Rules 7.1(a)(3)(A) and 26.1(h)(2), Defendants' respectfully request this Court to deny Plaintiff's Motion and grant them any relief this Court deems proper.

Dated: March 13, 2014.                                  Respectfully submitted,

s/ Joan Carlos Wizel
Onier Llopiz (FBN 579475)
ol@lydeckerdiaz.com
Joan Carlos Wizel (FBN 37903)
jcw@lydeckerdiaz.com
LYDECKER│DIAZ
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone: (305) 416-3180
Facsimile:  (305) 416-3190

*Attorneys for Defendants 7657030 Canada Inc., Acquinity Interactive, LLC, ModernAd Media LLC, and Warren Rustin*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 13, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I also certify that a true and correct copy of the foregoing was served this day via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.

s/ Joan Carlos Wizel
Joan Carlos Wizel (FBN 37903)

## SERVICE LIST

**Timothy M. Hartley**
Hartley Law Offices, PLC
800 SE third Avenue, Fourth Floor
Fort Lauderdale, FL 33316
Telephone: (954) 357-9973
E-mail:Hartley@hartleylaw.net

**Brett E. Lewis**
Lewis & Lin, LLC
45 Main Street, Suite 608
Brooklyn, NY 11201
Telephone: (718) 243-9323
E-mail:brett@iLawco.com