UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-61448-CIV-MARRA/MATTHEWMAN

PULSEPOINT, INC. f/k/a DATRAN
MEDIA CORP.,

    Plaintiff,
v.

7657030 CANADA INC., et al.,

    Defendants.
_____/

**MEMORANDUM IN RESPONSE TO MOTION TO COMPEL IN CAMERA
INSPECTION OF DEFENDANTS' PRIVILEGE LOG DOCUMENTS**

Defendants, 7657030 Canada Inc., Acquinity Interactive, LLC, ModernAd Media LLC, and Warren Rustin (collectively "Defendants"), by and through undersigned counsel, hereby file this Memorandum in Response to Plaintiff's Motion to Compel in Camera Inspection of Defendants' Privilege Log Documents [DE 110].

**I.    Introduction**

Notwithstanding this Court's Order governing discovery disputes [DE 103] limiting discovery motions to five (5) pages, and this Court's March 20, 2014 Order [DE 108] instructing the Plaintiff to file a motion "*briefly* stat[ing] its position and explain[ing] why it believes that the attorney-client privilege does not apply to the disputed documents," Plaintiff filed its 15-page motion [DE 110] on April 7, 2014. Consistent with its prior, unbridled practice in its filings, Plaintiff starts the motion in its "Introduction" by mischaracterizing the Defendants' posture in discovery and—through the use of false and misleading statements—presenting unsubstantiated assumptions as "facts," hoping that through this gamesmanship the Court will view Defendants in a bad light and focus on the alarming *accusations* before even being made aware of the issue presented to the Court. The claim that the issue presented today is the result of Defendants' alleged continuous efforts to frustrate and delay discovery is just frivolous and, as explained

below, the "facts" argued by Plaintiff in support of its effort to apply the crime-fraud exception in this case are not facts.

In contrast to its introduction, the section of the motion titled "Discovery Background" presents a more balanced and candid account of the relevant background. As suggested there, and as acknowledged by Plaintiff's counsel, Brett Lewis, at the March 18, 2014 hearing, the parties have worked cooperatively in the specific aspect of discovery that is the subject of Plaintiff's motion, and indeed, the issue was first brought to the Court's attention by agreement of the parties, after Defendants *consented* to the in camera inspection of certain documents.

## II.     Argument

Although the issue contemplated in the Court's Order [DE 108] and discussed at the March 18, 2014 hearing was exclusively the application of the crime-fraud exception, Plaintiff divides its motion in two sections. The arguments are addressed in turn.

### A. The Log if fully compliant with the requirements, such that disclosure of additional information would render the privilege meaningless; and the one draft agreement withheld is subject to the privilege even under Plaintiff's own theory

In its first argument, Plaintiff challenges the specificity of entries nos. 2, 3-5, 18-21, 24, 25-28, and 35 of the Defendants' Second Amended Privilege Log and requests production of what it characterizes as draft agreements listed in entries nos. 2, 4, and 5. Plaintiff included this argument in the motion in violation of the Court's Order Setting Discovery Procedure [DE 103]. Specifically, after Defendants served their Second Amended Privilege Log, Plaintiff never conferred (nor sought to confer) in person or via telephone to resolve this discovery dispute before seeking court intervention. Rather, Plaintiff included this argument in the motion without notice or discussion. Therefore, this argument should be summarily denied.

Notwithstanding, the entries of the privilege log at issue comply with the requirements set forth in Local Rule 26.1(g), which establishes such requirements as follows:

> (B) Where a claim of privilege is asserted in objecting to any interrogatory or production demand, or sub-part thereof, and an answer is not provided on the basis of such assertion:
> 
> \*\*\*

2

> (ii) The following information shall be provided in the objection, *unless divulgence of such information would cause disclosure of the allegedly privileged information*:
>
>> (a) For documents or electronically stored information, to the extent the information is readily obtainable from the witness being deposed or otherwise: (1) the type of document (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word, MS Excel Spreadsheet); (2) general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; and (4) such other information as is sufficient to identify the document or electronically stored information for a subpoena duces tecum, including, where appropriate, the author, addressee, and any other recipient of the document or electronically stored information, and, where not apparent, the relationship of the author, addressee, and any other recipient to each other.

