UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PULSEPOINT, INC. f/k/a DATRAN MEDIA CORP.,

    Plaintiff,

v.

7657030 CANADA INC., d/b/a ACQUINITY INTERACTIVE, LLC, f/k/a PUREADS; et al.

    Defendants.

Case No. 13-61448-CIV
MARRA/MATTHEWMAN

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL *IN CAMERA* INSPECTION OF DEFENDANTS' PRIVILEGE LOG DOCUMENTS**

Plaintiff, Pulsepoint, Inc. ("Plaintiff" or "Pulsepoint") files this Reply Memorandum in support of its Motion seeking entry of an Order compelling the Defendants to produce certain documents to this Court listed in Defendants' privilege log.

## INTRODUCTION

Defendants' Response (DE 112) is replete with numerous misrepresentations and omissions. While Defendants submit self-serving affidavits, selectively purporting to explain their connections to a number of related entities, they fail to address Plaintiff's documentary evidence and raise even more questions—the answers to which Plaintiff believes may be found in the disputed documents.

## ARGUMENT

**I.  Defendants' Privilege Log Remains Deficient**

Defendants have selectively produced certain documents and are continuing to withhold others (with nearly identical descriptions). Compare Lewis Aff. (DE 110-1) at Exh. 2 with DE

1

112 at 3.  Defendants' rationale for maintaining its claim of privilege over the remaining documents in the log remains enigmatic.  Defendants offer hollow claims that they "have offered to identify the names of the agreements which have in fact already been produced to Plaintiff," (DE 112 at 3-4) but this information has not been provided and the documents that have allegedly "already been produced," have not been produced.  Specifically, Defendants' privilege log entries 3-5 and 18-21 purport to identify draft agreements that were attached to withheld emails. (DE 112 at 4).  Even if Defendants produced other drafts of similar agreements in their supplemental productions, the drafts attached to log entries 3-5 and 18-21 must also be produced.  Because Plaintiff cannot evaluate the credibility of Defendants' privilege claims, with respect to documents that have not been properly identified, Plaintiff seeks *in camera* inspection of such documents.

## II.   The Crime Fraud Exception

Defendants' attempt to challenge Plaintiff's showing that the crime-fraud exception applies falls flat on its face.  Defendants simply fail to provide a reasonable explanation to rebut Plaintiff's showing that Defendants have engaged in fraudulent activity.[1]  Below is a table outlining a small sample of the omissions and misrepresentations pervasive throughout Defendants' Response:

| DEFENDANTS ARGUE | PLAINTIFF CONTENDS |
|---|---|
| Defendants did not form the entities:<br>• The majority of entities were formed by persons other than the named Defendants;<br>• Garry Jonas is not a Defendant, thus entities formed by him are irrelevant;<br>• The relationship between the entities is | Defendants have not disputed the relationship between the entities, trusts and individuals, moreover:<br>• Defendants do not dispute that the named entities were created by Defendants' owners, officers and insiders, including Garry Jonas, his wife, Irene Marciano, and her relative, |

---

[1] Even if Defendants could rebut this evidence, which they do not, this Court can still review the documents for the applicability of the exception. *See JTR Enterprises, LLC*, 2013 WL 6570941, at * 3 (S.D. Fla. 2013).