(Emphasis added.) The privilege log entries in its present form comply with these requirements, and requiring additional disclosure would effectively cause disclosure of the privileged information. Notwithstanding, after the motion was filed, the undersigned reached out to Plaintiff's counsel and offered to provide additional information as to certain entries in an effort to resolve the issue without Court intervention. The table below summarizes the responses to Plaintiff's blanket objections.[1]

| Log Entry # | Alleged Deficiency | Response/Resolution |
|---|---|---|
| 2 | Draft asset purchase agreement | There is no stated objection as to the sufficiency of the entry; to the extent this relates to the request for production of "draft agreements," the same is addressed below. |
| 3-5 | Vague. What agreements? Attachments not privileged | Defendants have offered to identify the names of the agreements, *which have in fact been produced to Plaintiff*. |
| 18-21 | Service agreement for what entity? Shareholder Agreement for what entity? Impermissibly vague. | Defendants have offered to identify the names of the agreements, *which have in fact been produced to Plaintiff*. |
| 24 | Vague, doesn't state what the subsidiary's name is. | Defendants have advised Plaintiff's counsel that this communication does not include the name for the subsidiary referenced, so there is no identifying information to provide. Although |

---

[1] Plaintiff's counsel did not state a final position on the proposal for resolution, and given the short timeframe for the response to the motion, the undersigned was forced to include the argument in response addressing these issues.

3

| | | |
|---|---|---|
| | | Plaintiff's counsel has advised this may change Plaintiff's position as to the challenge to the description of the entry, no ultimate conclusion or agreement was reached. |
| 25-28 | Facts not privileged. | Not a proper objection. This is neither a challenge to the description of the entry nor a request for production of the documents as draft agreements (which they are not). |
| 35 | Corporate filings not privileged. | Not a proper objection. This is neither a challenge to the description of the entry nor a request for production of corporate filings (which it is not; it is a communication about certain corporate filings; *the corporate filings attached to this communication have in fact been produced*). |

As evident from a review of the log entries and noted in the explanations above, the challenges to the sufficiency of the descriptions of the log entries fail.

Plaintiff also seeks production of documents listed in Log entries nos. 2, 4, and 5, which it refers to as "draft agreements." In seeking to compel production of these documents, Plaintiff relies on the statement of *In re Seroquel Products Liab. Litig.*, 2008 WL 1995058, at * 3 (M.D. Fla. May 7, 2008), that, "If the ultimate document is purely a business document which would not have received any protection based upon privilege in any event, draft language also receives no protection."[2] Even Plaintiff's reading and the statement it relies upon from *In re Seroquel* contemplates an ultimate document disclosed to a third party. As the court in that case explained, "if the draft is prepared with attorney assistance, and contains words or language *that do not appear in the final version, those words may be protected*. . . . But if the final version sent to a third person contains the revisions made on the draft, those revisions are not privileged." *Id.*

Here, of the three Log entries challenged, only one is in fact a draft agreement. However, unlike other draft agreements produced by Defendants, this is a draft of an agreement that was

---

[2] The segment from the opinion from which Plaintiff extracted the quotation states:

> If the ultimate document is purely a business document which would not have received any protection based upon privilege in any event, draft language also receives no protection. But if there is attorney input on the draft, then the attorney-client or work product privileges may be implicated. Drafts may be considered privileged if they were prepared with the assistance of an attorney for the purpose of obtaining legal advice or, after an attorney's advice, contain information a client considered but decided not to include in the final version.

2008 WL 1995058, at * 3.

contemplated but was *never finalized or consummated*; there is no final draft of that agreement. *See* Affidavit of David L. Hatton ("Hatton Aff.") at ¶ 6. Thus, the draft is not discoverable. As for Log entries 4 and 5, these are *not* draft agreements, nor were they disclosed as such. Rather, as the Log notes, one is a document with notes to counsel regarding information required for preparation of agreements and the other is a spreadsheet containing information provided to counsel in connection thereof. Accordingly, Plaintiff's arguments are inapplicable to those documents.