2

| | |
|---|---|
| innocuous; *See* DE 112 at 8. | Claude Marciano;<br>• Defendants selectively describe certain entities, while omitting any mention of the role or importance of others, including the Garry Jonas Family Trust and the Irene Marciano Family Trust;<br>• Garry Jonas was and/or currently is the CEO, President or Trustee of all named corporate Defendants and related trusts and entities;<br>• Defendants do not dispute the transfer of tens of millions of dollars by and between entities formed by Defendants and Defendants' insiders;<br>Defendants' representations that certain entities, namely 7657048 Canada Inc. and 7576862 Canada Inc., were innocuous is belied by Defendants' own documentary evidence, which establishes that such entities were owned by Defendants and/or Defendants' insiders, and/or owned entities to which Defendants' assets were conveyed, including 7653070 Canada, Inc. Mercer MTE Aff. at Exh. 5. |
| Transfer of assets from ModernAd to 7567030 Canada, Inc. was fair:<br>• Not all *physical* assets of ModernAd Media were purchased;<br>• Acquinity Interactive LLC "paid more than adequate consideration for the *specifically enumerated* assets";<br>• Warren Rustin was not an owner of Acquinity Interactive LLC or 7657030 Canada, Inc.; *See* DE 112 at 8. | Defendants do not dispute that the asset transfer agreement is silent on critical assets of ModernAd that ended up with Acquinity:<br>• The Asset Purchase Agreement makes no mention of any payment or allocation for *intangible* assets, customer contracts, marketing data or goodwill;<br>• As per documents presented by Plaintiff, Acquinity gained control and ownership of such intangible ModernAd assets, not specifically enumerated in the Asset Purchase Agreement;<br>• Defendants provide no basis for the $2.6 million valuation ascribed to a $130 million+/year business.<br>• Defendants fail to establish that even one penny was actually *paid* for the assets of ModernAd; |

3

| | |
|---|---|
| | - Acquinity generated over $300 million in revenues using the assets of ModernAd from 2011-2012, alone, for which Acquinity paid nothing; Mercer MTE Aff. at Exh. 5.<br>- Defendants do not dispute that most of Acquinity's customers were previously ModernAd customers, or that over 80% of Inbox Direct's customers were previously Acquinity customers;<br>- Leadership roles, customers or personnel remained the same: Scott Modist (CFO), Garry Jonas (CEO), Greg Van Horn and Josh Greenberg held same executive roles, and substantially all employees of ModernAd remained in similar positions at Acquinity. |
| Plaintiff misleads the Court as to 7657030 Canada Inc.'s nominal ownership of ModernAd's assets and Defendants' accurately reported ownership to IRS:<br>- Plaintiff did not mention interim Nominee Agreement dated December 23, 2010;<br>- 7657030 Canada Inc. was "structured" to hold ModernAd's assets for Acquinity Interactive LLC;<br>- Acquinity Interactive LLC reported to IRS that it acquired ModernAd's assets in 2011; *See* DE 112 at 9. | Defendants do not deny that ModernAd's assets were conveyed to a Canadian entity (7657030 Canada Inc.) before being transferred to a US entity (Acquinity):<br>- Plaintiff referenced and quoted the Nominee Agreement, dated December 23, 2010, in its moving papers: *Compare* "7657030 Canada Inc. was merely a 'conduit' to purchase ModernAd and launder its assets through Canada" (*see* Mercer MTE Aff., Exh. 3) *with* "[t]he Nominee [7657030 Canada Inc.] will merely be a conduit with respect to all income, expenses and proceeds of disposition with respect to [ModernAd's] Assets" (*see* DE 112-2, Modist Aff. at 8).<br>- As such, Defendants' claim that Plaintiff misled the Court by failing to reference the Nominee Agreement is a red herring. *See* DE 110 at 8;<br>- Defendants do not dispute that, although Acquinity Interactive reported to the IRS that it *acquired* assets from ModernAd on January 1, 2011, it did not actually *hold* those assets until December 31, 2011. |
| Defendants do not own certain entities nor | Defendants fail to refute that Inbox Direct and |