In sum, the Log entries at issue satisfy the requirements of Local Rule 26.1, most of the challenges to the descriptions of the entries at issue have been rendered moot by Defendants' agreement to disclose the identity of the agreements noted therein (as noted in the table above), and the only draft agreement at issue was never finalized and is therefore privileged.

### B.  The Crime-Fraud Exception Does Not Apply Here

Florida law ordinarily requires a party claiming the crime-fraud exception to attorney-client privilege to first set forth a *prima facie* case that the party asserting the privilege employed counsel or sought a lawyer's advice in furtherance of some crime or fraud *prior to* an *in camera* review by the court. Here, however, Defendants had consented to the submission of the forty-two (42) disputed documents to the Court for *in camera* inspection—not because it was "proper" as Plaintiff claims,[3] but rather, to allow the Court to review these communications independently from Plaintiff's continuous misrepresentation of the facts (whatever the intention or whether based on assumptions), and to avoid the unnecessary time and expense anticipated in rebutting Plaintiff's "facts." Thus, such a *prima facie* showing was not actually required. *See First Union National Bank v. Turney*, 824 So. 2d 172 (Fla. 1st DCA 2002). Since Defendants had previously consented to an in camera of the disputed documents, Plaintiff should *not* have injected into the proceeding its misguided statement of "facts" relating to the *alleged* fraudulent transfers, which it presented to the Court as a gratuitous presentation of a "factual basis to support a good faith belief that *in camera* review of the Defendants' documents may reveal concrete evidence to establish that the crime-fraud exception applies."[4] This can only be reasonably surmised to be yet another needless effort on the part of Plaintiff to try this case in discovery and improperly sway

---

[3] *See* [DE 110] at 6.
[4] *Id.*

this Court's opinion in favor of Plaintiff and against Defendants. These actions wholly frustrate the spirit of the consent to the *in camera* review, and instead, place at issue Plaintiff's burden in establishing a *prima facie* claim of the application of the crime-fraud exception. Accordingly, being forced to argue the merits of the Plaintiff's *prima facie* showing in the procedure and analysis outlined in *JTR Enterprises, LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts & Quartz Crystals*, 2013 WL 6570941, at * 3 (S.D. Fla. 2013), Defendants respond as follows.

### 1. Overarching Principles to Consider

The crime-fraud exception is a limited exception to the longstanding rule of confidentiality. It applies only to communications that "are part of the client's effort to commit a crime or perpetrate a fraud." *BNP Paribas v. Wynne*, 967 So. 2d 1065, 1067 (Fla. 4th DCA 2007) (quoting *First Union Nat'l Bank v. Turney*, 824 So. 2d 172, 187 (Fla. 1st DCA 2001)); *see also*, *e.g.*, *Butler, Pappas Weihmuller v. Coral Reef of Key Biscayne Developers*, 873 So. 2d 339 (Fla. 3d DCA 2003); *United States v. Zolin*, 491 U.S. 554, 563 (1989) (the exception is limited to communications that were made "for the purpose of getting advice for the commission of a fraud or crime").[5] Thus, the party seeking to invoke the exception must show the client's intent to commit a fraud through the services of the attorney *and* that the specific communications with the attorney at issue were made *in furtherance of* the fraud. *See In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994) ("The test is whether the *client's* purpose is the furtherance of a future fraud or crime) (emphasis in original); *First Union National Bank v. Whitener*, 715 So. 2d 979, 982 (Fla. 5th DCA 1998) (party seeking discovery of privileged communications must prove that the client "affirmatively sought the advice of counsel to procure a fraud"); *E. Airlines, Inc. v. Gellert*, 431 So. 2d 329, 333 (Fla. 3d DCA 1983) (holding that even if party invoking the exception had proven fraud, privilege would not be waived unless party also proved that the specific communication sought was part of the fraud); *Butler, Pappas*, 873 So. 2d at 1067 (Fla. 3d DCA 2003) (holding that the party relying on the crime-fraud exception has the burden to

---

[5] "[T]he standard for evaluating the crime-fraud exception under Florida state law is generally the same as the standard under federal law." *In re College Landings Ltd. P'ship*, 248 B.R. 619, 623 (Bankr. M.D. Fla. 1998).