4

| | |
|---|---|
| transferred any assets to them:<br>• Defendants claim both that Acquinity Interactive LLC **never** transferred assets to "Inbox Express, LLC," and that it transferred assets to Inbox Express, LLC, allegedly on behalf of Revenuepath, Ltd.;<br>• Non-movant Defendant 8333947 Canada Inc. does not own Inbox Express, LLC; nor does 8333947 Canada Inc. do business as "Inbox Express;"<br>• David Hatton is no longer a trustee of the Irene Marciano Family Trust; *See* DE 112 at 10. | Inbox Express share many of the same customers, employ substantially the same employees at the same physical offices, and conduct substantially the same business as that of Acquinity:<br>• Defendants do not dispute that no consideration was ever paid by any entity for the assets of Acquinity – Acquinity, a company with annual revenues exceeding $150 million, is alleged simply to have shut down;<br>• Defendants do not deny that 8333947 Canada, Inc. a/k/a Inbox Express is owned and operated by the Irene Marciano Family Trust, of which Garry Jonas is both Trustee and beneficiary;<br>• Defendants do not deny that the majority of Inbox Express's customers are the same as Acquinity's.<br>• Defendants do not deny that Acquinity Interactive LLC transferred at least $105,000 to Defendant 8333947 Canada, Inc.;<br>• Defendants and its insiders control and operate Inbox Express, LLC and Revenuepath, Ltd.<br>• Notwithstanding Defendants' self-serving claims to the contrary, 8333947 Canada, Inc. has operated as "Inbox Express" and its current, March 2014 bank statements identify the entity as "Inbox Express;"<br>• 8333947 Canada, Inc. also does business as "Inbox Direct." |
| Warren Rustin's testimony is incomplete and Defendants did not "own or acquire" offshore entities:<br>• Warren Rustin's deposition is not finished and his attorney's want opportunity to clarify it;<br>• Defendants claim they did not own nor acquire Indicus, Elysium or Revenuepath; *See* DE 112 at 11. | Warren Rustin's deposition testimony constitutes a party admission.[2]  Defendants own, control and operate various offshore entities:<br>• Defendants fail to respond to or explain the email from Warren Rustin to Garry Jonas regarding Rustin's desire to "keep" and run Indicus; Mercer MTE Aff., Exh. 4. |

---

[2] Mr. Rustin never corrected not sought to correct his deposition testimony. The fact that Plaintiff has noticed a second deposition date for Mr. Rustin does not render his sworn statements somehow invalid.

5

| | |
|---|---|
| | - Defendants' QuickBooks records list payments going to Indicus as "Indicus Services, Ltd. (W)." Only Defendants can answer if "(W)" stands for Warren Rustin;<br>- Defendants do not dispute spending nearly $400,000 in a given month to set up corporate offices of offshore entities, including Revenuepath, (*see* Lewis Aff. at Exhibit 5). Plaintiff is not aware of any arms-length business transactions where a business partner picks out the "toilets," "kitchen" and "dishes";<br>- Defendants do not deny that they control and bankroll these offshore entities, nor challenge the documentary evidence showing email communications and spreadsheets supporting Plaintiff's contentions;<br>- Revenuepath executives maintained offices within Acquinity's building at 2200 SW 10th Street, Deerfield Beach, FL;<br>- At least half a dozen key employees (including Phil Jenkins and Natasha Shutov) worked for all three companies – ModernAd, Acquinity, and Revenuepath – and never changed offices or phone numbers at the 2200 SW 10th Street, Deerfield Beach, FL location. *See* Lewis Aff. at Exhibit 5.<br>- These entities are all clearly related, despite the efforts of Defendants and Defendants' insiders to create the appearance that they are separate. |
| Draft agreement with "Controlling Shareholder" language was not final:<br>- Final version of agreement removed Warren Rustin's name;<br>- Indicus agreement with ModernAd "unrelated;"<br>- Attorney from Buchanan Ingersoll Rooney did not represent ModernAd or Acquinity;<br>- Attorney's email was not implying that Acquinity and ModernAd were the | The draft agreement and communications exhibit attorney advice given in furtherance of fraud:<br>- Defendants produced the alleged final version of the Services Agreement for the first time in connection with their opposition papers;<br>- Defendants fail to explain why the alleged final draft of the Services Agreement was not produced until *after* Plaintiff pointed out the controlling |