prove a *prima facie* case that the client sought the attorney's advice or assistance to commit what the client knew to be a crime or fraud).[6]

Moreover, mere allegations are not sufficient to trigger the crime-fraud exception. Robichaud v. Kennedy, 711 So. 2d 186, 188 (Fla. 2d DCA 1998) ("Expansion of this exception to permit the disclosure of attorney-client communications based upon a mere assertion of a fraudulent design, which is all that our available record suggests, would virtually eliminate the attorney-client privilege in any suit where there was any allegation of fraud or misrepresentation."). *See also In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir. 1987) ("mere allegations . . . are insufficient to warrant application of the exception"); *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 642 (8th Cir. 2001) (a plaintiff does not satisfy his burden "merely by alleging that a fraud occurred and asserting that disclosure of any privileged communications may help prove the fraud"); *United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996) ("Mere allegations or suspicion . . . are insufficient . . . to justify application of the crime-fraud exception"). Instead, "[t]o drive the privilege away, there must be something to give colour to the charge; there must be prima facie evidence that it has some foundation in fact." *Haines v. Liggett Group Inc.*, 975 F.2d 81, 95 (3d Cir.1992) (quoting *Clark v. United States*, 289 U.S. 1, 15 (1933)).

Plaintiff cannot satisfy the required prima facie showing it seeks to establish for application of the crime-fraud exception.

### 2. Plaintiff's Alleged "Factual Basis" (for its Alleged Good Faith Belief that the Exception Applies) is No Basis

As a result of Plaintiff's improper efforts, Defendants are left with choice but to correct the record before this Court and rebut Plaintiff's intentionally misleading and disparaging statements as follows.

---

[6] *See also Bumgarner v. Hart*, No. 05-3900(RMB), 2007 WL 38700, at *4 (D. N.J. Jan. 4, 2007) ("In order to satisfy the crime-fraud exception, Plaintiff must show that [client] possessed an independent intent to commit a crime or fraud and knowingly sought advice of counsel in furtherance of the crime or fraud."); *In re In Store Adver. Sec. Litig.*, 163 F.R.D. 452, 459 (S.D.N.Y. 1995) (rejecting crime-fraud invocation because plaintiffs "have not alleged that any communications or work product were *in furtherance* of fraud, they have only alleged that [the client] committed fraud") (emphasis in original).

### (1) "Dozens of Interconnected Entities Formed by Defendant"

Plaintiff first relies on the claim that "Defendants have created dozens of entities with complex ownership structures," as somewhat forming the basis of Defendants utilizing attorney services to set up "sham entities." [DE 110] at 7. However, the existence of various companies formed by the owners of Acquinity Interactive, LLC, is wholly irrelevant to the analysis regarding application of the crime-fraud exception to the communications at issue. The majority of these entities were *not* formed by any of the named Defendants[7] and the majority of these entities are *not* interconnected with any of the named Defendants. Although Plaintiff has failed to disclose to the Court the names of these alleged "interconnected entities," as can be surmised from Plaintiff's citations, these entities include those listed in paragraph 4 of the attached Affidavit of Scott Modist ("Modist Aff."), which includes a brief description of the relation of each, if any, to the Defendants.

### (2) "No Consideration for Transfer of Assets"

Plaintiff claims that "[t]hrough an Asset Purchase Agreement dated January 1, 2011, ModernAd, a company that made in excess of $120 million in 2010, purported to sell all of its assets to 7657030 Canada Inc. for approximately $2,682,783." [DE 110] at 7. Yet, nothing in the Asset Purchase Agreement provides that 7657030 Canada, Inc. was purchasing each and every one of the assets ModernAd Media, LLC. In fact, the Agreement clearly identifies assets of ModernAd Media, LLC that were being purchased, and also identifies certain of its physical assets which were *not* being purchased. The physical assets purchased included furniture, computer equipment, telephone systems, LLC membership interests and the like. Furthermore, Acquinity Interactive, LLC, paid more than adequate consideration for the specifically enumerated assets being purchased. *See* Modist Aff. at ¶ 5. Furthermore, in claiming that there was no change of control, leadership or personnel, Plaintiff completely ignores Warren Rustin's sole ownership of ModernAd Media, LLC and his lack of ownership whatsoever in any of 7657030 Canada, Inc. or Acquinity Interactive, LLC.