6

| | |
|---|---|
| same; *See* DE 112 at 11-12. | stockholder language in the draft;<br>• Defendants do not dispute the allegation that they merely copied and pasted Acquinity into the same role that ModernAd played with respect to these transactions;<br>• While Defendants claim that Warren Rustin's name was removed as a controlling stockholder in the final Services Agreement, the names Garry Jonas and Warren Rustin both clearly appeared in the *original* Services Agreement between ModernAd's subsidiary Mailbox Brands, LLC, and Indicus Services, Ltd.<br>• In other words, Garry Jonas was a Controlling Stockholder of ModernAd. The agreement further specified that, "[t]he consummation for agreement for the sale or disposition by ModernAd" of "all or substantially all" of ModernAd's assets "to a Controlling Stockholder or an Affiliate of ModernAd or any entity in the Mailbox Group or a Controlling Stockholder," did **not** constitute a change in control. *See* Services Agreement, Art. VII.<br>• In other Words, as per the language of the Services Agreement, the sale of substantially all of ModernAd's assets to Acquinity did not constitute a change in control.<br>• Nor do Defendants dispute that the termination of old agreements with ModernAd and the foreign entities and creation of new agreements substituting Acquinity for ModernAd occurred at the same time as the sham asset purchase agreement;<br>• Notwithstanding Defendants' conclusory denial, Defendants' own privilege log identifies the attorneys at Buchanan Ingersoll Rooney as "representing ModernAd Media, LLC and Acquinity Interactive, LLC." Defendants' attorneys' words speak for |

7

| | |
|---|---|
| | themselves. |
| Acquinity owners' distributions occurred over a 3+ year period; *See* DE 112 at 12-13. | Defendants do not dispute Plaintiff's documentary evidence:<br>• Plaintiff submitted evidence that over $22 million in cash distributions to owners occurred between December 31, 2012 and December 17, 2013, not over "3+ years." *See* Mercer MTE Aff. at Exh. 11.<br>• Defendants also do not dispute that Acquinity's bank accounts are now empty. |

Plaintiff respectfully submits that there is substantial evidence that Defendants abused the attorney-client privilege to solicit advice in furtherance of Defendants' fraudulent scheme. The same Defendants who denied that Plaintiff had any evidence that fraudulent conveyances were ongoing, now submit carefully worded, self-serving, and wholly deficient affidavits in response to a mountain of evidence that Defendants have engaged in a fraudulent scheme to evade creditors, hiding assets deep within a complex web of dozens of foreign entities, trusts, holding companies, and offshore accounts; all of which involve the same cast of insiders.

The evidence establishes that Defendants, their owners and insiders have utilized the assistance of counsel to further their fraudulent scheme to transfer assets for the purpose of frustrating creditors, while papering phony transactions to create the appearance of plausible business transactions. These transactions, however, bear the hallmarks of fraud and do not withstand scrutiny. The evidence also establishes that Garry Jonas, the principal owner and architect behind Acquinity and its diaspora, was considered by Defendants to be a "Controlling Stockholder" of ModernAd, notwithstanding Defendants' cursory denials to the contrary.

Even if, as Defendants contend, Defendants did not "own" or "acquire" the Revenue Path Entities or Indicus outright, it is clear that those entities were bankrolled and controlled by Defendants, either directly or indirectly. ModernAd spent $365,000 in December 2010 on

8

microwaves, mirrors, dishes, an aluminum roof, telephones, transport, new toilets, and new kitchen, as well as paying "December Gross Salary," "bonus," "employer social security insurance," "company benefits taxes," and other human resources expenses for Vector Consulting S.a.r.l, which later became Revenue Path S.a.r.l. *See* Lewis Aff. at Exhibit 5. Defendants' internal correspondence also lists "operating costs" for the Morocco and India offices of what later became Revenue Path, which also included "consulting fees" for Indicus. *Id*.

Moreover, the contracts with the Revenue Path entities and Indicus were valuable assets that were stripped from ModernAd and assigned to Acquinity without consideration, for the purpose of frustrating creditors. ModernAd also conveyed its registration path software to Revenue Path, without consideration. Lewis Aff. at Exhibit 4; WR Transcript, p. 113:115-24.] These actions were taken by Defendants in furtherance of a fraudulent scheme, and, as such, are not entitled to the protection of the attorney-client privilege. Plaintiff respectfully requests that the Court order an in camera inspection of the disputed documents, and, following such review, compel their production.