---

[7] It should be highlighted that Garry Jonas is not a Defendant.

### (3) "Entity Used as a 'Conduit' to Launder Assets Abroad"

Plaintiff then claims that, "By 'Nominee Agreement' dated December 31, 2011, 7657030 Canada Inc. then transferred all of what were ModernAd's assets to Acquinity Interactive, LLC, for no consideration. . . . Thus, with the stroke of a pen, Acquinity Interactive owned the former $120 million business without paying a dime. 7657030 Canada Inc. was merely a "conduit" to purchase ModernAd and launder its assets through Canada." [DE 110] at 7-8. This allegation echoes the inflammatory, *baseless allegations* creating undeserved concern from this Court about Defendants' actions. Plaintiff tries this again, and misleads the Court in its effort. The assertions in this section of the motion are particularly egregious considering the fact that Plaintiff is well aware that 7657030 Canada, Inc. had only purchased assets from ModernAd Media, LLC as a nominee and on behalf of Acquinity Interactive, LLC. In its initial production of documents to Plaintiff, Acquinity Interactive, LLC and 7657030 Canada, Inc. produced a December 23, 2010 Nominee Agreement between Service Group, LLC (which later became known as Defendant, Acquinity Interactive, LLC, via name change) and 7657030 Canada, Inc., which provided that Service Group, LLC intended to purchase certain assets of ModernAd Media, LLC, and that it appointed 7657030 Canada, Inc. to acquire and hold legal title to such purchased assets on its behalf and as its nominee. *See* Modist Aff. at ¶ 6.

Plaintiff even attached this 2010 Nominee Agreement to its prior filing at DE 99. By failing to disclose this document to the Court in the instant Motion, Plaintiff misleads the Court to believe that the subsequent December 31, 2011 Nominee Agreement somehow stood on its own and involved the fraudulent transfer of assets from 7657030 Canada, Inc. to Acquinity Interactive, LLC, without any consideration, in a nefarious effort to keep shuffling around assets and stymie creditors. In reality, the transaction was always structured in this manner and Plaintiff was well aware of this prior to presenting this fallacious argument.

Furthermore, Acquinity Interactive, LLC reported to the IRS that it, not 7657030 Canada, Inc., had acquired certain assets from ModernAd Media, LLC on its 2011 tax returns. This fact alone, which is then cited by Plaintiff as some other purported indicia of fraud, negates Plaintiff's disparaging accusations regarding the alleged laundering of ModernAd Media, LLC's assets through Canada. *See* Modist Aff. at ¶ 7.

9

### (4) "Inconsistent Reporting to IRS"

Plaintiff's argument about the reporting of taxes to the IRS is a spill-over from the prior section and follows its misconstruction of the Nominee Agreements. As noted above, consistent with the 2010 Nominee Agreement, and as contemplated from the outset, Acquinity Interactive, LLC reported to the IRS that it, not 7657030 Canada, Inc., had acquired certain assets from ModernAd Media, LLC on its 2011 tax returns. *See* Modist Aff. at ¶ 7. There is no inconsistency in the reporting.

### (5) "No Documentation of Asset Transfer from Acquinity Interactive to Inbox Express"

Contrary to Plaintiff's bald assertions, Acquinity Interactive, LLC never transferred assets to Inbox Express, LLC. Tellingly, despite having all of the corporate Defendants' complete QuickBooks files in its possession (as they were produced by Defendants), Plaintiff is unable to actually identify any purported fraudulent transfers to Inbox Express, LLC. That absence of evidence, however, is no barrier to Plaintiff's willingness to mislead this Court. Furthermore, to be sure, as Plaintiff's counsel has been advised, Defendant 8333947 Canada, Inc. does not own or control Inbox Express, LLC. Nor does it do business as Inbox Express.