## III.   Defendants' Argument that Plaintiff Failed to "Meet and Confer" is Without Merit

Defendants' argument that Plaintiff "never conferred (nor sought to confer)…to resolve this discovery dispute," (DE 112 at 2) is wholly disingenuous and downright perplexing.[3] To the

---

[3] Similarly perplexing are Defendants claims and representations to have produced documents, which had not been produced. At the oral argument on March 18, 2014, Plaintiff's counsel stated that 47 boxes of documents had been produced, while Defendants' counsel claimed that the correct number was 50. In fact, 47 boxes of invoices and 3 boxes of other documents were produced – there was no disparity as to how many boxes of documents were produced. However, Defendants' counsel represented to the Court that **all** tax returns (state, federal and foreign) had been produced for each Defendant – this was not the case. Notwithstanding such representation to the Court, and Defendants' subsequent representation in a letter to Plaintiff's counsel that all tax records had previously been produced, such representations were patently false. Plaintiff *again* searched the box later-identified by Defendants (in writing) as containing the missing tax returns and confirmed that it did not contain any Delaware or Florida state tax returns for any entity, nor complete tax returns for ModernAd Media or Warren Rustin. A number of additional tax returns were produced by Defendants following the Court's discovery Order, none of which had previously been produced.

contrary, the privilege log issues have been addressed countless times, in each case at Plaintiff's insistence, via email and letter correspondence, over numerous phone conversations, in person at the March 18, 2014 argument, and via telephone again thereafter, as partially detailed in Plaintiff's moving papers. Prior to the March 18 hearing, after the parties had narrowed the scope of the privilege log dispute, the parties agreed to submit the remaining issues to the Court for *in camera* review. Accordingly, at the argument, both parties jointly represented that they had discussed the matter and agreed to submit it for *in camera* review. Defendants' representation to the contrary is confounding, and is belied by Defendants' own representations to the Court. Furthermore, given that Defendants specifically requested that Plaintiff submit briefing on the issue of an *in camera* inspection, it is equally preposterous that Defendants are now seeking attorneys' fees for responding to the very course of action to which they agreed. Thus, Defendants' request for fees should be denied.

## Conclusion

For the reasons stated herein, and in Plaintiff's Motion to Compel *In Camera* Inspection, Plaintiff respectfully requests that this Court issue an Order granting *in camera* review and compelling Defendant to produce the disputed documents.

*DATED* this 21st day of April 2014.

*HARTLEY LAW OFFICES, PLC*
Attorneys for Plaintiff
800 Southeast Third Avenue
Fourth Floor
Fort Lauderdale, Florida 33316
Telephone: (954) 357-9973
Facsimile: (954) 357-2275
Email: hartley@hartleylaw.net

By: /s/ Timothy M. Hartley
TIMOTHY M. HARTLEY
FL BAR NO. 979066

***LEWIS & LIN, LLC***
Attorneys for Plaintiff
45 Main Street, Suite 608
Brooklyn, NY 11201
Telephone: (718) 243-9323
Email: brett@iLawco.com

By: /s/ Brett E. Lewis
BRETT E. LEWIS
JUSTIN MERCER

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 21, 2014, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and on all counsel or parties of record identified on the attached service list below via email and/or U.S. Mail.

                                               /s/ Timothy M. Hartley
                                               Timothy M. Hartley, Esq.
                                               Hartley@hartleylaw.net
                                               HARTLEY LAW OFFICES, PLC
                                               800 SE Third Avenue, Fourth Floor
                                               Fort Lauderdale, Florida 33316
                                               Tel. 954-357-9973
                                               Fax: 954-357-2275

                                               Attorney for Plaintiff

## SERVICE LIST

*Onier Llopiz, Esq.* (FBN 579475)
Email: ol@lydeckerdiaz.com
*Joan Carlos Wizel, Esq.* (FBN 37903)
Email: jcw@lydeckerdiaz.com
Email: rb@lydeckerdiaz.com
LYDECKER DIAZ
1221 Brickell Avenue 19th Floor
Miami, Florida 33131
Tel. 305-416-3180
Fax: 305-416-3190
Attorneys for Defendants

*Alexander Pastukh, Esq.* (FBN 809551)
Email: apastukh@appalaw.com
Alexander Pastukh P.A.
1395 Brickell Avenue, Ste. 800
Miami, Florida 33131
Tel: (305) 502-5715
Counsel for Defendant 8333947 Canada, Inc.