Rather, as the Affidavit of Mr. Modist establishes, Inbox Express, LLC is an entity that is neither owned nor controlled by Acquinity Interactive, LLC. *See* Modist Aff. at ¶ 7. Instead, Inbox Express, LLC it was a vendor of Revenuepath Ltd. *Id.* Revenuepath Ltd., in turn, was Acquinity Interactive, LLC's vendor. *Id.* During the 2013 Cyprus banking crisis, RevenuePath Ltd., whose bank accounts were held in Cyprus banking institutions, was left with no ability to pay its vendors. *Id.* In order to maintain continuity of its business operations, Acquinity Interactive, LLC needed to ensure that RevenuePath, Ltd. remained operational. *Id.* Therefore, Acquinity Interactive, LLC, on behalf of RevenuePath, Ltd., agreed to make direct payments to RevenuePath, Ltd.'s vendors, including Inbox Express, LLC, during this period. *Id.* As such, any funds previously transferred by Acquinity Interactive, LLC to Inbox Express, LLC, were done on behalf of Acquinity Interactive, LLC's vendor, RevenuePath Ltd. *Id.* All such direct payments made by Acquinity Interactive, LLC to RevenuePath, Ltd.'s vendors were ultimately reimbursed by or otherwise recouped from RevenuePath, Ltd. *Id.*

In this section, Plaintiff also misrepresents that "David Hatton, general counsel of Acquinity Interactive, [is] trustee[ ] of the Irene Marciano Family Trust." [DE 110] at 9. As set

forth in the Mr. Hatton's Affidavit, Garry Jonas and Claude Marciano, not Mr. Hatton, are the trustees of the Irene Marciano Family Trust. *See* Hatton Aff. at ¶ 3. Mr. Hatton has not been a trustee of the Irene Marciano Family Trust since January 10, 2014, and in fact, he was not even the original trustee of the Irene Marciano Family Trust, and only served as interim trustee between October 25, 2013 and January 9, 2014. *Id.*

### (6) "Defendants Deceptive and Misleading Testimony"

This section of Plaintiff's motion is based on a partial deposition testimony of Warren Rustin; the deposition lasted only about one hour and was continued at Plaintiff's counsel's request to allow counsel to review documents produced.[8] Thus, to be sure, Mr. Rustin has not completed his testimony, which has not been subject to examination by his attorneys to clarify any aspects of it. Nonetheless, Plaintiff's attack to Mr. Rustin's testimony is based on a complete lack of understanding of the facts underlying the testimony. For example, Plaintiff *assumes* that "ModernAd acquired Elysium in March 2010" and, based on the notion that Elysium owns Revenue Path, then complains that "Mr. Rustin omitted any mention of these companies in his testimony" when he was asked about entities in which ModernAd had an ownership interest. *See* [DE 110] at 9. Similarly, Plaintiff assumes Defendants somehow owned Revenue Path and Indicus. However, as made perfectly clear from the attached Affidavit of Mr. Modist: neither ModernAd Media, LLC, nor any of its subsidiaries, ever acquired or owned Elysium, any Revenuepath company or Indicus; neither Acquinity Interactive, LLC, nor any of its subsidiaries, ever acquired or owned Elysium, any Revenuepath company or Indicus; neither ModernAd 7657030 Canada, Inc., nor any of its subsidiaries, ever acquired or owned Elysium, any Revenuepath company or Indicus. *See* Modist Aff. at ¶¶ 9-17.

### (7) "Defendants' Own Lawyers Called ModernAd and Acquinity the Same Company"

This allegation, at best, is based on a misunderstanding of the fact and lack of context. The Services Agreement in which Plaintiff relies (attached as Exhibit 9 to Mr. Lewis' Affidavit in support of the motion) is merely a draft document from an unrelated transaction involving ModernAd Media, LLC, and Plaintiff's reliance upon it is misplaced. *See* Hatton Aff. at ¶ 4. As explained, the final, executed Services Agreement between 7657030 Canada, Inc. and Indicus

---

[8] In fact, Plaintiff has recently requested the completion of the deposition.

Services Ltd. does not name Warren Rustin as a "controlling stockholder." *Id.* It does not even mention Mr. Rustin anywhere, as he has no involvement with any of the entities which are party to the transaction. *Id.*

Moreover, Plaintiff misinterprets and takes out of context one communication between Bradley Walker (attorney at Buchanan Ingersoll & Rooney P.C.) and Mr. Hatton. First, Plaintiff apparently and mistakenly mischaracterizes Mr. Walker as an "Acquinity-ModernAd lawyer," attributing his statement to Defendants, when Mr. Walker was not representing ModernAd Media, LLC or Acquinity Interactive, LLC.[9] Moreover, Plaintiff mischaracterized Mr. Hatton's communication. In the context of the agreement being discussed in this email exchange, Mr. Hatton was not in any way stating that Acquinity Interactive, LLC had all of ModernAd Media, LLC's assets. *See* Hatton Aff. at ¶ 5. Nor was he stating that Acquinity Interactive, LLC and ModernAd Media, LLC were the same company, operating the same business. *Id.* Rather, as he explains in his attached Affidavit, he was, in fact, stating that, for purposes of the subject agreement (i.e., a security agreement/guarantee), Acquinity Interactive, LLC held sufficient assets to fulfill any guarantee being made and that no other entity or parent was needed to support the guarantee from Acquinity Interactive, LLC. *Id.*

### (8) "Defendants Are Continuing to Create New Entities to Add to the Complex Web and Continue to Play "Hot Potato" with the Assets"

Plaintiff concludes by falsely claiming that "[s]ince this action was initiated, Defendants have funneled assets through sham companies it controls, including 8333947 Canada Inc. and Inbox Express, LLC . . . [and] Defendants' insiders have also pulled at least $22 million dollars of cash out of Defendant Acquinity in 2013 alone, and engaged in shady multi-million dollar loan transactions within and among each other." [DE 110] at 11. As explained previously, the claim that Defendants have funneled assets through sham companies it controls is without merit. And contrary to these contentions, the owners of Acquinity Interactive, LLC, received distributions totaling $22 million over the entire life of the company, that is, over 3 years. *See* Modist Aff. at ¶ 18. Contrary to Plaintiff's false and misleading assertions, the owners, or "insiders" of Acquinity Interactive, LLC, did not "pull at least $22 million of cash out of

---

[9] Buchanan Ingersoll & Rooney P.C. was later, in approximately June of 2011, retained as counsel.

Acquinity Interactive, LLC in 2013 alone." *Id.* Nor has Acquinity Interactive, LLC, its owners or insiders engaged in any "shady" loan transactions amongst each other. *Id.*

### III.  Conclusion

Plaintiff's motion unnecessarily required significant expenditure on the part of the Defendants, who had previously consented to submission of the disputed documents for *in camera* inspection in order to avoid that prospect. The motion and the efforts involved in responding to the motion essentially frustrated the purpose of Defendants' consent. Thus, Defendants respectfully request that the Court either examine the *allegations* made by Plaintiff in its attempt to show that Defendants intended to defraud creditors *and* that the specific communications with the attorneys at issue were made in furtherance of the fraud, upon which it should find the showing lacking, or grant Defendants its reasonable attorneys' fees in having to defend against all the accusations which evidently had the only goal of tainting the Court's view of Defendants prior to the Court's inspection of the documents at issue.

Dated: April 15, 2014.                         Respectfully submitted,

                                                            s/ Joan Carlos Wizel
Onier Llopiz (FBN 579475)
ol@lydeckerdiaz.com
Joan Carlos Wizel (FBN 37903)
jcw@lydeckerdiaz.com
LYDECKER│DIAZ
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone: (305) 416-3180
Facsimile:  (305) 416-3190

*Attorneys for Defendants 7657030 Canada Inc., Acquinity Interactive, LLC, ModernAd Media LLC, and Warren Rustin*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 15, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I also certify that a true and correct copy of the foregoing was served this day via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.

s/ Joan Carlos Wizel<br>
Joan Carlos Wizel (FBN 37903)

## SERVICE LIST

**Timothy M. Hartley**
Hartley Law Offices, PLC
800 SE third Avenue, Fourth Floor
Fort Lauderdale, FL 33316
Telephone: (954) 357-9973
E-mail:Hartley@hartleylaw.net

**Brett E. Lewis**
Lewis & Lin, LLC
45 Main Street, Suite 608
Brooklyn, NY 11201
Telephone: (718) 243-9323
E-mail:brett@iLawco.com